UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CARMAN L. DECK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:12 CV 1527 CDP |
| | ) | |
| TROY STEELE, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM AND ORDER

Petitioner Carman L. Deck is currently on death row at the Potosi
Correctional Center in Mineral Point, Missouri, for the murders of James and
Zelma Long. Deck was convicted by a jury in the Circuit Court of Jefferson
County, Missouri, and was sentenced to death for each of the two murders. He is
also serving two concurrent life sentences for two counts of armed criminal action,
as well as consecutive sentences of thirty years' and fifteen years' imprisonment
for one count of robbery and one count of burglary, respectively. Because Deck is
serving consecutive sentences, Missouri Attorney General Josh Hawley is added to
this case as a proper party respondent.[1]

This action is before me now on Deck's request for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. He raises numerous claims that his conviction and

---

[1] *See* Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

death sentences were obtained in violation of his constitutional rights. Because the facts underlying Deck's claims have been fully developed through the records submitted to the Court and no further development was necessary, I did not hold an evidentiary hearing on the claims. *See Sweet v. Delo*, 125 F.3d 1144, 1160 (8th Cir. 1997).

I have carefully reviewed the extensive record in this case and the arguments of the parties and find that Deck is entitled to habeas relief on his claim that he was denied a fundamentally fair penalty trial because of delay not attributable to him, and for counsel's ineffectiveness in failing to pursue this meritorious claim before the trial court. I will therefore grant his petition for writ of habeas corpus on these bases. None of Deck's other claims merit relief.

## I. Factual Background

The following recitation of facts comes from the Missouri Supreme Court's opinion affirming Deck's conviction on the first direct appeal in this case:

> . . . In June 1996, Deck planned a burglary with his mother's boyfriend, Jim Boliek, to help Boliek obtain money for a trip to Oklahoma. Deck targeted James and Zelma Long, the victims in this case, because he had known the Longs' grandson and had accompanied him to the Longs' home in DeSoto, Missouri, where the grandson had stolen money from a safe. The original plan was to break into the Longs' home on a Sunday while the Longs were at church. In preparation for the burglary, Deck and Boliek drove to DeSoto several times to canvass the area.
>
> On Monday, July 8, 1996, Boliek told Deck that he and Deck's

mother wanted to leave for Oklahoma on Friday, and he gave Deck his .22 caliber High Standard automatic loading pistol. That Monday evening, Deck and his sister, Tonia Cummings, drove in her car to rural Jefferson County, near DeSoto, and parked on a back road, waiting for nightfall. Around nine o'clock, Deck and Cummings pulled into the Longs' driveway.

Deck and Cummings knocked on the door and Zelma Long answered. Deck asked for directions to Laguana Palma, whereupon Mrs. Long invited them into the house. As she explained the directions and as Mr. Long wrote them down, Deck walked toward the front door and pulled the pistol from his waistband. He then turned around and ordered the Longs to go lie face down on their bed, and they complied without a struggle.

Next, Deck told Mr. Long to open the safe, but because he did not know the combination, Mrs. Long opened it instead. She gave Deck the papers and jewelry inside and then told Deck she had two hundred dollars in her purse in the kitchen. Deck sent her into the kitchen and she brought the money back to him. Mr. Long then told Deck that a canister on top of the television contained money, so Deck took the canister, as well. Hoping to avoid harm, Mr. Long even offered to write a check.

Deck again ordered the Longs to lie on their stomachs on the bed, with their faces to the side. For ten minutes or so, while the Longs begged for their lives, Deck stood at the foot of the bed trying to decide what to do. Cummings, who had been a lookout at the front door, decided time was running short and ran out the door to the car. Deck put the gun to Mr. Long's head and fired twice into his temple, just above his ear and just behind his forehead. Then Deck put the gun to Mrs. Long's head and shot her twice, once in the back of the head and once above the ear. Both of the Longs died from the gunshots.

After the shooting, Deck grabbed the money and left the house. While fleeing in the car, Cummings complained of stomach pains, so Deck took her to Jefferson Memorial Hospital, where she was admitted. Deck gave her about two hundred fifty dollars of the

Longs' money and then drove back to St. Louis County. Based on a tip from an informant earlier that same date, St. Louis County Police Officer Vince Wood was dispatched to the apartment complex where Deck and Cummings lived. Officer Wood confronted Deck late that night after he observed him driving the car into the apartment parking lot with the headlights turned off. During a search for weapons, Officer Wood found a pistol concealed under the front seat of the car and, then, placed Deck under arrest. Deck later gave a full account of the murders in oral, written and audiotaped statements.

*State v. Deck*, 994 S.W.2d 527, 531-32 (Mo. banc 1999) (*Deck I*).

## II. Procedural Background

The jury returned its guilty verdicts on February 20, 1998, and recommended death for the two counts of murder. The trial court sentenced Deck on April 27, 1998, in accordance with the jury's recommendation. On June 1, 1999, the Missouri Supreme Court affirmed Deck's conviction and sentence. *Deck I*. Deck thereafter sought post-conviction relief under Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. On appeal of the denial of the motion, the Missouri Supreme Court found that Deck received ineffective assistance of trial counsel in relation to the submission of jury instructions on mitigation and remanded the matter for a new penalty-phase trial. *Deck v. State*, 68 S.W.3d 418 (Mo. banc 2002) (*Deck II*). The court concluded that, given the particular facts of the case in which substantial mitigating evidence was offered, there was a reasonable probability that the result of the proceeding would have been different absent counsel's errors. *Id.* at 431.

A second penalty-phase trial began on April 29, 2003, and again resulted in a jury's recommendation of death for both murders. On June 30, 2003, the trial court entered judgment consistent with the recommendation. The Missouri Supreme Court affirmed the sentence on May 25, 2004. *State v. Deck*, 136 S.W.3d 481 (Mo. banc 2004). After granting certiorari, the United States Supreme Court reversed this judgment, finding that Deck's visible shackling during the second penalty proceeding violated his constitutional right to due process. *Deck v. Missouri*, 544 U.S. 622 (2005). The matter was remanded for further proceedings.

Upon remand, a third penalty-phase trial was held in September 2008, after which a jury again recommended death for the two murders, and the trial court entered judgment in accordance with the recommendation. This judgment was affirmed by the Missouri Supreme Court on January 26, 2010. *State v. Deck*, 303 S.W.3d 527 (Mo. banc 2010) (*Deck III*). The United States Supreme Court denied certiorari on June 28, 2010. *Deck v. Missouri*, 561 U.S. 1028 (2010). Deck's motion for post-conviction relief under Missouri Supreme Court Rule 29.15 was denied after an evidentiary hearing. The Missouri Supreme Court affirmed the denial of post-conviction relief on July 3, 2012. *Deck v. State*, 381 S.W.3d 339 (Mo. banc 2012) (*Deck IV*).

Deck initiated this proceeding for federal habeas corpus relief on August 27, 2012. Upon the appointment of counsel, Deck filed his petition for writ of habeas

corpus on August 14, 2013. An amended petition was filed later that same date and is presently before the Court for determination. The respondents have responded to the claims raised in the petition, and Deck has filed a Traverse to that response. The parties also filed supplemental briefs on procedural default.

## III. Grounds Raised

In his amended petition for writ of habeas corpus, Deck raises thirty-two grounds for relief:

Guilt Phase

1.  That he was denied his rights under the Fourth and Fifth Amendments when his confession was admitted in evidence against him;

2.  That he was denied his rights to due process, to a trial by a fair and impartial jury, to reliable sentencing, and to be free from cruel and unusual punishment under the Fifth, Sixth, Eighth, and Fourteenth Amendments when he was denied a change of venue;

3.  That he was denied due process and the members of the venire were denied equal protection in violation of the Fourteenth Amendment when the trial court permitted the State to exercise a peremptory strike against prospective juror 16, D.G.;

4.  That he was denied his rights to due process, to a fair and impartial jury, to reliable sentencing, and to be free from cruel and unusual punishment under the Fifth, Sixth, Eighth, and Fourteenth Amendments when the trial court denied his challenge for cause of prospective juror 20, S.A.;

5.  That he was denied effective assistance of trial counsel at his guilt-phase trial and third penalty-phase trial when counsel failed to investigate and present evidence from an expert on false confessions,

in violation of the Sixth Amendment;

6.    That he was denied effective assistance of trial counsel and due process when counsel failed to conduct an adequate investigation into his innocence and present that evidence at trial, in violation of the Sixth and Fourteenth Amendments;

7.    That he was denied effective assistance of trial counsel and due process when counsel mentioned his prior convictions during voir dire, in violation of the Sixth and Fourteenth Amendments;

8.    That he was denied effective assistance of trial counsel and due process when counsel failed to object to State's witness Shane Knoll's hearsay testimony about murders at the Long residence, in violation of the Sixth and Fourteenth Amendments;

9.    That he was denied effective assistance of trial counsel, the right to confront and cross-examine adverse witnesses, and due process when counsel failed to object to State's witness Shane Knoll's hearsay testimony about Jim Boliek's alibi, in violation of the Sixth and Fourteenth Amendments; and

10.    That he was denied effective assistance of appellate counsel in violation of the Sixth Amendment when counsel failed to raise on direct appeal a claim that the trial court erred in overruling his motion to disqualify the prosecuting attorney's office.

Penalty Phase[2]

11.    That he was denied his right to due process in violation of the Fifth and Fourteenth Amendments when the trial court overruled his motion to impose two life sentences without possibility of parole and imposed two death sentences, because his prior death sentences had been held unconstitutional by the United States Supreme Court;

12.    That he was denied his rights to due process, to trial by a fair and impartial jury, and to be free from cruel and unusual

---

[2] All penalty-phase claims relate to the third penalty-phase trial, which began in 2008 and resulted in the death sentences that Deck challenges in this petition.

punishment under the Fifth, Sixth, Eighth, and Fourteenth Amendments when the court struck two prospective jurors because they voiced reluctance to serve as foreperson but were otherwise qualified;

13. That he was denied his rights to a jury trial, to a presumption of innocence, proof beyond a reasonable doubt, due process, reliable sentencing, and freedom from cruel and unusual punishment in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments when the trial court sentenced him to death for a crime that was never pled in the indictment;

14. That he was denied his rights to due process, to a trial before a fair and impartial jury, and to a fair and reliable sentencing in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments when the prosecution engaged in improper closing argument;

15. That he was denied his rights to due process, a fair and impartial jury, a fair sentencing trial, and freedom from cruel and unusual punishment in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments when the trial court failed to read a mandatory instruction to the venire panel before death qualification;

16. That he was denied his rights to due process, a fair jury trial, and reliable sentencing under the Fifth, Sixth, Eighth, and Fourteenth Amendments when the trial court overruled his objections to instructions 8 and 13, which impermissibly shifted the burden of proof to him regarding mitigating evidence;

17. That he was denied proper proportionality review as required by Missouri law, in violation of his right to due process under the Fourteenth Amendment;

18. That he was denied effective assistance of trial counsel and the right to an impartial jury under the Sixth Amendment, and his right to be free from cruel and unusual punishment under the Eighth Amendment, when counsel failed to inquire of the prospective jurors whether they were willing to meaningfully consider mitigation evidence of childhood experience proffered by the defense;

19.     That he was denied effective assistance of trial counsel under
        the Sixth Amendment, and his right to be free from cruel and unusual
        punishment under the Eighth Amendment, when counsel failed to
        investigate and call numerous witnesses who were later identified by
        post-conviction counsel;

20.     That he was denied effective assistance of trial counsel under
        the Sixth Amendment when counsel failed to investigate and call
        numerous witnesses and present extensive records that were not later
        identified and presented by post-conviction counsel;

21.     That he was denied effective assistance of trial counsel under
        the Sixth Amendment when counsel failed to develop and present
        evidence from a neuropsychologist;

22.     That he was denied effective assistance of trial counsel and due
        process under the Sixth and Fourteenth Amendments when counsel
        failed to obtain a ruling from the court and request relief after
        objections to the State's improper opening statement;

23.     That he was denied effective assistance of counsel under the
        Sixth Amendment when (a) trial counsel failed to object to the
        prosecutor's personal attacks upon him during cross-examination of
        the defense expert, and (b) appellate counsel failed to raise the issue
        for plain error on appeal;

24.     That he was denied effective assistance of trial counsel under
        the Sixth Amendment, and his right to be free from cruel and unusual
        punishment under the Eighth Amendment, when counsel failed to
        object to the prosecutor's closing argument when the prosecutor (a)
        made statements that Deck had "prior escapes" and had helped
        inmates serving life sentences to escape, and (b) engaged in improper
        personalization;

25.     That he was denied effective assistance of trial counsel and his
        right to a fair and impartial jury under the Sixth Amendment when
        counsel failed to question jurors G.H. and R.E. regarding their jury
        questionnaire responses;

26.     That he was denied effective assistance of appellate counsel
        and due process under the Sixth and Fourteenth Amendments when
        counsel failed to raise a claim on appeal that the prosecutor made an
        improper opening statement;

27.     That he was denied due process and the right to be free from
        cruel and unusual punishment in violation of the Eighth and
        Fourteenth Amendments when the trial court improperly responded to
        a jury note during deliberations;

28.     That he was denied effective assistance of appellate counsel
        under the Sixth Amendment when counsel failed to raise a claim on
        appeal that the trial court improperly responded to a jury note during
        deliberations;

29.     That he was denied effective assistance of trial counsel under
        the Sixth Amendment when counsel failed to object to the trial court's
        failure to give a mandatory instruction before jury selection;

30.     That his right to be free from cruel and unusual punishment
        under the Eighth Amendment will be violated if he is executed
        according to the execution protocol promulgated by the Missouri
        Department of Corrections on August 2, 2013;

31.     That he was denied due process and the right to be free from
        cruel and unusual punishment under the Eighth and Fourteenth
        Amendments because numerous errors not attributable to him resulted
        in reversals and delays, which made it impossible to afford him a fair
        penalty phase proceeding in 2008 and from now on; and

32.     That he was denied effective assistance of counsel under the
        Sixth Amendment when (a) trial counsel failed to move for preclusion
        of the death penalty given the length of time and the number of prior
        proceedings that made it impossible for him to receive a fair trial, and
        (b) appellate counsel failed to raise the issue on appeal.

# IV. Standard of Review

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See also Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990).

In order to obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules. *Duncan v. Henry,* 513 U.S. 364 (1995) (per curiam); *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009) (quoting *Gilmore v. Armontrout,* 861 F.2d 1061, 1065 (8th Cir. 1988)). If the petitioner failed to properly present the claim in State court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 566 U.S. 1, 10-11 (2012).

Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. *Williams*, 529 U.S. at 380-83.

A State court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 412-13; *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001). A State court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Merely erroneous or incorrect application of clearly established federal law does not suffice to support a grant of habeas relief. Instead, the State court's application of the law must be objectively unreasonable. *Id.* at 409-11; *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011). Finally, when reviewing whether a State court decision involves an

"unreasonable determination of the facts" in light of the evidence presented in the

State court proceedings, State court findings of basic, primary, or historical facts

are presumed correct unless the petitioner rebuts the presumption with clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-

39 (2006); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007).  Erroneous

findings of fact do not *ipso facto* ensure the grant of habeas relief, however.

Instead, the determination of these facts must be unreasonable in light of the

evidence of record.  *Collier*, 485 F.3d at 423; *Weaver v. Bowersox*, 241 F.3d 1024,

1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA [Antiterrorism and Effective

Death Penalty Act] to exercise only limited and deferential review of underlying

State court decisions."  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  To

obtain habeas relief from a federal court, the petitioner must show that the

challenged State court ruling "rested on 'an error well understood and

comprehended in existing law beyond any possibility for fairminded

disagreement.'"  *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013) (quoting

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).  This standard is difficult to

meet.  *Id.* at 1786.

In circumstances where the State court does not address a federal claim that

was fairly presented to that court, the court's lack of analysis "does not mean that

[the petitioner] is necessarily entitled to habeas relief[.]" *Huss v. Graves,* 252 F.3d 952, 956 (8th Cir. 2001). Relief may be granted only if the decision of the State court is "substantially different" from what the decision would have been if that court had used the appropriate legal standard as established by the United States Supreme Court. *Id.* (quoting *Williams,* 529 U.S. at 405). Accordingly, in those circumstances, I must apply established Supreme Court precedent to the facts of this case to determine whether Deck is entitled to relief on the claim. *Id.*

Deck's claims in this habeas petition must be addressed under a number of complex legal standards. He raises claims that are not cognizable in federal habeas proceedings; he raises claims that were defaulted at varying stages of the State court proceedings; and he raises claims that were determined on the merits in State court and therefore must be examined by me on the merits. I will address Deck's claims according to the legal standard under which they must be determined.

### V. Non-Cognizable Claims

A.   Ground 1 – Admission of Confession

In his first ground for relief, Deck claims that his confession was obtained as a result of his unlawful arrest and subsequent search and should have been suppressed as fruit of the poisonous tree. Deck claims that the initial constitutional violation that led to his confession was his unlawful arrest in violation of the

Fourth Amendment.[3]

Verbal statements obtained as a result of a Fourth Amendment violation are subject to the exclusionary rule. *United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002) (citing *Wong Sun v. United States*, 371 U.S. 471, 485 (1963)); *see also Brown v. Illinois*, 422 U.S. 590 (1975). However, a State prisoner is precluded from asserting a Fourth Amendment claim as a basis for federal habeas relief unless he can demonstrate that the State courts did not afford him a full and fair opportunity to litigate the claim. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Palmer v. Clarke*, 408 F.3d 423, 437 (8th Cir. 2005); *Willett v. Lockhart*, 37 F.3d 1265, 1270 (8th Cir. 1994) (en banc).

The Eighth Circuit has set forth a two-part test to determine whether a habeas petitioner has had an opportunity for a full and fair litigation of a Fourth Amendment claim in State courts. *Willett*, 37 F.3d at 1273. A Fourth Amendment claim is barred from federal habeas review under *Stone v. Powell* unless: 1) the State provided no procedure by which the petitioner could raise his Fourth Amendment claim, or 2) the petitioner was foreclosed from using that procedure because of an unconscionable breakdown in the system. *Willett*, 37 F.3d at 1273.

The first prong of the *Willett* test is satisfied here in that the State of

---

[3] Although Deck cites to the Fifth Amendment in this claim, he does not allege any impropriety in the interrogation that gave rise to the confession, which would make his claim cognizable under the Fifth Amendment. *Cf. New York v. Harris*, 495 U.S 14, 20 (1990).

Missouri has a procedure by which Deck could raise his Fourth Amendment claim. *Willett*, 37 F.3d at 1272 (Eighth Circuit unaware of any State that does not have such a procedure). As to the second prong, there is no evidence before me showing that an unconscionable breakdown in the system prevented Deck from raising the claim. Indeed, Deck himself avers that he moved for the trial court to suppress his confession on the basis urged here, that the trial court considered evidence on the motion, and that the court's denial of the motion was reviewed by the Missouri Supreme Court. (Amd. Petn., ECF#30 at 25.) *See also Deck I*, 994 S.W.2d at 534-36. Deck renewed his motion to suppress at the third penalty-phase trial (Resp. Exh. LL at 545), and the Missouri Supreme Court again reviewed the trial court's denial of the motion. *Deck III*, 303 S.W.3d at 544-45. Accordingly, the State provided Deck the opportunity for full and fair litigation of his Fourth Amendment claim, and he availed himself of this opportunity to conclusion.

Deck does not argue that the State denied him an opportunity to fully and fairly litigate his Fourth Amendment claim. Instead, he contends that *Stone v. Powell* should not apply in a death penalty case. Deck cites no legal authority to support this position, and I am aware of none.

Because the State afforded Deck a full and fair opportunity to litigate his Fourth Amendment claim, and indeed he took full advantage of this opportunity, the claim raised in Ground 1 of the petition is not cognizable in this habeas

proceeding and will be denied.

B.      Ground 30 – Lethal Injection Protocol

In Ground 30, Deck claims that his Eighth Amendment right to be free from cruel and unusual punishment would be violated if he is executed according to the "current execution protocol promulgated by the Missouri Department of Corrections on August 2, 2013," arguing that use of the drug propofol at the dosage prescribed in the protocol is known to cause pain.   (Amd. Petn., ECF #30 at 101.)  Deck admits in his Traverse that the State no longer uses the protocol (Traverse, ECF #67 at 124) but argues that the current protocol also violates the Eighth Amendment.

Because this claim does not challenge the validity of Deck's conviction or the duration of his sentence but instead challenges the lethal injection *procedure* promulgated by the State of Missouri, the claim is not cognizable in this habeas corpus action.  Instead, "a method-of-execution claim must be brought under [42 U.S.C.] § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence."  *Glossip v. Gross*, 135 S. Ct. 2726, 2738 (2015) (citing *Hill v. McDonough*, 547 U.S. 573, 579-80 (2006)).

The claim raised in Ground 30 challenging Missouri's lethal injection protocol is not cognizable in this habeas proceeding and will be denied.

# VI.  Procedurally Defaulted Claims

A.    <u>Plain Error Claims</u>

Deck raised a number of claims on appeal to the Missouri Supreme Court that were not preserved for appellate review.  Citing Missouri law, the supreme court reviewed these claims for plain error and found none.  Deck raises some of these claims in Grounds 14 and 15 of this petition.  Because they were not preserved for appellate review in the State court and were analyzed by the Missouri Supreme Court for plain error, they are subject to procedural default analysis. *Clark v. Bertsch*, 780 F.3d 873 (8th Cir. 2015) (applying the rule set out in *Hayes v. Lockhart*, 766 F.2d 1247 (8th Cir. 1985)).

I invited the parties, including Deck, to address the extent to which some claims may be defaulted under the holdings of *Clark* and *Hayes*.  In response, Deck argues that there is no procedural bar here – and thus no need for cause and prejudice analysis – because 1) the Eighth Circuit wrongly decided *Clark*, 2) United States Supreme Court decisions have since superseded the Eighth Circuit's *Hayes* decision, and 3) *Deck III*'s substantive discussion of Deck's unpreserved claims permits me to address the substance of the claims.  I reject each of these arguments.

First, Deck's argument that *Clark* was wrongly decided is unavailing.  While Deck contends that two Eighth Circuit cases decided before *Hayes* permit federal

habeas relief on claims subject to only plain error review, Deck misapprehends the decisions in these cases. One cannot argue with Deck's position that, as stated in *Dietz v. Solem*, 640 F.2d 126 (8th Cir. 1991), habeas relief is not barred by a petitioner's mere failure to preserve a claim for review. Instead, as applied in *Dietz* and reinforced in *Clark*, habeas relief may be available if the petitioner shows cause and prejudice for what is otherwise a procedurally defaulted claim. In *Brouillette v. Wood*, 636 F.2d 215 (8th Cir. 1980), the other case Deck relies on, the issue there was found by the Eighth Circuit to have been properly submitted to the State supreme court. The Eighth Circuit therefore did not address the plain error/procedural default issue we face here. Accordingly, I do not accept Deck's argument that the Eighth Circuit's pre-*Hayes* decisions of *Dietz* and *Brouillette* stand for the proposition that there is no procedural default when a Missouri court addresses a claim for plain error.

Nor do the United States Supreme Court's decisions of *Harris v. Reed*,[4] *Ylst v. Nunnemaker*,[5] and *Coleman v. Thompson*,[6] change the effect of *Hayes*. *Harris* held that procedural default does not bar federal habeas relief unless the last State court to address the claim clearly and expressly states that its decision rests on a State procedural bar. *Ylst* held that a federal habeas court must look through an

---

[4] 489 U.S. 255 (1989).
[5] 501 U.S. 797 (1991).
[6] 501 U.S. 722 (1991).

unexplained State court order to the last reasoned decision to determine the basis for the decision. And *Coleman* held that the presumption that a State court relied on federal law in making its judgment applies only when the federal court has good reason to question whether there is an independent and adequate state ground for the decision. None of these circumstances apply here. The claims raised in Grounds 14 and 15 were raised on direct appeal for plain error review, and the Missouri Supreme Court clearly and expressly stated in all relevant respects that it was reviewing Deck's unpreserved claims for plain error. *Deck III* is not an unexplained order, nor does it leave me questioning the basis of its decision.

Finally, *Deck III*'s substantive discussion of Deck's unpreserved claims does not itself lift the procedural bar given that the court's discussion was merely in conjunction with its plain error review. *See Hayes*, 766 F.2d at 1252; *see also Pollard v. Delo*, 28 F.3d 887, 889 (8th Cir. 1994) (State court's consideration of merits of claim "as a matter of grace" does not erase fact that claim is defaulted because of petitioner's failure to comply with State's procedural rule).

Accordingly, contrary to Deck's assertion, the claims raised in this petition that were addressed by the Missouri Supreme Court only for plain error are subject to procedural default analysis.

1.      *Ground 14 – Prosecutorial Misconduct, Improper Closing Argument*

In his fourteenth ground for relief, Deck argues that the prosecutor engaged

in improper closing argument at the third penalty-phase trial when he 1) appealed to the jurors to return the death penalty based on their accountability to the Longs' grandchildren and great-grandchildren; 2) improperly personalized the argument by urging the jurors to place themselves in the victims' shoes; 3) misstated the evidence by analogizing the jurors to sheepdogs, the victims and society to sheep, and Deck to a wolf, and that the jurors would be responsible for Deck's future victims – including prison guards and other inmates – if he were not sentenced to death; and 4) misstated the evidence by arguing that Deck had had prior escapes from prison and had helped prisoners serving life sentences to escape. Deck acknowledges that only the accountability claim was preserved and addressed by the Missouri Supreme Court on appeal, and that the court "did not find that the trial court plainly erred in allowing [the other arguments]." (*See* Amd. Petn., ECF #30 at 57.)

As discussed above, I am bound by the Eighth Circuit's holding in *Clark* that a federal habeas court cannot reach an unpreserved and procedurally defaulted claim merely because a reviewing State court analyzed that claim for plain error. *Clark*, 780 F.3d at 874. Instead, I may review the merits of the claim only if Deck shows cause for the default and actual prejudice resulting from the alleged constitutional violation, or that a fundamental miscarriage of justice would occur if I were not to address the claim. *Coleman*, 501 U.S. at 750. Here, all but Deck's

first claim of improper closing argument are procedurally defaulted given that they were unpreserved under Missouri law and were reviewed by the State court only for plain error.  Deck asserts no cause for or prejudice resulting from this procedural default.  Nor does he claim that a fundamental miscarriage of justice would occur if I were not to address the merits of the claims.

Accordingly, to the extent Deck claims in Ground 14 that the prosecutor improperly urged the jurors to place themselves in the victims' shoes, argued that the jurors would be responsible for Deck's future victims if he were not sentenced to death, and stated that Deck had had prior escapes from prison and had helped prisoners serving life sentences to escape, the claims are procedurally barred from federal habeas review and will be denied.  Deck's claim that the prosecutor improperly argued that the jurors were accountable to the victims' family is the only part of Ground 14 that is not procedurally barred, and it is addressed on its merits later in this opinion.

2.     *Ground 15 – Jury Instruction Error*

In Ground 15, Deck claims that the trial court erred when it failed to read a mandatory instruction under the Missouri Approved Instructions before death qualification of the venire panel.  Although Deck raised this claim on direct appeal of his final penalty-phase trial, the Missouri Supreme Court reviewed the claim only for plain error because it was not preserved for appeal.  *Deck III*, 303 S.W.3d

at 545-47.  Deck acknowledges this circumstance.  (*See* Amd. Petn., ECF #30 at 59.)  Given the unpreserved and procedurally defaulted nature of the claim, *Clark*, 780 F.3d at 874, I may review its merits only if Deck shows cause for the default and actual prejudice resulting from the alleged constitutional violation, or that a fundamental miscarriage of justice would occur if I were not to address the claim. *Coleman*, 501 U.S. at 750.  Deck asserts no cause for or prejudice resulting from this procedural default.  Nor does he claim that a fundamental miscarriage of justice would result if I were not to address the merits of the claim.

Accordingly, the claim raised in Ground 15 of the petition is procedurally barred from federal habeas review and will be denied.

B.     Ineffective Assistance of Counsel Claims Subject to *Martinez* Analysis

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 17. Accordingly, under *Martinez*, a petitioner may claim ineffective assistance of post-conviction counsel to establish "cause" for procedural default of a habeas claim of ineffective assistance of trial counsel.  To establish cause in this manner, the petitioner must show that post-conviction counsel's assistance was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), and further

demonstrate that his underlying claim of ineffective assistance of trial counsel is a "substantial" one, that is, that the claim has some merit. *Martinez*, 566 U.S. at 14. If the State demonstrates that the underlying claim of ineffective assistance of trial counsel is unsubstantial or non-meritorious, the petitioner cannot establish that post-conviction counsel was ineffective and thus cannot show cause for default of the underlying claim. *Id.* at 15-16. Likewise, if post-conviction counsel did not perform below constitutional standards, no cause is shown for default. *Id.*

In this habeas petition, Deck raises numerous claims of ineffective assistance of trial counsel that were not raised in any post-conviction proceeding and thus are subject to procedural default. For each claim, Deck invokes *Martinez* and argues that ineffective assistance of post-conviction counsel caused his default. Although respondents contend that this "new rule" of *Martinez* may not be applied retroactively under *Teague v. Lane*, 489 U.S. 288 (1989), I note that when Deck filed this habeas action in August 2012, *Martinez* permitted habeas review of such claims. I will therefore apply *Martinez* in this case. *See Buck v. Davis*, 137 S. Ct. 759, 779-80 (2017). However, because the following defaulted claims of trial counsel error are not substantial, post-conviction counsel did not render ineffective assistance by failing to raise the claims.

GUILT PHASE

1.    *Ground 5 – Expert on False Confessions*

In his fifth ground for relief, Deck claims that trial counsel was ineffective for failing to investigate and present evidence from an expert on false confessions at both the guilt-phase trial and third penalty-phase trial.  Deck contends that such an expert would have aided defense counsel in trial preparation and would have provided trial testimony aiding the jury in assessing factors relevant to the truthfulness of confessions.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *Strickland*, 466 U.S. at 686.  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense.  *Id.* at 687.  In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688.  The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 694.

A presumption exists that counsel's conduct "might be considered sound trial strategy." *Strickland*, 466 U.S. at 688. However, "the strength of the presumption turns on the adequacy of counsel's investigation[.]" *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.

Although Deck raised claims of ineffective assistance of trial counsel in State court, he did not pursue a claim on the theory presented here, that is, that counsel was ineffective for failing to investigate and call an expert witness regarding false confessions. For the following reasons, post-conviction counsel was not ineffective in their failure to bring the claim in post-conviction proceedings.

Generally, in Missouri, expert testimony is not admissible if it relates to witness credibility because it invades the province of the jury. *State v. Wright*, 247 S.W.3d 161, 166 (Mo. Ct. App. 2008) (citing *State v. Link*, 25 S.W.3d 136, 143 (Mo. banc 2000)). Testimony from experts relating to factors that lead people to make false confessions and opinions that certain of those factors are present in the circumstances of the case "clearly . . . invade the province of the jury" because they relate to the credibility of a defendant's confession. *Id.* at 168. "'To allow such expert testimony invades the jury's proper realm.'" *Id.* (quoting *State v. Davis*, 32 S.W.3d 603, 609 (Mo. Ct. App. 2000)). Because the trial court most likely would have concluded that testimony from an expert on false confessions would be inadmissible, it cannot be said that trial counsel's conduct in failing to pursue this strategy in Deck's case was deficient. *See Dearstyne v. Mazzuca*, 48 F. Supp. 3d 222, 307-08 (N.D.N.Y. 2011).

Nor can it be said that trial counsel rendered ineffective assistance by failing to secure such an expert to aid them in pursuing motions to suppress, strategizing for jury selection, and planning the examination of witnesses. A review of the record shows counsel to have ably and thoroughly litigated the issue of Deck's confession, as demonstrated by the pretrial suppression motion and hearing,[7]

---

[7] Resp. Exh. C at 153-71, 190-98.

counsel's opening statement,[8] vigorous and sustained cross-examination designed to call into question the events leading to Deck's confession and the interrogation itself,[9] as well as closing argument to the jury regarding the credibility of the confession.[10] *See Dearstyne*, 48 F. Supp. 3d at 308; *Davis*, 32 S.W.3d at 609. In addition, the jury was instructed concerning Deck's statements, including what factors to consider in determining what weight, if any, to give the statements.[11] Other than Deck's speculation that a confessions expert would have provided additional assistance to counsel, nothing before the Court shows a reasonable probability that such additional assistance would have affected the outcome of the case, especially in light of counsel's conduct in ably pursuing a false confessions defense.

Nor can Deck show that this evidence would have been admitted at the third penalty-phase trial. Deck's guilt was no longer at issue and could not be relitigated. Given that testimony from a confessions expert would likely not have been admitted at the third penalty-phase trial because of its lack of relevance, penalty-phase counsel cannot be said to be ineffective for failing to secure such a witness.

Accordingly, given the likelihood that the trial court would have disallowed

---

[8] Resp. Exh. E at 551-53.
[9] Resp. Exh. F at 770-89.
[10] Resp. Exh. G at 826-30.
[11] Resp. Exh. B at 207.

expert testimony on false confessions, and Deck's failure to show a reasonable probability that assistance from such an expert would have changed the outcome of the proceedings, it cannot be said that Deck's underlying claim of ineffective assistance of trial counsel was so substantial that post-conviction counsel was ineffective for failing to raise the claim during post-conviction proceedings.  Deck has thus failed to show adequate cause to excuse his default of the claim raised in Ground 5 of the instant petition.  *Martinez*, 566 U.S. at 15-16.  Deck's failure to show cause for his procedural default makes a determination of prejudice unnecessary.  *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007).

Nor has Deck shown that a fundamental miscarriage of justice would result if I were not to address the merits of his underlying claim. To invoke the "fundamental miscarriage of justice" exception to showing cause and prejudice for a defaulted claim, Deck must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006); *see also Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995).  "[A] claim of 'actual innocence' is . . . a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Mansfield v. Dormire*, 202 F.3d 1018, 1024 (8th Cir. 2000).  To successfully pursue a claim of actual innocence, Deck must show 1) new reliable evidence not available at trial; and 2) that, more

likely than not, no reasonable juror would have convicted him in light of the new evidence. *Amrine v. Bowersox,* 238 F.3d 1023, 1029 (8th Cir. 2001); *see also Kidd v. Norman*, 651 F.3d 947 (8th Cir. 2011); *Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010). Here, Deck presents no new reliable evidence of his actual innocence. *Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."); *Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (en banc) (bare, conclusory assertion that a petitioner is actually innocent insufficient to excuse a procedural default). Deck has failed to present any evidence of actual innocence. He has thus failed to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Weeks,* 119 F.3d at 1352-53.

Ground 5 is therefore procedurally barred from federal habeas review and will be denied.

2.    *Ground 6 – Failure to Conduct Adequate Investigation into Innocence*

In his sixth ground for relief, Deck claims that trial counsel was ineffective for failing to investigate and present at trial evidence regarding his innocence. Specifically, Deck contends that counsel should have investigated the following witnesses, averring that they would have provided testimony supporting his

innocence and theory of false confession: 1) Elaine Gunther, 2) James Boliek, 3) Kathy Brewster, 4) Michael Deck, 5) William Boliek, 6) Tonia Cummings, 7) Sheila Francis, 8) Unknown Jefferson Memorial Hospital Staff, and 9) himself – Carman Deck, Jr. Deck also contends that counsel should have pursued DNA testing of physical evidence seized from the victims' home and from his car to determine whether the evidence was connected to the victims.

"[A] reasoned decision not to call a witness is a virtually unchallengeable decision of trial strategy." *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010) (internal citation and quotation marks omitted). However, failing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel if the petitioner can "make a substantial showing that, but for counsel's failure to interview . . . the witnesses in question, there is a reasonable probability that the result of his trial would have been different." *Kramer v. Kemna,* 21 F.3d 305, 309 (8th Cir. 1994). For the following reasons, Deck has not made the substantial showing required of him in this case.

There is no per se rule that failure to interview witnesses constitutes ineffective assistance because such claims turn on their individual facts. *Sanders v. Trickey*, 875 F.2d 205, 209 (8th Cir. 1989). To succeed on a claim that counsel was ineffective for failing to investigate, Deck may not base his claim on

conclusory allegations but rather must allege what information his attorney failed to discover. *See id.* at 210. A habeas petitioner who offers only speculation that he was prejudiced by counsel's failure to investigate fails to show ineffective assistance of counsel. *Id.*; *see also Redeemer v. State,* 979 S.W.2d 565, 569 (Mo. Ct. App. 1998).

James Boliek

A review of the trial transcript in its entirety shows that Deck's strategy at trial was to implicate James Boliek in the murders of James and Zelda Long. Indeed, Deck adduced evidence consistent with this theory and argued this theory to the jury. Evidence was also adduced, however, that the criminal investigation into James Boliek's involvement in the murders did not proceed beyond its initial stages because of alibi evidence considered by the investigators to be sufficient to remove suspicion from Boliek. Deck now claims that trial counsel was ineffective for failing to investigate and call Boliek to testify at trial regarding Deck's innocence.

As an initial matter, I find it unlikely that Boliek would have testified to Deck's innocence inasmuch as, in order to do so consistent with Deck's theory of defense, he would have had to essentially confess to his own involvement in the crime. Nevertheless, Deck has failed to present any independent evidence as to what Boliek would have allegedly said had he been interviewed or called to testify.

He has provided no affidavits or any other information that would support his claim that Boliek would have testified to his innocence. Instead, Deck provides only speculation about what Boliek's potential testimony would have been. Recognizing the deferential standard when reviewing the conduct of counsel, I decline to find prejudice in this situation when there is no evidence other than speculation to support the finding. *See Sanders,* 875 F.2d at 210.

Because Deck cannot satisfy both prongs of the *Strickland* analysis, he cannot succeed on his claim of ineffective assistance of trial counsel for failing to investigate and call James Boliek to testify at trial. Post-conviction counsel was not ineffective for failing to raise this unsubstantial claim on post-conviction review.

<u>Elaine Gunther and William Boliek</u>

Deck avers that Elaine Gunther (James Boliek's neighbor) and William Boliek (James Boliek's father) had information relating to James Boliek's alibi and would have testified regarding Deck's innocence. As with James Boliek, however, Deck offers only general speculation that these individuals would have provided information and would have testified as to his innocence. Deck does not indicate what information would have been obtained, the content of any potential testimony, or any independent support for his claim that investigation of these individuals would have had an effect on the outcome of his case. Because Deck

offers nothing more than speculation, he has failed to show that he was prejudiced by counsel's failure to further investigate these potential witnesses and thus cannot show ineffective assistance of trial counsel with respect to Ms. Gunther and William Boliek. *See Saunders v. United States*, 236 F.3d 950, 952-53 (8th Cir. 2001) (with lack of specificity as to content of proposed testimony, petitioner cannot show how outcome of trial would have been different); *Sanders*, 875 F.2d at 210. *See also Redeemer*, 979 S.W.2d at 569.

Post-conviction counsel was not ineffective for failing to pursue this unsubstantial claim on post-conviction review.

Nurse Francis and Unknown Staff of Jefferson Memorial Hospital

Deck avers that investigation of these individuals would have shown that he arrived at the hospital with his sister before the time the murders were committed and left after they were committed. Although Deck contends that these persons would have testified to such matters at trial, he has provided no affidavits or any other information that would support this claim. Deck provides only speculation.

Nevertheless, evidence adduced before the trial court showed that Deck arrived at the Long residence on July 8, 1996, shortly after 9:00 p.m. and was there for ten to fifteen minutes. (Resp. Exh. F at 763-64; Exh. M at 336.) Additional evidence before the trial court showed Jefferson Memorial Hospital to be located about six to eight miles from the Long residence and that this distance could be

traveled in ten minutes. (Resp. Exh. F at 770.) As such, Nurse Francis's and the

hospital staff's proposed testimony that Deck was present at the hospital at 10:10

p.m. (*see* Resp. Exh. L at 169) would have done nothing to support Deck's claim

that he was present at the hospital when the murders occurred. Deck has thus

failed to show a reasonable probability that the outcome of his trial would have

been different had such testimony been adduced.

Because Deck cannot show that counsel's failure to investigate and/or call

Nurse Francis and the hospital staff to testify at trial prejudiced his defense, he

cannot demonstrate that counsel was ineffective by this failure. Post-conviction

counsel cannot be ineffective for failing to pursue a non-meritorious claim.

Michael Deck

Deck avers that his brother, Michael Deck, had information regarding

Boliek's alibi and would have testified to Deck's innocence. No independent

information has been presented to this Court to support these speculative

averments. On this basis alone, Deck's claim of ineffective assistance of trial

counsel with respect to counsel's conduct involving Michael Deck fails.

I also note, however, that Michael Deck testified at the first penalty-phase

trial, which was conducted immediately upon the jury's initial finding of guilt.

The substance of Michael Deck's testimony involved Deck's upbringing and the

relationship he had with his family. At the post-conviction motion hearing, Deck's

trial counsel testified that Michael Deck was in the military during the relevant time and was not in the State of Missouri at the time trial began. Counsel testified that the defense team interviewed Michael Deck by telephone and determined that he would be an effective mitigation witness during the penalty phase. (Resp. Exh. N at 134-35.) This testimony belies Deck's contention that counsel failed to investigate Michael Deck as a potential witness.

To the extent Deck argues that counsel should have investigated Michael Deck and presented his testimony at the guilt phase of the trial given his purported information regarding Boliek's alibi and Deck's innocence, Deck offers nothing but speculation that Michael Deck had such information and would have provided this testimony. Prejudice cannot be found on speculation alone. Because Deck could not succeed on a claim that trial counsel was ineffective for failing to investigate and call Michael Deck to testify at the guilt phase of his trial, post-conviction counsel was not ineffective for failing to bring this unsubstantial claim on post-conviction review.

Kathy Brewster

Deck avers that his mother, Kathy Brewster, had information relating to Boliek's alibi and would have testified to Deck's innocence. Because Deck presents nothing other than speculation to support this averment, he cannot succeed on his claim that counsel was ineffective in relation to their conduct involving Ms.

Brewster. Nevertheless, I find counsel's failure to call Ms. Brewster to testify to be a matter of sound trial strategy. Deck's claim of ineffective assistance of counsel in this regard thus fails.

At Deck's post-conviction hearing, trial counsel testified that they or members of the defense team met and/or spoke with Brewster on numerous occasions prior to trial. Counsel's impression from these meetings was that Brewster was more concerned with her daughter, Tonia Cummings, than with Deck. Counsel specifically testified that they determined not to call Brewster to testify at the penalty phase of the trial because she appeared not to be "wholeheartedly behind her son" and was not "trust[ed] . . . to testify on behalf of her son." (Resp. Exh. N at 91, 112, 115, 137-39.) There is no indication that Brewster's demeanor or focus would have been different during the guilt phase of the trial, and Deck has presented nothing so indicating.

The decision to call family members as witnesses is a strategic decision. *Walls v. Bowersox*, 151 F.3d 827, 834 (8th Cir. 1998). The failure to present witness testimony that could be detrimental to the defense is not unreasonable under *Strickland*. *See Johns v. Bowersox*, 203 F.3d 538, 546 (8th Cir. 2000); *see also Haley v. Armontrout*, 924 F.2d 735, 740 (8th Cir. 1991) (counsel did not render ineffective assistance by failing to use witness testimony that would not have benefitted petitioner and may have had significant detrimental effect).

Counsel's reasons not to call Brewster to testify at the penalty phase of the trial apply equally to the guilt phase of the trial. Because counsel reasonably determined that Brewster's testimony could be more detrimental to Deck than beneficial, Deck cannot overcome the strong presumption that counsel's failure to call her to testify at the guilt phase of the trial was sound trial strategy. *See Walls*, 151 F.3d at 834 (not ineffective assistance in failing to call family members to testify when such testimony would have revealed their total lack of support). Further, Deck's unsupported contention that counsel failed to properly conduct an investigation with respect to Brewster is belied by the record and without merit.

Post-conviction counsel is not ineffective for failing to bring a non-meritorious claim of ineffective assistance of trial counsel.

Tonia Cummings

Deck's sister, Tonia Cummings, was a co-defendant in the underlying criminal action and was likewise charged with two counts of murder first degree and armed criminal action, burglary, and stealing in relation to the Long murders. (Resp. Exh. N at 22.) Deck avers that Cummings would have given testimony regarding his innocence and her fear of James Boliek that caused her to implicate herself and Deck in the Long murders.

At the hearing on Deck's motion for post-conviction relief, Cummings' trial counsel testified that she would have advised Cummings not to testify at Deck's

trial because of the possibility that she could incriminate herself, thereby causing harm to herself. (Resp. Exh. N at 27.) Deck's trial counsel testified that they attempted but were unable to speak with Cummings prior to trial and were told by Cummings' attorney that she was a "basket case." (*Id.* at 98, 140.) Counsel cannot be considered ineffective for failing to secure testimony from a witness unavailable to testify on the advice of her own counsel. *See Weaver v. United States*, 793 F.3d 857 (8th Cir. 2015).

Further, a review of the evidence adduced at the post-conviction proceedings shows that evidence from Cummings would have likely had a detrimental effect on Deck's defense. During the post-conviction proceedings, Cummings submitted an affidavit attesting that she and Deck drove to the Long residence on July 8, 1996; that Deck was at the residence for ten to fifteen minutes; that she did not see Deck with a gun while he was at the residence; and that Deck had earlier bragged about burglarizing a home that had a safe. Cummings also attested to other persons' fear of James Boliek and to other persons' beliefs that he committed the murders. (Resp. Exh. M at 7-8.) These matters to which Cummings attested are damaging to Deck and would not have exonerated him. In light of these sworn statements that are damaging to Deck, it cannot be said that a reasonable probability exists that Deck's trial would have had a different result had counsel called Cummings to testify. The failure to present witness testimony that could be detrimental to the

defense is not unreasonable under *Strickland*. *See Johns*, 203 F.3d at 546. Post-conviction counsel was therefore not ineffective for failing to bring this unsubstantial claim on post-conviction review.

Petitioner Carman Deck

Deck contends that if he had been permitted to testify at trial, he would have testified that he was innocent, that his confession was false and given in response to abusive interrogation, and that he feared James Boliek.

As an initial matter, I note that Deck raised a claim in his *pro se* post-conviction motion that trial counsel was ineffective for disagreeing with him on the issue of testifying on his own behalf. (Resp. Exh. L at 10.) This claim was not raised in the amended motion filed by appointed counsel. (Resp. Exh. O at 233-34.) At the post-conviction hearing, the trial court provided Deck the opportunity to pursue the claim; but Deck, speaking on his own behalf, informed the court that he did not want to pursue it. (*See id.* at 231-34.) I question how post-conviction counsel can be ineffective for failing to raise a claim of ineffective assistance of trial counsel that Deck himself told the court he did not want to pursue. Nevertheless, the record before the post-conviction motion court shows trial counsel did not act unreasonably with respect to Deck's ability to testify on his own behalf.

A criminal defendant has the ultimate authority to decide whether to testify

on his own behalf. *Whitfield v. Bowersox*, 324 F.3d 1009, 1013 (8th Cir.), *vacated in part on other grounds*, 343 F.3d 950 (8th Cir. 2003). Counsel may advise a defendant not to testify, however, as a matter of reasonable trial strategy. *Id.* at 1016-17. At the hearing on Deck's post-conviction motion, counsel testified that no issue arose with respect to Deck's right to testify and, further, that during the course of the trial, counsel came to believe that having Deck testify would have a detrimental effect.

> A.    [W]e had discussed various times during our representation and our preparation of whether or not Carman would testify. We had never made any hard and fast rule about Carman testifying or not testifying. When we actually got into trial I think Carman was sufficiently nervous that he never pushed the issue about testifying and after all was said and done I certainly didn't want to put him on the stand and have him cross-examined about his statements that he'd given to the police upon his arrest. Didn't want to have him go through that again. It was very damaging. So I felt it was in his best interest to keep him off the stand and that was never a big point that we had to argue.
>
> Q.    You felt that would highlight his testimony about his confession?
>
> A.    Right.
>
> Q.    By having to go through it again?
>
> A.    Yes.
>
> Q.    And you felt that -- We're talking about both guilt and penalty phase?
>
> A.    Right.

(Resp. Exh. O at 230.)

Deck does not assert that counsel overbore his will to testify, and the record shows that the issue never arose between him and counsel given his nervousness at trial and counsel's belief that his testimony would actually serve to do more harm than good. Deck makes no argument nor presents any evidence that his testimony, if adduced, would have made a difference to the jury. Counsel cannot be found to be ineffective for determining, for sound strategic reasons, that Deck should not testify and for not pursuing the issue where none existed.

Accordingly, Deck has not shown that his trial counsel's performance was deficient or that he suffered any prejudice on account of counsel's assistance regarding his right to testify, *Whitfield,* 324 F.3d at 1017, and post-conviction counsel was not ineffective for failing to pursue this claim.

DNA Evidence

Deck contends that trial counsel was ineffective for failing to investigate whether physical evidence seized at the Longs' home and from his car could be connected to the Longs through DNA testing. Deck does not specify what physical evidence should have been tested, nor does he identify the purpose for such testing other than "to exclude physical evidence belonging to the Longs." (Traverse, ECF #67 at 54.) Nor does he explain how information obtained through DNA testing

would have aided him such that a reasonable probability exists that the outcome of his trial would have been different. By failing to provide any specifics, Deck has failed to demonstrate either deficient performance or any prejudice from counsel's conduct. *Forest v. Delo*, 52 F.3d 716, 722 (8th Cir. 1995).

Nevertheless, testimony adduced at trial showed that items seized from Deck's car yielded no blood evidence; and testing of Deck's clothing yielded no trace evidence, such as blood, hair, or fibers from the crime scene. (Resp. Exh. F at 660-61, 681-82, 688-89.) In addition, various items from the Long residence, as well as the decorative tin and the gun seized from Deck's car, were dusted for fingerprints (*id.* at 656-58, 694-95), but, as stipulated by the parties at trial, the fingerprint evidence had no evidentiary value – it could not be compared to either Deck's or the victims' fingerprints. (*Id.* at 694.) Given that evidence and testimony adduced at trial showed no forensic link between the physical evidence seized and the Longs' belongings, I am unable to conclude that counsel rendered ineffective assistance for failing to investigate or adduce additional evidence for the purpose of excluding such a link. The failure to present cumulative evidence does not result in prejudice sufficient to give rise to a claim of ineffective assistance of counsel. *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006). Post-conviction counsel was therefore not ineffective for failing to raise this unsubstantial claim.

Accordingly, it cannot be said that Deck's underlying claim of ineffective assistance of trial counsel with regard to the above-named witnesses and evidence was so substantial that post-conviction counsel was ineffective for failing to raise the claim during post-conviction proceedings. Deck has thus failed to show adequate cause to excuse his default of the claim raised in Ground 6 of the petition, *Martinez*, 566 U.S. at 15-16, thereby making a determination of prejudice unnecessary. *Cagle*, 474 F.3d at 1099. Nor has Deck shown that a fundamental miscarriage of justice would result if I were not to address the merits of his underlying claim.

Accordingly, because the claim raised in Ground 6 of the petition is procedurally barred, it will be denied.

3.    *Ground 7 – Introduction of Prior Convictions During Voir Dire*

The venire panel from which jurors were selected to determine Deck's guilt underwent voir dire examination in relation to the guilt phase of the trial as well as in relation to a potential penalty phase. The petit jury that found Deck guilty proceeded to determine his penalty at the first penalty-phase trial and ultimately recommended the death sentence for the Long murders. During the voir dire examination, Deck's trial counsel stated to the venire that, if the matter were to proceed to the penalty phase, they may hear evidence that Deck had some prior criminal convictions for non-violent offenses. Because of this, the petit jury

selected from this venire – and who determined Deck's guilt – had knowledge during the guilt phase of the trial that Deck had prior convictions. Deck argues here that trial counsel was ineffective for informing the jury of his prior convictions and that this deficient performance prejudiced his defense in that the jury was more likely to find him guilty of the offenses charged given his known history of criminal conduct.

Counsel's actions during voir dire are considered matters of trial strategy. *See Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001); *see also, e.g., Knese v. Roper*, No. 4:03CV1082 CEJ (TIA), 2006 WL 2506005, at *6-8 (E.D. Mo. Aug. 28, 2006) (method of voir dire matter of trial strategy). In conducting voir dire examination for a capital case, defense counsel's informing the venire panel that the defendant has prior convictions does not *per se* constitute ineffective assistance of counsel under *Strickland*. *See Brown v. Luebbers*, 344 F.3d 770, 781-82 (8th Cir. 2003) (noting the jury "surely would find out about it" since prosecution intended to argue prior conviction as aggravating factor; matter of trial strategy); *Caldwell v. Steele*, No. 4:06CV394 RWS, 2009 WL 90352, at *11 (E.D. Mo. Jan. 14, 2009) (no deficient performance when, as matter of trial strategy, counsel informed venire of petitioner's prior record in order to remove potential jurors who would negatively assess petitioner's testimony based thereon); *State v. Moore*, 930 S.W.2d 464, 469 (Mo. Ct. App. 1996) (no prejudice from defense counsel

revealing two prior convictions to venire where State introduced strong evidence of guilt at trial). *Cf. Barnett v. Roper*, No. 4:03CV00614 ERW, 2006 WL 2475036, at \*41-44 (E.D. Mo. Aug. 24, 2006) (no ineffective assistance where, as a matter of trial strategy, counsel did *not* inform venire of petitioner's prior convictions because counsel knew petitioner would not testify during guilt phase of trial).

Viewing the voir dire examination in context here, defense counsel informed the venire panel that evidence may show that Deck had prior convictions of a non-violent nature. Counsel then asked the panel if this circumstance would prevent any potential jurors from fully considering evidence offered on behalf of Deck during a possible penalty trial. (Resp. Exh. E at 452.) It thus appears that counsel was attempting to weed out those potential jurors who would not be able to fully consider mitigating evidence favorable to Deck on account of prior convictions. This is reasonable strategy. *State v. Johnson*, 901 S.W.2d 60, 62 (Mo. banc 1995).

In the circumstances of this case, it cannot be said that trial counsel's challenged conduct during voir dire was deficient. Because counsel's conduct was not deficient, Deck cannot establish ineffective assistance of counsel. *Brown*, 344 F.3d at 782. Because Deck's claim of ineffective assistance of trial counsel is not substantial, post-conviction counsel was not ineffective for failing to raise the claim during post-conviction proceedings. Deck has thus failed to show adequate cause to excuse his default of the claim raised in Ground 7 of the petition.

*Martinez*, 566 U.S. at 15-16. Nor has Deck shown that a fundamental miscarriage of justice would occur if I were not to review the claim. The claim raised in Ground 7 will therefore be denied.

    4.       *Ground 8 – Testimony from Witness Knoll re Long Residence*

In his eighth ground for relief, Deck contends that trial counsel was ineffective for failing to object to certain portions of testimony provided by State witness Shane Knoll, arguing that the testimony was inadmissible hearsay and thus its introduction violated his right to confront witnesses as guaranteed by the Sixth Amendment.

During the guilt phase of the trial, Detective Shane Knoll of the Jefferson County Sheriff's Department provided the following testimony regarding his interrogation of Deck after Deck was taken into custody on July 8, 1996: During the course of the interrogation, Deck made statements both orally and in writing. On the morning of July 9, Detective Knoll asked Deck "what happened," and Deck provided a statement that Jim Boliek approached him and Tonia and wanted them to follow Boliek to DeSoto; that when they did, they parked on a side road, and Boliek told them he would be back in about ten to fifteen minutes and for them to wait for him; that when Boliek returned, he gave Deck a pistol and a can of quarters and told Deck and Tonia to follow him back to St. Louis; and that Tonia became sick on the way back to St. Louis, and he took her to the hospital. At the

- 47 -

time Deck gave this statement to Detective Knoll, no crime scene had yet been

discovered.  Detective Knoll then asked Deck where Boliek was so that an attempt

could be made to determine the location of the crime scene.  In response, Deck told

him "to go to the fourth house on the left on Long Road."  (Resp. Exh. F at 752-

55.)

Detective Knoll testified that he then contacted Corporal John Dolen and

told him where to go.  (Resp. Exh. F at 755.)  Detective Knoll testified further:

> A.    . . . Probably three minutes after that I received a phone call
> back from Corporal Dolen, who said, in fact, that they were at the
> Long residence and at that time they had two people that were
> deceased.
>
> Q.    At that time what did you do?
>
> A.    Sergeant Carle started making necessary phone calls to activate
> other detectives because at this point we're working a double
> homicide.  He was on the phone.  I basically stayed with Carmen[12]
> Deck.  Then once after Sergeant Carle made his phone calls Carmen
> was placed back in his holdover cell in the fourth precinct.  We left
> and went to the actual crime scene on Long Road.
>
> Q.    Now, did you attempt to check out his story about Jim Boliek?
>
> A.    Yes, I did.

(*Id.* at 755-56.)

Deck contends that trial counsel was ineffective for failing to object to

Detective Knoll's testimony regarding Corporal Dolen's out-of-court statement

---

[12] Throughout the trial transcript, Deck's first name is misspelled as "Carmen."

regarding two deceased persons found at the location described by Deck, arguing that the statement was hearsay and inadmissible at trial. Deck argues that if counsel had objected to this testimony, the jury would have been advised to disregard the statement, resulting in a reasonable probability that the outcome of the trial would have been different. Because Detective Knoll's testimony did not constitute hearsay, the claim fails.

The Sixth Amendment secures the right of an accused to be confronted with the witnesses against him. This protection serves to bar the introduction of testimonial hearsay. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). However, a statement offered for its effect on the listener rather than for the truth of the matter asserted is not hearsay. *United States v. Wright*, 739 F.3d 1160, 1170 (8th Cir. 2014). Such non-hearsay statements include those offered to explain the reasons for or propriety of a police investigation. *United States v. Malik*, 345 F.3d 999, 1001 (8th Cir. 2003).

Here, testimony of Corporal Dolen's out-of-court statement was offered for the purpose of explaining why Detective Knoll continued in his investigation and the manner by which he did – that is, that a crime scene had been established which was linked to Deck's account implicating Jim Boliek, and that further investigation into the scene and into Boliek needed to be conducted. *See, e.g., United States v. Brooks*, 645 F.3d 971, 977 (8th Cir. 2011) (statement explained

why officers went to residence and why they would be more interested in apprehending certain individual); *Suggs v. Stanley*, 324 F.3d 672, 681-82 (8th Cir. 2003) (upholding admission of officer's statement about what dispatcher told him because it was offered to show why officer went to a specific house). Further, Deck squarely placed the propriety of the investigation into issue throughout the trial of the case, with repeated challenges to the validity of his confession and the extent to which Boliek was investigated. Statements explaining the course of a police investigation in such circumstances are allowed into evidence. *United States v. Holmes*, 620 F.3d 836, 841 (8th Cir. 2010) (citing *Malik*, 345 F.3d at 1001-02).

Because Detective Knoll's challenged testimony regarding Corporal Dolen's statement is not hearsay, counsel did not err in failing to object to it on hearsay grounds. Counsel is not ineffective for failing to raise a non-meritorious objection. *See McReynolds v. Kemna*, 208 F.3d 721, 724 (8th Cir. 2000) ("[C]ounsel did not act outside the spectrum of professionally reasonable performance in failing to urge a Confrontation Clause claim unlikely to succeed.").

Nevertheless, the admission of Corporal Dolen's statement that two deceased persons were found at the Long residence was not prejudicial to Deck given that other evidence establishing that fact was already properly before the jury. *See United States v. Bercier*, 506 F.3d 625, 632 (8th Cir. 2007); *United*

*States v. Ramos-Caraballo*, 375 F.3d 797, 803-04 (8th Cir. 2004) (where evidence is at most an extra helping of what jury has heard before, evidence is merely cumulative and its admission does not result in reversible error). Deck therefore cannot demonstrate how the exclusion of Corporal Dolen's statement would have had any effect on the outcome of the trial of this case. Where a petitioner cannot show prejudice on account of counsel's alleged deficient conduct, he cannot demonstrate ineffective assistance of counsel.

Because Deck cannot demonstrate that trial counsel was deficient in his failure to object to admissible evidence or that he was prejudiced by such conduct, it cannot be said that the claim of ineffective assistance of trial counsel raised in Ground 8 is so substantial that post-conviction counsel was ineffective for failing to raise the claim on post-conviction review.

Because post-conviction counsel was not ineffective for failing to raise this claim, Deck has failed to establish cause for his procedural default of the claim. Nor has Deck shown that a fundamental miscarriage of justice would occur if I were not to review the claim. Ground 8 of the petition will be denied.

     5.     *Ground 9 – Testimony from Witness Knoll re Boliek Alibi*

In Ground 9, Deck challenges the following testimony from Detective Knoll given in response to the prosecutor's questioning on re-direct examination regarding the investigation of Jim Boliek:

- 51 -

Q.    How many people besides Jim Boliek gave him an alibi?

A.    His –

Q.    From the night before?

A.    His girlfriend, which would be Carmen's mother, Ms. Brewster;
his father, William Boliek; and a neighbor.  Let me get her name.
Elaine Gunther.  All gave an alibi.

(Resp. Exh. F at 790.)  Deck contends that trial counsel was ineffective for failing

to object to this hearsay testimony that Jim Boliek had an alibi and that the alibi

was corroborated by other people.

As discussed above, Detective Knoll had previously testified on direct

examination that, once he received information about deceased persons being

found at the Long residence, he followed up on Deck's statement that Jim Boliek

was involved and went to investigate Boliek.  Detective Knoll further testified on

direct examination that during this investigation, he interviewed Boliek, Kathy

Brewster, William Boliek, and Elaine Gunther regarding Boliek's whereabouts on

the evening of July 8.  (Resp. Exh. F at 756-57.)  After conducting this

investigation, Detective Knoll returned to the crime scene and then eventually

returned to the sheriff's department to reinitiate contact with Deck.  (*Id.* at 757.)

On direct examination, Detective Knoll testified regarding this reinitiated contact:

A.    I told him, I said, Carmen, I said, I spoke with James Boliek,
his mother, his father and a neighbor, and I said that James Boliek
couldn't have been involved in this and I said, you need to tell me

what really happened, and he looked at me and he said, what do I do.
I said, you simply tell me the truth.

Q.     Did you ask him or tell him why Jim Boliek couldn't be
involved in it before you asked him or any other questions?

A.     Told him he had an alibi.

Q.     After he asked you what he should do and you told him to tell
the truth, did you continue to ask him questions?

A.     Yes, I did.

Q.     What'd you ask him next?

A.     I asked him what really happened.

(*Id.* at 761.)  Deck raises no challenge to this testimony or to his counsel's conduct

relating thereto.

During cross examination, defense counsel questioned Detective Knoll

extensively about his investigation of Jim Boliek and elicited testimony to support

an inference that the investigation was incomplete and failed to consider matters

that could give rise to Boliek's own guilt.  Counsel specifically asked Detective

Knoll about the alibi witnesses' recollection of Boliek's truck being parked outside

his home on the evening of July 8 but also elicited testimony that these witnesses

were not asked about the whereabouts of another car owned by Boliek.  Counsel

also asked Detective Knoll about his investigation regarding Boliek's firearms,

whether Boliek's property was searched, or whether Boliek underwent the same

type of questioning as Deck in relation to the crime. (Resp. Exh. F at 777-79, 783-84, 789.) Upon the conclusion of this questioning by defense counsel, the prosecutor asked Detective Knoll on re-direct about the alibi witnesses, to which Detective Knoll gave the responses that Deck now challenges as hearsay. (*Id.* at 790.)

"[O]ut-of-court statements that explain subsequent police conduct are admissible for non-hearsay purposes to show why an investigation focused on a defendant." *Belford v. Roper*, No. 03CV613 RWS, 2006 WL 2850543, at *10 (E.D. Mo. Sept. 29, 2006) (internal citation and quotation marks omitted). *See also State v. Howard*, 913 S.W.2d 68, 70 (Mo. Ct. App. 1995). Here, Detective Knoll's initial testimony of Boliek's alibi explained his subsequent police conduct in focusing his investigation on Deck. This testimony was not inadmissible hearsay. *See Irons v. Dormire*, No. 4:03-CV-513 CAS, 2006 WL 2811487, at *12-13 (E.D. Mo. Sept. 28, 2006); *State v. Dunn,* 817 S.W.2d 241, 243 (Mo. banc 1991) (when viewed in context, statements explained subsequent police conduct and thus were admissible, supplying relevant background and continuity).

On cross examination, defense counsel explored the depth of Detective Knoll's investigation into Boliek's alibi in an apparent attempt to cast doubt upon the investigation itself as well as raise the possibility that Boliek was involved in the crime. This questioning of Detective Knoll is consistent with the defense

theory of the case, that is, that the criminal investigation into the crime was flawed, that Deck's confession was false and given as a result of this flawed investigation, and that Boliek was the true perpetrator of the crime. The prosecutor's follow up questioning on re-direct examination was in response to defense counsel's questioning, which itself was done in response to the already admitted and admissible testimony regarding Boliek's alibi as reported by Boliek and three other individuals.

To the extent Detective Knoll's response to the prosecutor's follow up question on re-direct constitutes hearsay testimony, Deck cannot show prejudice by its admission – and thus by counsel's failure to object to it – given that this testimony had already been corroborated by other admissible evidence, namely Detective Knoll's earlier testimony that explained why he redirected his attention to Deck in his investigation. The admission of evidence on re-direct that three persons supported Boliek's alibi was not prejudicial to Deck because other evidence establishing that fact was already properly before the jury. *Bercier*, 506 F.3d at 632; *Ramos-Caraballo*, 375 F.3d at 803-04 (where evidence is at most an extra helping of what jury has heard before, evidence is merely cumulative and its admission does not result in reversible error). Deck therefore cannot demonstrate how the exclusion of this testimony on re-direct would have had any effect on the outcome of the trial of this case. Where a petitioner cannot show prejudice on

account of counsel's alleged deficient conduct, he cannot demonstrate ineffective assistance of counsel.

Because Deck cannot demonstrate that trial counsel was deficient in his failure to object to admissible evidence or that he was prejudiced by such conduct, it cannot be said that this claim of ineffective assistance is so substantial that post-conviction counsel was ineffective for failing to raise the claim on post-conviction review.

Post-conviction counsel was not ineffective for failing to raise this claim, and Deck has failed to establish cause for his procedural default of the claim. Nor has Deck shown that a fundamental miscarriage of justice would occur if I were not to review the claim. Ground 9 of the instant petition will be denied.

## PENALTY PHASE

1.    *Ground 20 – Failure to Investigate and Call Mitigation Witnesses*

In Ground 20, Deck claims that trial counsel was ineffective for failing to investigate and call the following witnesses at his third penalty-phase trial: 1) Shawna Stegers, 2) Jeff Overbeck, 3) Tim Maupin, 4) Kenny Forir, 5) Gail Rector, 6) Terry Miserocchi, 7) Mary Monia, 8) Bob Georger, 9) Randy Deck, 10) Linda Speakman, and 11) Hubert Brissette. Deck raised a similar claim in his post-conviction motion, identifying eleven other witnesses whom he claimed trial counsel should have called. After an evidentiary hearing, the post-conviction

motion court denied that claim, and the Missouri Supreme Court affirmed the denial. To the extent Deck did not name the proposed witnesses specifically identified above in his post-conviction motion, he contends that post-conviction counsel was ineffective for failing to include them, thereby constituting cause to excuse his default for not raising the specific basis of this claim in State court. For the following reasons, post-conviction counsel was not ineffective.

As summarized above, Deck underwent a third penalty-phase trial in September 2008 upon remand from the United States Supreme Court. At this trial, counsel presented the live testimony of Dr. Wanda Draper, a child development expert; and Dr. Eleatha Surratt, a psychiatrist. *See Deck IV*, 381 S.W.3d at 346. In preparation for the trial, Dr. Draper studied the depositions of Deck's parents, Mike Deck (his brother), Tonia Cummings, Mary Banks (his aunt), Elvina and Norman Deck (aunt and uncle), Stacey Tesreau-Bryant (girlfriend) and her son, Major Puckett (short-term foster parent), and Carol and Art Miserocchi. Dr. Surratt interviewed Deck's parents, Mike Deck, Tonia Cummings, Latisha Deck, Mary Banks, Elvina Deck, Rita Deck, Wilma Laird, Stacey Tesreau-Bryant, and Beverly Dulinski (another aunt). She also read the depositions of D.L. Hood, Major Puckett, and the Miserocchis. In addition to the live testimony of these expert witnesses, counsel also presented at trial the videotaped depositions of Mike Deck and Mary Banks. Counsel also read aloud the depositions of Major Puckett

and Beverly Dulinski. *See id.* at 346, 348-49.

In its opinion affirming the denial of post-conviction relief, the Missouri Supreme Court thoroughly summarized the testimony and evidence heard by the jury from these witnesses and depositions, including that Deck suffered physical problems as an infant; was beaten by his mother, who was described as having an explosive temper; lacked emotional stability in his youth because of extreme neglect and abandonment; was sexually abused; was "tortured" by his stepmother (who was an alcoholic) by being forced to kneel on broomsticks; had his own fecal matter smeared on his face by his stepmother, who then took a photograph of him in this state and showed it to others; was taken to and left at the Division of Family Services on more than one occasion as a child; was separated from his siblings and placed in foster care with multiple families; and was taken from a relatively stable foster home by his mother to live with her and her abusive boyfriend, Ron Wurst. *See Deck IV*, 381 S.W.3d at 346-49. The supreme court noted Dr. Draper to have testified to her opinion that Deck "suffered an 'extreme case of a horrendous childhood' because he moved 22 times in 21 years, along with the abuse, neglect, and lack of guidance"; and that "Dr. Surratt opined that [Deck's] childhood was similar to one of the 'most extreme cases of child abuse ever described.'" *Id.* at 348.

At the post-conviction hearing, trial counsel testified regarding their

preparation, investigation, and strategies leading up to and during the third penalty-phase trial. Specifically, counsel testified that they talked to a lot of people during their investigation, which was much like finding "needles in haystacks" (Resp. Exh. UU at 136-37, 245), and that they determined not to call witnesses who would provide only cumulative evidence (*id.* at 126, 252-53). Counsel also testified that they would have liked to have had family members give live testimony, but that some witnesses were no longer available to testify or developed such hostility that counsel could not be certain that they would provide testimony that supported their defense. (*See generally id.* at 113-46, 178-94, 241-53.) Counsel therefore made the decision that evidence of Deck's abusive and neglect-filled childhood would come in through the testimony of expert witnesses. (*Id.* at 247-48.)

Against this background, I turn to Deck's current claim that trial counsel should have called the additional witnesses named above.

Shawna Stegers, Jeff Overbeck, Gail Rector

Deck avers that Stegers and Overbeck would have testified that they knew him in the late-1980's and that he was outgoing, kind, generous, responsible, and a good friend. According to Deck, Rector would have testified that Deck was her son's friend when they were teenagers and that he was a gentle person. Deck contends that this evidence of positive attributes would have countered the considerable negative evidence from which the jury may have believed that he was

irretrievably damaged and incapable of good actions.

As noted by the supreme court, the penalty phase jury heard evidence that Deck took on the primary parenting role for his brother and sisters "during periods of extreme neglect" and was the only person on whom his siblings could depend. *Deck IV*, 381 S.W.3d at 347. The jury also heard evidence that Deck developed a positive relationship with the Pucketts, a foster family with whom he lived for about a year; that he thrived while he was with them; and that he had such a good relationship with Mrs. Puckett, he began to call her "mom." Evidence also showed that Mr. Puckett believed that Deck would have been a wonderful man if he were allowed to stay with the Puckett family. *Id.* at 348. The jury also heard evidence that when Deck was in his late teens, he asked his mother to move in with him in order to protect her from her abusive boyfriend with whom she lived at the time. *Id.* Finally, evidence was adduced that when Deck was twenty-nine years old, he became engaged to a woman who had a child, with whom he had a good relationship. *Id.*

On appeal of the denial of his post-conviction motion, the supreme court found that some of the evidence Deck claimed counsel should have presented through live witness testimony was cumulative to that presented to the jury – including that witness Arturo Miserocchi would have testified that Deck was a cute little kid with a wonderful personality; that Latisha Deck would have testified that

Deck took care of her when she was little; and that Rita Deck would have testified that he was a good kid and did not give her any trouble. *Deck IV*, 381 S.W.3d at 349-50. Because "[c]ounsel is not ineffective for not presenting cumulative evidence," the court determined Deck's trial counsel not to have been ineffective for failing to offer evidence that was repetitive to the mitigating evidence heard by the jury. *Id.* at 351 (citing *Skillicorn v. State*, 22 S.W.3d 678, 683 (Mo. banc 2000)). [13]

The same reasoning applies to proposed witnesses Stegers, Overbeck, and Rector. The testimony that Deck avers would have been elicited from these witnesses is cumulative to evidence that the jury already had before it, that is, that he had positive attributes, was able to develop bonding relationships, and took care of others. The failure to present cumulative evidence does not result in prejudice sufficient to give rise to a claim of ineffective assistance of counsel. *Winfield,* 460 F.3d at 1034.

Tim Maupin and Kenny Forir

Deck avers that Maupin and Forir would have testified that he was abused by his mother's boyfriend, Ron Wurst, when he was a teenager and, further, that his mother preferred Tonia over him. Because this testimony would have been

---

[13] The supreme court did not address whether these proffered witnesses were available to testify at trial.

cumulative to evidence adduced at trial that Deck's mother was abusive and neglectful and that Deck lived in an abusive environment with his mother and Ron Wurst, *see Deck IV*, 381 S.W.3d at 347-48, it cannot be said that counsel's failure to adduce this cumulative evidence prejudiced Deck.  Given that the jury already had before it evidence of the extensive abuse suffered by Deck at the hands of his mother and her companions, there is no reasonable probability that the third penalty-phase trial would have yielded a different result if these witnesses provided similar evidence.

Terry Miserocchi

Deck avers that he lived for a time with foster parents Arturo and Carol Miserocchi and that their daughter, Terry, lived at the house while he was there. Deck contends that Terry Miserocchi would have testified that he was an angry child and did not fit in well with the family.  Because this testimony would have been cumulative to other evidence presented to the jury that Deck was with the Miserocchi family for a short time and "did not make a connection" with them, *Deck IV*, 381 S.W.3d at 348, Deck cannot show prejudice by counsel's failure to present this testimony.  *Winfield*, 460 F.3d at 1034.

Further, the Missouri Supreme Court noted that counsel's failure to present live testimony from Arturo and Carol Miserocchi regarding their brief interaction with Deck in the distant past, including testimony that he did not bond with the

family and showed very little emotion, did not result in any prejudice to Deck because such testimony "was so lacking in substance that it would not have had an impact on the jury in their decision." *Deck IV*, 381 S.W.3d at 349. There is no more substance found in Terry Miserocchi's proposed testimony here. Counsel was not ineffective for failing to call her to testify at the penalty-phase trial.

<u>Mary Monia and Bob Georger</u>

Deck avers that Monia and Georger were his teachers and would have testified that he was a good kid and well-behaved, wore old clothes, and was not very clean. As noted above, the jury heard evidence of Deck's positive attributes when he was a child and a young man. The jury also heard evidence that he dressed "shabby" and begged for food. *Deck IV*, 381 S.W.3d at 347. Because the testimony offered by witnesses Monia and Georger would not have added anything compelling to the mitigating evidence already before the jury, Deck cannot show a reasonable probability that the jury would not have returned a verdict for the death sentence if it had been presented with this testimony.

<u>Randy Deck</u>

Deck avers that his cousin, Randy Deck, would have testified that he had no stability in his life.[14] A review of the supreme court's summary of the mitigating

---

[14] Deck also contends that Jeff Overbeck would have likewise testified that Deck did not have much stability in his life.

evidence adduced at trial shows that most of the evidence presented to the jury underscored the instability of Deck's life, from infancy through adulthood. Randy Deck's testimony would not have added any information from which it can reasonably be said that the jury would have returned a different verdict. Deck cannot show that he was prejudiced by counsel's failure to produce testimony from Randy Deck.

### Linda Speakman

Deck avers that Speakman, his uncle's former wife, would have provided background information regarding his grandparents and aunts and uncles as well as information regarding Norman Deck, his uncle who sought to adopt him when he was thirteen years old. Other than this vague reference to background information, Deck does not identify what specific evidence Speakman would have provided or how it would have benefited him during the penalty phase of the trial. Because Deck provides no specificity as to the content of Speakman's proposed testimony, he cannot show how the outcome of the trial would have been different had she testified. *See Saunders*, 236 F.3d at 952-53. Deck has thus failed to establish how counsel was ineffective for failing to call Speakman to testify at the third penalty-phase trial.

### Hubert Brissette

Deck avers that Hubert Brissette was an inmate at the Moberly Correctional

Center when he was incarcerated there and would have testified that Deck made poor choices in friends while in prison and was raped during his incarceration.

On post-conviction appeal, the Missouri Supreme Court addressed Deck's claim that counsel was ineffective for failing to call his former fiancée, Stacey Tesreau-Bryant, to provide testimony that, *inter alia*, Deck had shared with her that he was raped in prison. The court determined that counsel was not ineffective in failing to elicit this testimony because it would have "called attention to [Deck's] adult criminal life rather than focusing on his traumatic childhood." *Deck IV*, 381 S.W.3d at 352. There is no indication that Deck would have obtained a different result from the post-conviction motion court, including the supreme court, if post-conviction counsel had raised the same claim with regard to counsel's failure to call Hubert Brissette to testify to this same matter. Because the Missouri courts determined that counsel was not ineffective for failing to present testimony that Deck was raped in prison, it cannot be said that his current claim of ineffective assistance of trial counsel for failing to adduce the same evidence was substantial or had merit.

Prison Records

Finally, Deck argues that trial counsel should have presented complete records from the Missouri Department of Corrections at the third penalty-phase trial, averring that such records would have shown his "apparent lack of

rehabilitation despite having been in prison" and that "the trauma he endured in prison only exacerbated the effects of his childhood trauma." (Amd. Petn., ECF #30 at 85.) As noted above, the Missouri courts determined that counsel did not render ineffective assistance in failing to adduce evidence that would have highlighted Deck's adult criminal record. This evidence would not have been mitigating. Deck's complete records documenting his previous criminal offenses, sentences, incarcerations, and/or probationary periods as well as behavior, disciplinary actions, and grievances while incarcerated or on probation would instead support a finding that Deck is a criminal offender unable to be rehabilitated, and counsel cannot be considered ineffective for failing to introduce this damaging evidence.

As demonstrated above, Deck's claim of ineffective assistance of trial counsel raised in Ground 20 of this petition is not a substantial one. Therefore, post-conviction counsel was not ineffective for failing to raise the claim during post-conviction proceedings. Deck has therefore failed to establish cause for his default of the claim. To invoke the "fundamental miscarriage of justice" exception to showing cause and prejudice for a defaulted claim in the capital sentencing context, Deck must show by clear and convincing evidence that, absent the constitutional error, a reasonable juror would not have found the aggravating factors that rendered him eligible for the death penalty. *Sawyer v. Whitley*, 505

U.S. 333 (1992); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004)

(acknowledging *Sawyer's* holding regarding "actual innocence" with respect to the

death penalty).  Here, Deck has presented no such evidence.  He therefore has

failed to show that failure to address his claim will result in a fundamental

miscarriage of justice.

Accordingly, Ground 20 of the petition is procedurally barred and will be

denied.

2.      *Ground 22 – Failure to Obtain Ruling after Objection*[15]

During the prosecutor's opening statement at the third penalty-phase trial,

Deck's trial counsel objected three times on the basis that the prosecutor was being

argumentative.  On each occasion, the trial court instructed the prosecutor not to

engage in argument.  The court also instructed the prosecutor to "stick to" the

purpose of the opening statement:

> [PROSECUTOR]:  I want you all to take a look over at this man, right
> here.  He's sitting right there.  His name's Carman Deck.  And the
> reason the 12 – the 14 of you are here is because of July 8th, of 1996,
> he made a choice.  He made a conscious decision to kill Zelma and
> James Long.
>
> [DEFENSE]:  Objection; argumentative.

---

[15] Respondents assert that this ground fails to state a claim upon which relief can be granted
because of Deck's failure to provide any reference in his petition to the purported objectionable
statements made by the prosecutor.  In his Traverse, Deck cites to the specific instances during
the prosecutor's opening statement where he claims his counsel was ineffective.  I look to these
specific instances in addressing this claim.

THE COURT:  Mr. Zoellner, this is not final argument.  Please stick to the opening statement.

[PROSECUTOR]:  And the reason you are here is because he wanted to rob them.  He went into their house after getting them on their bed; after thinking for ten minutes, put a gun in his hand, standing over them, whether they should live or die.  He made a choice.  He decided their fate and put two in the back of the head of James Long and then he put two rounds into the back of Zelma's head.  He chose to take a life of two human beings for a little bit of money.  And the reason you are here and they are not is because of walking out that house –

[DEFENSE]:  Objection; he continues to be argumentative.

THE COURT:  Mr. Zoellner, this is not closing argument.  Please stick to the evidence and the facts you intend to present in your case.

. . .

[PROSECUTOR]: . . . And when this trial is over, I'm gonna come before you, and I'm gonna ask you to consider both of those punishments.  And I ask you to put aside any passion or anger you might have and look at them as calmly and coolly as Carman Deck did.  And I'm gonna ask you that you –

[DEFENSE]:  Objection; argumentative.

THE COURT:  Don't argue, Mr. Zoellner.

(Resp. Exh. LL at 467-68, 479.)  No further action was taken by either counsel or

the trial court in response to these statements.

On another occasion during opening statement, Deck's trial counsel objected

to the prosecutor's use of an exhibit that had not yet been introduced into evidence.

The trial court sustained the objection.  (Resp. Exh. LL at 468-69.)  No further

action was taken by either counsel or the trial court.

In the claim raised in Ground 22 of this petition, Deck contends that trial counsel was ineffective for failing to secure a ruling and request relief from the trial court after these objections. Specifically, Deck argues that counsel should have requested a mistrial or, at the very least, should have requested that the court instruct the jury to disregard the statements and exhibit. This claim fails.

Immediately prior to the prosecutor's opening statement, the trial court instructed the jury that its determination of facts could be made "only from the evidence and the reasonable inferences drawn from the evidence"; that its "decision must be based on the evidence presented to you in the proceedings in this courtroom"; and that "opening statements of attorneys are not evidence." (Resp. Exh. JJ at 591, 593; Exh. LL at 467.) A jury is presumed to have followed the court's instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and Deck has presented nothing to suggest that the jury disregarded the court's instructions here. *Cf. Abernathy v. Hobbs*, 748 F.3d 813, 818 (8th Cir. 2014) (although counsel's professional judgment underlying his opening statement was questionable, court's clarifying instruction to the jury that opening statements are not evidence served to resolve any confusion).

In *Barton v. State*, 432 S.W.3d 741 (Mo. banc 2014), the Missouri Supreme Court held that where a jury is instructed that attorneys' statements are not

evidence, a defendant is unlikely to show prejudice from his counsel's failure to object to such statements. *See id.* at 754. Here, unlike in *Barton*, defense counsel did object to the prosecutor's argumentative statements and premature use of an exhibit, and the trial court cautioned the prosecutor regarding this conduct. Considering counsel's objections together with the trial court's instruction to the jury that the attorneys' statements are not evidence, it cannot be said that Deck has shown that he was prejudiced by counsel's failure to seek additional curative relief, including a mistrial. Indeed, counsel would most likely have been met with defeat had such a request been made. Declaring a mistrial at such an early stage of the proceedings is a "drastic remedy" and must be exercised with "the greatest caution." *State v. Irving*, 559 S.W.2d 301, 309 (Mo. Ct. App. 1977). "When an objection to improper statements to the jury has been made and no further relief is sought, the courts have maintained confidence that the jury will be guided by admissible evidence." *Id.*

Further, given the evidence presented at trial, including the testimony of fifteen witnesses, the introduction of deposition testimony from three additional witnesses, the introduction of expert testimony, a trial record spanning over 450 pages, the introduction of seventy exhibits, and a jury instruction that attorneys' statements are not evidence, Deck cannot show that the prosecutor's brief comments during opening statement had any significant effect upon the jury's

verdict. Deck has thus failed to show prejudice from counsel's failure to seek and obtain additional curative relief. *See Seehan v. State of Iowa*, 72 F.3d 607, 610-12 (8th Cir. 1995).

Accordingly, in the absence of showing prejudice by counsel's conduct in failing to seek and obtain additional relief during the prosecutor's opening statement, Deck cannot establish that he received ineffective assistance of trial counsel in this regard. Post-conviction counsel was thus not ineffective for failing to raise this unsubstantial claim of ineffective assistance of trial counsel. Deck has therefore failed to establish cause for his default of the claim. Nor has he shown that a fundamental miscarriage of justice will occur if I do not address the merits of the claim. The claim raised in Ground 22 will be denied.

3.    *Ground 29 – Failure to Object to Lack of Mandatory Instruction*

At the time of Deck's third penalty-phase trial, MAI-CR 3d 313.00 Supp. Notes on Use 6(A)(1)(b) required that the following instruction be read to the jury panel immediately before starting the "death qualification" phase of voir dire:

> At this stage of the jury selection process, the attorneys are permitted to question you concerning your views on punishment. Nothing that is said by the attorneys or by another prospective juror during this process is evidence, and you should not let any such statements influence you in any way.
>
> The possible punishments for the offense of murder in the first degree are imprisonment for life by the Department of Corrections without eligibility for probation or parole, or death. The purpose of

this questioning is to discover whether or not you are able to consider both of these punishments as possible punishments.

The Court will instruct the jury as to the process it must follow to reach its decision on punishment. For present purposes, you should be aware that a conviction of murder in the first degree does not automatically make the defendant eligible for the death penalty.

Before the jury may consider imposing the death penalty, it must also find, unanimously and beyond a reasonable doubt, that the evidence before it establishes the existence of at least one special fact or circumstance specified by law, called a statutory aggravating circumstance. If no statutory aggravating circumstance is found, the defendant cannot be sentenced to death.

If the jury does find at least one statutory aggravating circumstance, it still cannot return a sentence of death unless it also unanimously finds that the evidence in aggravation of punishment, taken as a whole, warrants the death penalty, and that this evidence is not outweighed by evidence in mitigation of punishment. The jury is never required to return a sentence of death.

Counsel for the State may proceed.

MAI-CR 3d 300.03A (modified). The trial court failed to read this instruction, however, and trial counsel did not object to this failure. In Ground 29 of this petition, Deck claims that trial counsel's failure to object constituted ineffective assistance.

The failure of a trial court to give a required instruction is error. *State v. Roberts*, 948 S.W.2d 577, 587 (Mo. banc 1997). In Missouri, reversal is not mandated for this error unless the defendant suffers prejudice as a result. *Id.* "Prejudice occurs where the jury 'may have been adversely influenced . . . by the

lack of an instruction required by statute.'" *Id.* (quoting *State v. Betts*, 646 S.W.2d 94, 98 (Mo. banc 1983)). *See also State v. Anderson*, 306 S.W.3d 529, 539 (Mo. banc 2010) (reversal warranted only when instructional error so prejudicial that it deprived defendant of a fair trial). There was no adverse effect here.

Before the death qualification voir dire began, the trial court instructed the panel that, "in order to consider the death penalty, you must find one or more statutory aggravating circumstances beyond a reasonable doubt. The burden of causing you to find the statutory aggravating circumstances beyond a reasonable doubt is upon the State." *Deck III*, 303 S.W.3d at 547. Trial counsel then addressed the panel and told the venire that they would be asked specifically about life in prison without the possibility of parole or the alternative, the death penalty; and the court further advised the venire that they would be asked about their attitudes regarding these punishments, which were the only sentences available in the case, and whether they could realistically consider both punishments. *Id.* The venire was also told that before a death sentence can be considered: (1) the State must prove at least one statutory aggravating circumstance beyond a reasonable doubt, on which the jury must unanimously agree; (2) the jury must then also determine whether the aggravating circumstances as a whole justified a death sentence; and (3) the jurors must also conclude that the aggravating circumstances outweigh any mitigating circumstances. *Id.* Finally, the venire was told that a

juror is never required to vote for death and that the failure to unanimously make the required findings would automatically result in a sentence of life imprisonment without parole.  *Id.*

In short, while the instruction set out in MAI-CR 3d 300.03A was not formalistically recited to the jury panel by chapter and verse, the information and law required to be given to the venire through the instruction was indeed given before death qualification voir dire began.  It cannot be said, therefore, that the jury was adversely influenced by the lack of a formalistic reading of the instruction or that Deck was deprived of a fair trial on account of it.

Given that Deck was not prejudiced by the lack of a formalistic reading of the instruction, trial counsel's failure to object to the court's failure to give the instruction did not result in prejudice to Deck.  In the absence of showing prejudice by counsel's conduct, Deck cannot establish that he received ineffective assistance of counsel in this regard.  Accordingly, Deck's claim of ineffective assistance of trial counsel was not so substantial that post-conviction counsel was ineffective for failing to raise the claim during post-conviction proceedings.  Nor has Deck shown that a fundamental miscarriage of justice would occur if I were not to address the merits of the claim.

Ground 29 is therefore procedurally barred from federal habeas review and will be denied.

C.     Defaulted Claims Not Subject to *Martinez* Analysis

1.     *Ground 19 – Assistance of Trial Counsel re Witness Ed Kemp*

In his nineteenth ground for relief, Deck contends that trial counsel rendered ineffective assistance by failing to investigate and call numerous mitigation witnesses to testify on his behalf at his third penalty-phase trial.  Among the witnesses whom Deck claims counsel should have investigated and called is Ed Kemp.  Respondents argue, however, that Deck did not properly raise this claim in State court with regard to Kemp.  Deck argues to the contrary, stating that the claim was properly raised during post-conviction proceedings.  For the following reasons, a review of the record shows Deck did not properly raise the claim in State court.  The claim is thus procedurally defaulted.

In his motion for post-conviction relief, Deck argued that trial counsel was ineffective for failing to investigate and present the testimony of several mitigation witnesses at his third penalty-phase trial.  (Resp. Exh. QQ at 29-66.)  Deck did not name Ed Kemp in his motion as one of these witnesses.  (*Id.*)  In response to respondents' argument that the claim is defaulted as to witness Kemp, Deck contends that he presented an oral stipulation at the post-conviction motion hearing regarding Kemp's testimony and addressed the matter during counsel's hearing testimony.  With this argument, Deck appears to contend that the claim is not defaulted.

Giving Deck the benefit of the doubt and assuming *arguendo* that his oral statement regarding Kemp was sufficient to raise the claim during his initial post-conviction proceeding, a review of the record shows that Deck nevertheless did not raise this claim regarding Kemp on post-conviction appeal. (*See* Resp. Exh. VV.) "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994); *see also Storey*, 603 F.3d at 523. Accordingly, I cannot review the claim in this federal habeas proceeding absent a showing of cause and prejudice, or that a fundamental miscarriage of justice would result if I were not to review the claim.

Deck does not assert any cause for failure to raise the Kemp claim on post-conviction appeal and indeed appears to argue that there is no procedural default given his stipulation regarding Kemp at the post-conviction hearing.[16] Deck's failure to show cause for his procedural default makes a determination of prejudice unnecessary. *Cagle*, 474 F.3d at 1099. Nor has Deck shown that failure to determine the merits of this procedurally defaulted claim will result in a fundamental miscarriage of justice.

---

[16] To the extent Deck may argue that counsel on post-conviction appeal was ineffective for failing to raise the Kemp claim on appeal, I note that ineffective assistance of post-conviction *appellate* counsel cannot constitute cause to excuse procedural default. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

Accordingly, the claim raised in Ground 19 with respect to witness Ed Kemp is procedurally barred from federal habeas review and will be denied.

2. *Ground 24(b) – Assistance of Trial Counsel, Failure to Object re Improper Personalization*

In the caption of Ground 24, Deck contends that trial counsel was ineffective at the third penalty-phase trial for failing to object to the prosecutor's closing argument, including statements that Mr. Deck had "prior escapes" and had helped inmates serving life sentences to escape. In the body of this claim, however, Deck raises an additional factual basis to support his argument that counsel was ineffective, and specifically, that counsel failed to object to the prosecutor's improper personalization during closing argument when the prosecutor urged the jurors to place themselves in the victims' shoes. Although Deck raised both factual bases of this claim in his post-conviction motion, he did not raise on post-conviction appeal that part of his claim challenging counsel's failure to object to the prosecutor's improper personalization argument. (*See* Resp. Exh. VV at 128–32.) That portion of Ground 24, therefore, is defaulted.

A claim must be presented at each step of the judicial process in State court in order to avoid procedural default. *Jolly,* 28 F.3d at 53. The failure to present a claim on appeal from the denial of a post-conviction motion results in a procedural default of that claim. *Id.* To be fairly presented, the claim in State court must

contain the same factual grounds and legal theories as asserted in the federal habeas petition. *Picard v. Connor,* 404 U.S. 270 (1971); *Abdullah v. Groose,* 75 F.3d 408, 411 (8th Cir. 1996). Mere similarity in claims is insufficient. *Abdullah*, 75 F.3d at 412 (citing *Duncan v. Henry*, 513 U.S. 364 (1995) (per curiam)). Broadening an ineffective assistance of counsel claim in a federal habeas proceeding to include factual bases not raised before the State court is impermissible. *See Ward v. Norris*, 577 F.3d 925, 935 (8th Cir. 2009).

As a basis for habeas relief in Ground 24, Deck claims that counsel was ineffective for failing to object to that portion of the prosecutor's closing argument where he engaged in improper personalization, that is, asking the jurors to place themselves in the victims' shoes. On post-conviction appeal, Deck argued that counsel was ineffective for failing to object to that portion of the prosecutor's closing argument where he asked the jurors to consider Deck's prior escapes and his help to other prisoners in planning escapes. While both claims argue a failure to object, the sole factual basis of the claim raised on post-conviction appeal is substantially different than the additional factual basis raised here.

Deck failed to assert the factual basis of improper personalization on post-conviction appeal. That factual aspect of the claim is therefore procedurally barred from review by this Court unless Deck can show cause for his default and actual prejudice resulting from the alleged unconstitutional conduct, or demonstrate that

failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 731-32, 750. Deck neither asserts nor shows cause for his failure to raise this factual basis on post-conviction appeal with respect to his claim of ineffective assistance of trial counsel. Nor has Deck presented any evidence of actual innocence as it relates to imposition of the death penalty. *Sawyer*, 505 U.S. at 336, 347-50. Therefore, my refusal to entertain this procedurally defaulted aspect of the claim raised in Ground 24 will not result in a fundamental miscarriage of justice.

Accordingly, the claim raised in Ground 24(b) is procedurally barred from federal habeas review and will be denied.

3.      *Grounds 23(b), 26, 28, and 32(b) – Assistance of Appellate Counsel*

In Grounds 23(b), 26, 28, and 32(b), Deck contends that he received ineffective assistance of counsel on direct appeal of his final death sentence when counsel failed to raise on appeal claims of prosecutorial misconduct, a claim of trial court error during jury deliberations, and a claim of unconstitutional delay. Deck did not raise these claims of ineffective appellate counsel at any proceeding in State court. (*See* Resp. Exhs. QQ, VV.)

A claim must be presented at each step of the judicial process in State court in order to avoid procedural default. *Jolly,* 28 F.3d at 53. Under Missouri law, Missouri Supreme Court Rule 29.15 provides the exclusive means by which a

petitioner may assert claims of ineffective assistance of direct appeal counsel. Accordingly, Deck's failure to raise these claims of ineffective assistance of appellate counsel in his Rule 29.15 motion results in this Court being procedurally barred from reviewing the claims in this federal habeas petition absent a showing of cause and prejudice, or that a fundamental miscarriage of justice would result if the Court were not to review the claims.

Deck concedes that he did not raise these claims in State court but asserts as cause that post-conviction counsel was ineffective in their failure to raise the claims in his Rule 29.15 post-conviction motion. Citing *Martinez*¸ Deck argues that the ineffectiveness of post-conviction counsel excuses his procedural default. This argument is misplaced.

"Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. *Martinez* does not extend to defaulted claims of ineffective assistance of appellate counsel, however. *Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014). Deck asserts no other ground as cause for his procedural default of the claims raised in Grounds 23(b), 26, 28, and 32(b) of this petition and has thus failed to show cause sufficient to overcome his procedural default. His failure to show cause makes a determination of prejudice unnecessary. *Cagle*, 474 F.3d at 1099. Nor has Deck presented any evidence of actual

innocence as it relates to the death penalty. *Sawyer*, 505 U.S. at 336, 347-50.

Therefore, my refusal to entertain these procedurally defaulted claims will not

result in a fundamental miscarriage of justice.

Accordingly, the claims raised in Grounds 23(b), 26, 28, and 32(b) are

procedurally barred from federal habeas review and will be denied.

### 4. *Ground 27 – Trial Error During Jury Deliberations*

In Ground 27, Deck claims that the trial court erred during the third penalty-

phase trial when it gave an improper response to a jury question during jury

deliberations. Specifically, Deck claims that when the jury asked a question

regarding aggravating circumstances in relation to the murder of James Long, the

trial court erred by responding to the question and instructing that its response also

applied in relation to the murder of Zelda Long. Deck did not raise this claim of

trial error on direct appeal of the third penalty-phase trial.

Missouri procedure requires that a claim for relief be presented at each step

of the judicial process. *Jolly,* 28 F.3d at 53. Under Missouri law, claims of trial

court error must be raised on direct appeal. *Middleton v. State,* 103 S.W.3d 726,

740 (Mo. banc 2003); *Ham v. State*, 7 S.W.3d 433, 440 (Mo. Ct. App. 1999).

Because Deck failed to raise the instant claim of trial court error on direct appeal,

the claim is procedurally defaulted and cannot be reviewed by this Court unless he

shows cause for his default and prejudice resulting therefrom, or that a

fundamental miscarriage of justice would occur if the Court were not to address the merits of the claim. *Coleman,* 501 U.S. at 750.

Deck appears to argue that his direct appeal counsel's failure to raise this claim on appeal constitutes cause sufficient to excuse his procedural default.[17] While ineffective assistance of direct appeal counsel may constitute cause for procedural default, *Reese v. Delo,* 94 F.3d 1177, 1182 (8th Cir. 1996) (citing *Murray v. Carrier,* 477 U.S. 478, 492 (1986)), Deck must have first presented this Sixth Amendment argument to the State court as an independent claim in order for this federal habeas court to review the claim as cause for default. *Edwards v. Carpenter,* 529 U.S. 446, 450-53 (2000); *Taylor v. Bowersox,* 329 F.3d 963, 971 (8th Cir. 2003) (citing *Murray,* 477 U.S. at 489); *Charron v. Gammon,* 69 F.3d 851, 858 (8th Cir.1995). Deck failed to do so here. (*See* Resp. Exh. QQ.) To the extent Deck argues that the procedural default of his ineffectiveness claim is itself excused by ineffective assistance of post-conviction counsel for failing to raise this claim of ineffective assistance of appellate counsel, inadequate assistance of counsel at initial-review collateral proceedings cannot establish cause for procedural default of a claim of ineffective assistance of counsel on appeal.

---

[17] Deck actually contends that post-conviction counsel was ineffective for failing to raise a claim of ineffective assistance of appellate counsel for appellate counsel's failure to raise the instant claim of trial error on direct appeal. I will construe this layered argument as Deck's attempt to assert ineffective assistance of appellate counsel as cause for his default of this claim of trial court error.

*Dansby,* 766 F.3d at 833.  I am therefore precluded from addressing alleged counsel error as cause to excuse Deck's procedural default of the claim now raised in Ground 27.  *Williams v. Kemna,* 311 F.3d 895, 897 (8th Cir. 2002).  Deck asserts no other cause to excuse his default.

Deck has thus failed to establish cause to excuse his procedural default, thus obviating the need for me to determine whether prejudice has been shown.  *Cagle,* 474 F.3d at 1099.  In addition, because Deck has failed to show actual innocence under *Sawyer*, my refusal to entertain his procedurally defaulted claim will not result in a fundamental miscarriage of justice.

The claim raised in Ground 27 is procedurally barred from federal habeas review and will be denied.

## VII.  Claims Addressed and Denied on the Merits

A review of the record shows Deck to have properly raised the following claims in State court and that the Missouri Supreme Court, upon review of the merits of the claims, denied relief.  I therefore turn to the merits of these claims, exercising limited and deferential review of the underlying State court decisions as required by the AEDPA.

<u>GUILT PHASE</u>

A.      <u>Ground 2 – Change of Venue</u>

In his second ground for relief, Deck contends that he was denied due process, his right to be tried by a fair and impartial jury, his right to reliable sentencing, and his right to be free from cruel and unusual punishment when the trial court denied a change of venue. Deck specifically contends that the jury pool from Jefferson County was so tainted by the extensive pretrial publicity given to the Long murders that he could not receive a fair trial without a change of venue. Deck raised this claim on direct appeal to the Missouri Supreme Court. Upon review of the claim, the Missouri Supreme Court denied relief.

At the time Deck's conviction became final, the law was clearly established that "exposure to . . . news accounts of the crime with which [a defendant] is charged [does not] alone presumptively depriv[e] the defendant of due process." *Murphy v. Florida*, 421 U.S. 794, 799 (1975). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). "The relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount*, 467 U.S. 1025, 1035 (1984). "It is not required . . . that the jurors be totally ignorant of the facts and issues involved." *Irvin*, 366

U.S. at 722. A trial court's findings of juror impartiality may "be overturned only for 'manifest error.'" *Patton,* 467 U.S. at 1031 (quoting *Irvin*, 366 U.S. at 723).

On direct appeal, the Missouri Supreme Court invoked this established standard, *Deck I*, 994 S.W.2d at 532-33, and determined that the facts of the case showed that Deck was not deprived of a fair and impartial jury because of pretrial publicity. The court first noted that while evidence before the trial court showed there had been nine newspaper articles and several television news broadcasts addressing the crimes, all of this coverage occurred within a few weeks of the July 1996 murders. *See Deck I*, 994 S.W.2d at 533. Jury selection began about nineteen months later, on February 18, 1998. The court also noted that although an opinion poll conducted in November and December 2006 by a St. Louis University political science professor showed that sixty-nine percent of the 518 surveyed Jefferson County residents were aware of the case and twenty-seven percent held an opinion regarding Deck's guilt, the professor nevertheless conceded that the passage of time between exposure to publicity and trial would result in fewer people remembering what they had heard. *Id.* The Missouri Supreme Court determined that because the media accounts at issue here occurred long before trial, there was no "barrage of inflammatory publicity immediately prior to trial" amounting to a "huge wave of public passion" such that a presumption of prejudice would attach. *Id.* at 533-34. This determination is consistent with clearly

established federal law as determined by the United States Supreme Court. *See*

*Patton*, 467 U.S. at 1032-33 (quoting *Murphy*, 421 U.S. at 798; *Irvin*, 366 U.S. at

728).

Further, the Missouri Supreme Court noted that the professor's polling data

did not account for whether those who had opinions would be unable to follow the

law and make a determination based on the evidence adduced at trial, which is the

hallmark for determining the prejudicial effect of pretrial publicity on a jury. The

venire panel on Deck's case consisted of 120 persons. (*See* Resp. Exh. D at 218).

The supreme court noted that fifty of those prospective jurors indicated that they

had heard about or read about the case. Thirteen of these fifty stated that they had

formed opinions regarding Deck's guilt based on the publicity and that it would be

difficult or impossible for them to render a fair and impartial verdict. Twelve of

these thirteen jurors were struck for cause or otherwise excused. With respect to

the thirteenth juror, the supreme court noted that Deck declined to strike her

because she had changed her response by stating that she had not formed an

opinion and could indeed follow the instructions and consider only the evidence at

trial. *Deck I*, 994 S.W.2d at 533. The mere existence of a preconceived notion as

to the guilt or innocence of an accused is insufficient alone to rebut the

presumption of a prospective juror's impartiality where the juror can "lay aside his

impression or opinion and render a verdict based on the evidence presented in

court." *Murphy*, 421 U.S. at 800 (quoting *Irvin*, 366 U.S. at 723). Instead, the defendant must "demonstrate 'the actual existence of such an opinion in the mind of the juror[.]'" *Id.* (quoting *Irvin*, 366 U.S. at 723). Deck does not attempt to demonstrate actual existence of such an opinion here. In short, the evidence shows that no juror who sat on Deck's jury had such fixed opinions that they could not render a fair and impartial verdict in the case.

The Missouri Supreme Court set out the constitutional standard for determining whether a defendant could receive a fair trial from a jury exposed to pretrial publicity. Against this standard, the supreme court considered the extent of the publicity, its timing, and the voir dire process itself and found no indication that Deck was denied a fair and impartial jury because of publicity. This decision was well based on law and fact and was not "contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has Deck shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The claim raised in Ground 2 of the petition will be denied.

B.      Ground 3 – State's Peremptory Strike of D.G.

In his third ground for relief, Deck claims that the trial court erred by permitting the State to exercise one of its peremptory challenges in a

discriminatory manner by striking Juror D.G. because of her gender.  Deck

contends that this error deprived him of his right to due process and denied the

members of the venire panel their right to equal protection.  Deck raised this claim

on direct appeal, and, upon review of the merits of the claim, the Missouri

Supreme Court denied relief.

At the time Deck's conviction became final, the law was clearly established

that the Equal Protection Clause of the United States Constitution forbids the

prosecution from using its peremptory challenges to strike potential jurors "solely

on account of their race."  *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).  Under

*J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 141-42 (1994), this rule also applies

to peremptory strikes based solely on the potential juror's gender.  As with race-

based *Batson* claims, a party alleging gender discrimination must make a prima

facie showing of intentional discrimination before the party exercising the

challenge is required to explain the basis for the strike.  *Id.* at 144-45 (citing

*Batson,* 476 U.S. at 97).  When such an explanation is required, it must be based on

a juror characteristic other than gender, and it may not be pretextual.  *Id.* at 145

(citing *Hernandez v. New York,* 500 U.S. 352 (1991)).  Under Missouri law, the

defendant bears the burden of proving pretext once a race- and/or gender-neutral

explanation is offered.  *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992).

"[T]he trial court's decision on the ultimate question of discriminatory intent

represents a finding of fact of the sort accorded great deference on appeal[.]"

*Hernandez*, 500 U.S. at 364 (citing *Batson*, 476 U.S. at 98 n.21); *see also Gibson v. Bowersox*, 78 F.3d 372, 374 (8th Cir. 1996) (citing *Jones v. Jones*, 938 F.2d 838, 841 (8th Cir. 1991)); *Elem v. Purkett*, 64 F.3d 1195, 1199 (8th Cir. 1995). This is so because "evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Hernandez,* 500 U.S. at 365 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985)). Findings of fact made by State appellate courts have the same presumptive correctness as findings of fact made by State trial courts. *Weaver*, 241 F.3d at 1031. Factual findings of a State court are presumed to be correct unless the petitioner shows otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Barnett v. Roper*, 541 F.3d 804, 812 (8th Cir. 2008).

Here, the State exercised a peremptory strike against Juror D.G., and Deck argued to the trial court that the strike was based on D.G.'s gender. In response, the prosecutors averred that they struck D.G. because they considered her to be a "very weak" juror based on her demeanor and manner of speaking during voir dire and, further, because D.G.'s relatives had been or were currently being prosecuted for a criminal offense. *Deck I,* 994 S.W.2d at 537. Deck raised no argument to the trial court challenging the prosecutor's explanation regarding D.G.'s "weakness." (*See* Resp. Exh. E at 539-42.) With respect to D.G.'s relatives, Deck alluded to

"other jurors" similarly situated to D.G. in this regard, but provided no detailed

argument. (*Id.* at 542.) The trial court denied Deck's challenge to the State's

peremptory strike of D.G. (*Id.*)

On direct appeal, the Missouri Supreme Court applied the *Batson-J.E.B.*

standard and determined that Deck failed to show that the State's reasons to strike

D.G. were merely pretext and that the strike was motivated by D.G.'s gender.

*Deck I*, 994 S.W.2d at 536-38. Specifically, the court found that "[a]n explanation

based on a prospective juror's general demeanor, which in this case gave rise to the

perception that [D.G.] was 'weak,' is facially non-discriminatory." *Id.* at 537.

This reason is indeed a valid non-discriminatory reason to exercise a peremptory

strike, and Deck has provided no clear and convincing evidence to rebut the State

court's factual finding of no pretext in this regard. *See United States v. Maxwell*,

473 F.3d 868, 872 (8th Cir. 2007) (juror's demeanor and body language are

legitimate non-discriminatory reasons to strike potential juror); *Weaver v.

Bowersox*, 241 F.3d 1024 (8th Cir. 2001) (juror's words and conduct led

prosecutor to believe she was weak; petitioner failed to rebut presumptive

correctness of state court decision that this reason was non-discriminatory).

The Missouri Supreme Court also found that the fact of an arrest, conviction,

or incarceration of a prospective juror's relative is likewise a non-discriminatory

reason to exercise to a strike. *Deck I*, 994 S.W.2d at 537. In his claim, however,

Deck contends that a male juror also had a relative who had been prosecuted, thus demonstrating that the State's strike of D.G. was based on her gender. Assuming for the sake of argument that this circumstance may give rise to some inference of discrimination, this inferred discrimination is nevertheless insufficient given the State's other nondiscriminatory reason for the use of the peremptory strike, that is, the perception that the juror was weak based on her demeanor. *See Bell-Bey v. Roper,* 499 F.3d 752, 758 (8th Cir. 2007) (citing *Weaver,* 241 F.3d at 1032) (denying an application for a writ of habeas corpus based on a *Batson* challenge when the state attorney had articulated both discriminatory and nondiscriminatory reasons for the use of the peremptory strike)).[18]

The Missouri Supreme Court's factual finding that the State's articulated reason for striking D.G. was gender-neutral and not pretext was not an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *See Purkett v. Elem*, 514 U.S. 765, 769 (1995); *Gibson*, 78 F.3d at 374; *Jones*, 938 F.2d at 843 (state appellate court's findings of fact presumed to be correct). As such, Deck has failed to overcome the presumption of correctness accorded to the State court's conclusion that the prosecutors did not act

---

[18] Deck argues in the alternative that trial counsel was ineffective for failing to provide details to the trial court regarding this substantially similar male juror. (*See* Amd. Petn., ECF #30 at 33-34, n.9.) Because the State provided another nondiscriminatory reason to strike Juror D.G., any failure by counsel to further pursue this argument did not prejudice Deck.

with discriminatory intent in their strike of D.G.  *See Boyd v. Groose*, 4 F.3d 669, 672 (8th Cir. 1993).

Based on the above, the Missouri Supreme Court's decision denying relief on this claim is well based on law and fact.  I am unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Deck demonstrated such. Therefore, it cannot be said that the State court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law.  28 U.S.C. § 2254(d)(1).  Nor has Deck shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

Accordingly, the claim raised in Ground 3 of the petition will be denied.

C.      Denial of Challenge for Cause of Juror S.A.

Deck sought to strike Juror S.A. for cause, arguing that this juror gave some indication during voir dire that he might automatically impose the death penalty. The trial court denied this request, after which Deck exercised a peremptory strike to remove him.  *See Deck I*, 994 S.W.2d at 538.  In Ground 4 of his petition, Deck claims that the trial court's refusal to strike S.A. for cause denied him his rights to due process, to a fair and impartial jury, to reliable sentencing, and to be free from

cruel and unusual punishment.  Deck raised this claim on direct appeal.  The

Missouri Supreme Court found that a challenge to a juror's qualifications is not a

ground to reverse a conviction or judgment "'unless such juror served upon the

jury at the defendant's trial and participated in the verdict rendered against the

defendant.'"  *Id.* (quoting Mo. Rev. Stat. § 494.480.4).   This decision was not

contrary to or an unreasonable application of clearly established federal law.

     A claim that a jury was not impartial must focus on the actual jurors.  *Ross v.*

*Oklahoma,* 487 U.S. 81, 86 (1988).  Although Deck had to use a peremptory strike

to remove S.A., the United States Supreme Court has rejected "the notion that the

loss of a peremptory challenge constitutes a violation of the constitutional right to

an impartial jury."  *Id.* at 88.  "So long as the jury that sits is impartial, the fact that

the defendant had to use a peremptory challenge to achieve that result does not

mean the Sixth Amendment was violated."  *Id.*  S.A. did not sit on Deck's jury.

Deck's Sixth Amendment claim that he was denied a fair and impartial jury

therefore fails.

     In addition, the rights governing the exercise of peremptory challenges in

State court is determined by State law.  *See Ross*, 487 U.S. at 89.[19]  "[P]eremptory

challenges are not constitutionally protected fundamental rights; rather, they are

but one state-created means to the constitutional end of an impartial jury and a fair

---

[19] *See also Rivera v. Illinois*, 556 U.S. 148, 152 (2009).

trial." *Georgia v. McCollum,* 505 U.S. 42, 57 (1992); *see also Ross,* 487 U.S. at

88.  Deck does not claim here that he was denied anything that the State law

allowed him to do.  His due process and other constitutional claims therefore fail.

*Ross*, 487 U.S. at 90-91.

The claim raised in Ground 4 will be denied.

D.     Ground 10 – Assistance of Direct Appeal Counsel

Before trial, Deck moved to disqualify the prosecuting attorney's office

because of an alleged conflict of interest.  Deck argued that the conflict existed

because a current assistant prosecutor in the office previously represented him on a

burglary case in 1993.  The trial court heard the motion and denied it.  (Resp. Exh.

C at 1-19.)  This conflict-of-interest claim was not raised on direct appeal.

In his Rule 29.15 post-conviction motion, Deck claimed that direct appeal

counsel rendered ineffective assistance by failing to raise the conflict-of-interest

issue.  The motion court denied the claim.  On post-conviction appeal, the Missouri

Supreme Court determined Deck's underlying conflict-of-interest claim to have no

merit.  Citing Missouri law, the supreme court held that

> Mr. Deck's [conflict-of-interest] claim must fail because the earlier
> case in which his counsel was associated is not substantially related to
> the instant case and there is no claim that any confidential information
> was transmitted to the prosecutor in this case or that his former
> counsel had involvement in this case.

*Deck II,* 68 S.W.3d at 431.  The supreme court affirmed the motion court's denial

of Deck's related claim of ineffective assistance of appellate counsel. *Id.* at 431-32.

At the time Deck's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel, including effective assistance on direct appeal. *Strickland*, 466 U.S. at 686; *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). The standard set forth in *Strickland* must be applied to determine whether Deck indeed received ineffective assistance of appellate counsel with regard to this issue of error. *Reese,* 94 F.3d at 1185. Deck must therefore show that counsel's representation fell below an "objective standard of reasonableness" and that he was prejudiced as a result. *Strickland,* 466 U.S. at 687-88, 694. To demonstrate prejudice on account of counsel's failure to raise this claim on appeal, Deck must show a "reasonable probability that an appeal of [the] issue would have been successful and that the result of the appeal would thereby have been different." *Pryor v. Norris,* 103 F.3d 710, 714 (8th Cir.1997). He must show more than that the alleged error had some conceivable effect on the outcome of the proceeding. *Id.* at 713. "'Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.'" *Id.* (quoting *Strickland*, 466 U.S. at 693).

Counsel's failure to raise a non-meritorious claim on appeal cannot be found

deficient under *Strickland*, nor can it result in any prejudice. *Burton v. Dormire*, 295 F.3d 839, 846 (8th Cir. 2002); *Zinzer v. State of Iowa*, 60 F. 3d 1296, 1299 (8th Cir. 1995). Because the Missouri Supreme Court determined Deck's underlying conflict-of-interest claim to have no merit, its determination to affirm the denial of his related claim of ineffective assistance of appellate counsel was neither contrary to nor an unreasonable application of clearly established federal law. Nor does the record show that the court's determination resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The claim raised in Ground 10 will be denied.

PENALTY PHASE

A.      Ground 11 – Prior Death Sentences Held Unconstitutional

As discussed above, the United States Supreme Court found that Deck was denied his constitutional right to due process during his second penalty-phase trial because he was visibly shackled during the trial. Deck contends that because the previous death sentences were held to be unconstitutional, the trial court was required under Missouri law to impose life sentences instead of proceeding to a third penalty-phase trial. He argues that the court's denial of his motion to impose such sentences denied him his procedural due process rights by depriving him of a liberty interest created under State law. Deck raised this due process claim on

direct appeal of the third penalty-phase trial.

The Missouri Supreme Court denied the claim based on its finding that Deck was not entitled under Missouri law to the sentencing relief he requested. The court did not analyze the due process aspect of the claim. This lack of analysis, however, "does not mean that [Deck] is necessarily entitled to habeas relief[.]" *Huss*, 252 F.3d at 956. Instead, I must apply established Supreme Court precedent to the facts of this case to determine whether Deck is entitled to relief on this due process claim that was fairly presented to the State court. *Id.*

Generally, federal habeas relief does not lie for a petitioner challenging the State court's application of State law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). *See also Sweet*, 125 F.3d at 1151 ("It is not the office of a federal habeas court to determine that a state court made a mistake of state law."). When the court's application is arbitrary and causes the deprivation of a State-created liberty interest, however, the petitioner's constitutional right to due process is implicated. *Hicks v. Oklahoma*, 447 U.S. 343, 346-47 (1980).

To create a liberty interest enforceable under the Due Process Clause, a State statute or regulation must place substantive limitations on official discretion. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). "[T]he most common manner in which a State creates a liberty interest is by establishing

'substantive predicates' to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).  The statute must "contain 'explicitly mandatory language,' *i.e.,* specific directives to the decisionmaker that if the [statute's] substantive predicates are present, a particular outcome must follow[.]" *Id.* at 463 (citing *Hewitt*, 459 U.S. at 471-72.)

At issue here is Mo. Rev. Stat. § 565.040.2, which states:

> In the event that any death sentence imposed pursuant to this chapter is held to be unconstitutional, the trial court which previously sentenced the defendant to death shall cause the defendant to be brought before the court and shall sentence the defendant to life imprisonment without eligibility for probation, parole, or release except by act of the governor, with the exception that when a specific aggravating circumstance found in a case is held to be inapplicable, unconstitutional or invalid for another reason, the supreme court of Missouri is further authorized to remand the case for retrial of the punishment pursuant to subsection 5 of section 565.035.

The parties here do not dispute that this statute creates a liberty interest given that it includes a specific directive to the trial court to impose a life sentence once a specified substantive predicate is met, that is, when a death sentence imposed is held to be unconstitutional.[20]  Respondents contend, however, that Deck had no liberty interest in the exercise of this statute – and thus no due process implication

---

[20] Deck makes no claim that the statute itself failed to provide the procedural safeguards necessary to provide him notice and an opportunity to be heard.  *Contra Ford v. Wainwright*, 477 U.S. 399, 417 (1986).

– because, under Missouri law, his circumstances failed to meet the substantive predicate. Whether Deck met the substantive predicate of § 565.040.2 is a matter of State law.

In its decision, the Missouri Supreme Court examined the language of the statute and discussed in depth its previous decision in *State v. Whitfield*, 107 S.W.3d 253 (Mo. banc 2003), and determined that the substantive predicate of § 565.040.2 included only those instances in which the imposition of the death sentence itself is unconstitutional, and not instances where a separate, unrelated trial error is alleged. *Deck III,* 303 S.W.3d at 533-35. Citing *Whitfield*, the court noted that it had "previously indicated that trial error premised on a constitutional violation not directly affecting the imposition of the death penalty statutory scheme does not result in the application of section 565.040." *Id.* at 533. The court then examined the circumstance from which the United States Supreme Court found reversible error in Deck's case – that is, his visible shackling during trial – and found it to be trial error and unrelated to the imposition of the death sentence itself. Because the death sentence *itself* was not found to be unconstitutional, the Missouri Supreme Court determined that § 565.040.2 was not implicated in Deck's case. *Deck III*, 303 S.W.3d at 535.

As a federal habeas court, I have no authority to second guess the Missouri court's substantive determination that Deck failed to meet the requirements of its

own State law.  *See Ford v. Wainwright*, 477 U.S. 399, 430-31 (1986) (O'Connor,

J., dissenting in part); *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012)

(citing *Bounds v. Delo*, 151 F.3d 1116, 1118 (8th Cir. 1998)).  *See also Buchalter*

*v. People of State of New York*, 319 U.S. 427, 431 (1943).  Nor has Deck shown

that the Missouri Supreme Court arbitrarily applied State law to his case.  Indeed,

the contrary is true.

The Missouri Supreme Court determined, as a matter of State law, that

Deck's circumstances did not meet the substantive predicate necessary to invoke

the mandatory imposition of a life sentence under § 565.040.2.  Although §

565.040.2 creates a liberty interest under the standard set forth in *Thompson*, this

interest does not attach in the circumstances of this case.  In the absence of this

claimed protected liberty interest, Deck's due process claim must fail.  *See*

*Paul v. Davis,* 424 U.S. 693, 712 (1976) (respondent cannot assert denial of any

right vouchsafed to him by the State and thereby protected under Fourteenth

Amendment; respondent therefore not deprived of any liberty or property interests

protected by Due Process Clause); *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir.

1999) ("the possession of a protected life, liberty, or property interest is . . . a

condition precedent to any due process claim.") (internal quotation marks omitted).

Based on the foregoing, I find that the decision of the Missouri Supreme

Court in denying Deck relief on this due process claim is not substantially different

from what the decision would have been if that court had addressed the federal aspect of the claim in accordance with established precedent of the United States Supreme Court. The claim raised in Ground 11 of the instant petition will therefore be denied.

B.      Ground 12 – Striking of Qualified Jurors

In his twelfth ground for relief, Deck contends that he was denied due process, his right to a fair and impartial jury, and freedom from cruel and unusual punishment when the trial court improperly struck two qualified jurors for cause based on their reluctance to serve as foreperson. Deck raised this claim on direct appeal. Upon review of the merits of the claim, the Missouri Supreme Court denied relief.

At the time Deck's conviction became final, the law was clearly established that prospective jurors may be removed for cause if their views on capital punishment would prevent or substantially impair their ability to fully and fairly consider all possible punishments. *Wainwright*, 469 U.S. at 420. The bias against the death penalty need not be evident with unmistakable clarity because such clarity is rarely evident; instead, the matter is one that is "peculiarly" within the trial judge's province. *Kinder v. Bowersox,* 272 F.3d 532, 543 (8th Cir. 2001); *see also Uttecht v. Brown,* 551 U.S. 1, 22 (2007). Because the trial court's judgment is based in part on the demeanor of the juror, its judgment is entitled to deference by

a reviewing court.  *Uttecht*, 551 U.S. at 9; *Wainwright,* 469 U.S. at 428.

In its review of Deck's claim, the Missouri Supreme Court summarized that portion of the voir dire examination that showed Jurors M.C. and B.L. to indicate that they could consider both possible sentences in the case – that is, life imprisonment and the death penalty – but that they could not sign a verdict form imposing death.  *Deck III,* 303 S.W.3d at 536-37.  Identifying the clearly established federal law set out above, *id.* at 535-36, the supreme court accorded deference to the trial court and determined the facts to support that court's decision to strike these jurors for cause:

> In this case, it is not just the simple refusal to sign the verdict that may warrant removal.  Where, as here, if a veniremember claims on the one hand that he or she could fairly consider both punishments but, at the same time, unequivocally states that he or she would not sign a verdict of death, the trial court is in the best position to consider whether the record contains sufficient evidence of equivocation creating a doubt as to whether that veniremember would be able to fairly consider both punishments.  Here, the veniremembers' responses revealed an inability to follow the court's instructions if that person were chosen as foreman of the jury and the trial court could have concluded from the record as a whole that there was a substantial possibility that the veniremember may not be able to fairly consider both punishments despite their assurances to the contrary.

*Id.* at 538.

The Missouri Supreme Court's determination to affirm the trial court's decision to strike Jurors M.C. and B.L. is based on reasonable factual findings and application of clearly established federal law.  Deck is therefore not entitled to

habeas relief on this claim of trial court error, and the claim raised in Ground 12 of the instant petition will be denied.

C.      Ground 13 – Sentence Imposed for Unpled Offense

In order for the death penalty to be imposed under Missouri law for first degree murder, the jury must find beyond a reasonable doubt the existence of at least one statutory aggravating circumstance.  Without a finding of aggravated circumstance(s), the only authorized punishment for first degree murder is life imprisonment.  In Ground 13, Deck contends that because a finding of an aggravated circumstance is required in order to increase the maximum penalty from life imprisonment to death, such circumstance(s) must be pled in the charging document.  Deck argues that the Information under which he was charged and convicted here failed to include any aggravating circumstances and thus that he was unconstitutionally sentenced to death for a crime that was never pled.  Deck raised this claim on direct appeal.  Upon review of the merits of the claim, the Missouri Supreme Court denied relief.

At the time Deck's conviction became final, the law was clearly established that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt.  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  In *Ring v. Arizona,* the Supreme Court extended *Apprendi* to the fact-

finding necessary for imposition of the death penalty. *Ring*, 536 U.S. 584, 609

(2002). Deck does not contend that the jury failed to find beyond a reasonable

doubt the aggravating circumstances required in order to make him "death-

eligible" in this case. Nor does he claim that he was not given reasonable notice of

the aggravating factors the State sought to prove. Instead, Deck contends only that

the Information failed to plead such aggravating factors, thus rendering his

sentence unconstitutional. To the extent he argues that *Apprendi* and *Ring* require

that aggravating factors be pled in a charging document, this argument

misinterprets the law.

In *Apprendi*, the Supreme Court made it clear that the Fifth Amendment to

the United States Constitution provides the source for the requirement that facts

increasing a maximum penalty must be pled in the indictment. Indeed, the

*Apprendi* Court specifically noted that it was *not* addressing the question of

whether the Fourteenth Amendment requires the States to include sentence

enhancements in the charging document and alluded to there not being such a

requirement. *Apprendi,* 530 U.S. at 477 n.3 (Fourteenth Amendment "has not . . .

been construed to include the Fifth Amendment right to 'presentment or indictment

of a Grand Jury[.]'"). Although the *Ring* Court likewise did not address this

question given that it was not raised, it nevertheless noted the *Apprendi* Court's

recognition that the Fourteenth Amendment did not apply to such claims. *Ring*,

536 U.S. at 597 n.4. Accordingly, both *Apprendi* and *Ring* express doubt that the Fifth Amendment's guarantee of a right to be indicted by a Grand Jury is applicable to State prosecutions, as that protection has not been understood to be incorporated by the Fourteenth Amendment. To find otherwise would run contrary to the Supreme Court's repeated assertion that the Grand Jury Clause of the Fifth Amendment does not apply to the States.

Deck also argues that Missouri's statutory scheme creates two separate crimes of first-degree murder – that is, "unenhanced" first-degree murder, carrying a maximum sentence of life without probation or parole; and "aggravated" first-degree murder, requiring an additional element of at least one statutory aggravator and which carries the maximum sentence of death. Deck contends that the failure to include any statutory aggravators in the Information necessarily resulted in him being charged with only "unenhanced" first-degree murder, and thus that his death sentence for aggravated first-degree murder – an uncharged crime – violated his constitutional rights.

In rejecting this claim, the Missouri Supreme Court relied on long-standing State court precedent and reaffirmed its previous holdings that the relevant Missouri statute defines a single offense of first-degree murder with the maximum sentence of death. Therefore, because imposition of the death penalty does not have the effect of increasing the maximum penalty for first degree murder, the

statutory aggravating factors are not required to be pled in the charging document. *Deck III*, 303 S.W.3d at 549-50.  I may not reevaluate the Missouri Supreme Court's interpretation of its own State's law.

Simply stated, Deck seeks constitutional protection for a right not extended by the United States Constitution nor established by the United States Supreme Court.  Because the Supreme Court has given "no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (internal citations, quotation marks, and alterations omitted).  "Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized." *Id.*  It was not an unreasonable application of clearly established federal law for the State court here not to apply a specific legal rule that has not been squarely established by the Supreme Court. Deck's attempt to apply such a rule through the claim raised in Ground 13 must fail.

Ground 13 of the petition will be denied.

D.      Ground 14 – Prosecutor's Closing Argument

In his fourteenth ground for relief, Deck claims that he was denied due process, his right to a fair and impartial jury, and his right to fair and reliable sentencing when the prosecutor made improper statements during his closing argument.  Deck raised this claim on direct appeal.  Although he specifically

challenged four areas of argument made by the prosecutor, the challenge to only one argument was preserved for appeal – that the prosecutor improperly personalized the argument – which the Missouri Supreme Court denied on its merits.[21]  I look to the merits of that claim here.

In determining whether the prosecutor's closing argument violated Deck's constitutional rights, the pertinent inquiry is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)).  The test applied to determine whether error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the error not occurred.  *Lisenba v. California*, 314 U.S. 219, 236 (1941); *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir. 1987).  I may grant Deck habeas relief only if "the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial."  *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).  With "the strict due process standard of constitutional review, the deferential review mandated by the AEDPA, and [this Court's] less reliable vantage point for gauging the impact of closing

_____

[21] The Missouri Supreme Court reviewed the other three challenges for plain error and found none.  As discussed at Part VI.A.1, above, these three challenges to the prosecutor's closing argument are procedurally barred from federal habeas review and will not be addressed here.

argument on the overall fairness of a trial," my review of whether the prosecutor's closing argument violated Deck's right to due process is "exceptionally limited."

*Id.; see also Sublett v. Dormire*, 217 F.3d 598, 600 (8th Cir. 2000).

In this claim, Deck contends that the prosecutor's following statements during closing argument constituted improper personalization:

> [STATE]:  The last thing I'm gonna tell you and say to you is this:  I – I've done this job long enough, and this isn't about me – but I've done this long enough that on occasion, five years after a case like this has gone –

> [DEFENSE]:  Objection; vouching, personalization.

> [COURT]:  Sustained.

> [STATE]:  Often times, I'll get a phone call later on from a family member, and they'll say –

> [DEFENSE]:  Objection; relevance, same objection.

> [COURT]:  Overruled.

> [STATE]:  And they'll say to me, to my granddaughter, I've told them about my loved one that was murdered.  They want – they want to know what happened.  Can you explain it to them.  There are 19 grandchildren.  19 great-grandchildren, and I don't know how many more there'll be.  And some day these people are going to be told about James and Zelma Long.  And they're gonna be told about what wonderful parents they were, how they liked to fish.  How their Grandmother got her masters and taught.  They're gonna be told about these wonderful people.  And you know the question they're gonna ask, is they're gonna say well, where are they now?  They're gonna have to be told about this.  And then they're gonna ask another question, and that question I get to some – unfortunately sometimes explain is was justice done?  When you go up there, you'll tell us if

justice is done.  Now I'm gonna sit down and wait for your answer, so
I can tell them.

*Deck III*, 303 S.W.3d at 540.  Referring to the clearly established law set out

above, the Missouri Supreme Court found the challenged statements not to rise to

the level of improper personalization and thus that there was no merit to Deck's

argument.  *Id.*

Improper personalization occurs when the closing argument asks the jury to

place themselves in the place of a party or victim, or suggests personal danger to

the jurors or their families if the defendant were to be acquitted.  *Hall v. State*, 16

S.W.3d 582, 585 (Mo. banc 2000); *West v. State*, 244 S.W.3d 198, 201 (Mo. Ct.

App. 2008).  As noted by the Missouri Supreme Court here, the part of the

argument challenged by Deck "did not imply any danger to the jurors or ask the

jurors to place themselves in the victims' shoes."  *Deck III*, 303 S.W.3d at 540.

Accordingly, as found by the supreme court, no improper personalization occurred.

Even if the statements were improper, they were not so outrageous to render

Deck's trial fundamentally unfair.  They did not mischaracterize the evidence or

implicate any other of Deck's specific rights.  Further, when coupled with the

court's instruction to the jury that closing arguments are not evidence and the

"jury's 'common sense ability to put aside a particular type of overzealous

advocacy,'" it cannot be said that these statements so infected the trial with

unfairness that a reasonable probability exists that the verdict might have been different had the error not occurred. *Lisenba*, 314 U.S. at 236; *Sublett*, 217 F.3d at 601 (quoting *James*, 187 F.3d at 870). Accordingly, under *Darden* and *Lisenba*, the Missouri Supreme Court's findings were not contrary to clearly established federal law. Accordingly, this claim raised in Ground 14 will be denied.

E.    Ground 16 – Burden of Proof on Mitigating Evidence

In his sixteenth ground for relief, Deck contends that Instructions 8 and 13 given to the jury impermissibly shifted to him the burden of proof regarding mitigating evidence, thereby denying him due process and his rights to a fair jury trial and reliable sentencing. Deck raised this claim on direct appeal. Upon review of the merits of the claim, the Missouri Supreme Court denied relief.

In *Kansas v. Marsh*, 548 U.S. 163 (2006), the United States Supreme Court stated:

> So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.

*Id.* at 170-71. In its decision denying Deck's current claim, the Missouri Supreme Court noted that it had previously determined that the instructions at issue did not run afoul of *Marsh* and that Deck offered no meritorious reason for it to hold

- 110 -

otherwise:

> The instructions given were patterned after MAI–CR 3d 313.44A and explained to the jurors if they found the facts and circumstances in aggravation of punishment taken as a whole warrant a death sentence, they must then determine if there were facts or circumstances in mitigation of punishment that were sufficient to outweigh those in aggravation of punishment. The instruction then explains to the jurors that they did not have to agree on mitigating facts, but that if each juror determined that the mitigating evidence outweighs the aggravating evidence, the jury must return a sentence of life without parole.

*Deck III*, 303 S.W.3d at 548. The jury was also instructed that "the burden is on the State to prove statutory aggravating circumstances beyond a reasonable doubt" and that if the jury "had determined that one or more aggravating circumstances existed, it was next to consider whether the facts and circumstances in aggravation of punishment taken as a whole were sufficient to warrant imposing a sentence of death." *Id.* at 549. Instructions must be viewed as a whole rather than in artificial isolation. *Boyde v. California*, 494 U.S. 370, 378 (1990); *Middleton v. Roper*, 498 F.3d 812, 818 (8th Cir. 2007).

In light of the other instructions to the jury establishing the State's burden to prove the existence of aggravating circumstances beyond a reasonable doubt, and nothing indicating that the State's burden of proof was less, the state supreme court's determination that the trial court did not err in giving Instructions 8 and 13 regarding mitigating evidence was not contrary to nor an unreasonable application

of Supreme Court precedent.  Nor has Deck demonstrated that the state supreme court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The claim raised in Ground 16 of the petition will be denied.

F.      Ground 17 – Proportionality Review

A criminal defendant has a liberty interest in being sentenced under the proper standard under State law and, in Missouri, to have the Missouri Supreme Court conduct a proportionality review of any death sentence as provided under Mo. Rev. Stat. § 565.035.  *Cf. Rust v. Hopkins*, 984 F.2d 1486, 1492-93 (8th Cir. 1993) (citing *Hicks v. Oklahoma*, 447 U.S. 343 (1980)).  While there is no federal constitutional right to a proportionality review, *Pulley v. Harris*, 465 U.S. 37 (1984), "once in place it must be conducted consistently with the Due Process Clause."  *Kilgore v. Bowersox,* 124 F.3d 985, 995 (8th Cir. 1997).  What constitutes a proper proportionality review under the Missouri statute, however, is a matter of State law; whether the State court properly interpreted the State statute is not a matter I can determine in this federal habeas action.  *Estelle,* 502 U.S. at 67-68; *Sweet*, 125 F.3d at 1159.

Here, the Missouri Supreme Court conducted a proportionality review of Deck's death sentence under Mo. Rev. Stat. § 565.035.3(3), which requires that court to determine "[w]hether the sentence of death is excessive or

disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant." *See Deck III*, 303 S.W.3d at 550-53. In doing so, the supreme court considered previous cases in which a death sentence was imposed, *id.* at 552, rejecting Deck's argument that it must also consider factually similar cases that did not result in a death sentence. *Id.* at 551. The supreme court's rationale in this regard was based on established Missouri law as it existed at the time of Deck's sentence and appeal. *Id.* at 551-52.

In cases decided after *Deck III*, the Missouri Supreme Court held that the law with regard to proportionality review required consideration of death cases and cases that resulted in life imprisonment. *See State v. Davis*, 318 S.W.3d 618, 645 (Mo. banc 2010); *State v. Dorsey*, 318 S.W.3d 648, 659 (Mo. banc 2010). In *State v. Nunley*, 341 S.W.3d 611 (Mo. banc 2011), the supreme court specifically held that this new construction of the State statute was not to be applied retroactively. *Id.* at 624. In circumstances such as Deck's, therefore, proportionality reviews that considered only cases that resulted in a death sentence were left undisturbed.

Deck argues here that the Missouri Supreme Court's failure to conduct a proportionality review that included consideration of similar cases resulting in a life sentence violated his right to due process and, further, that the failure of the supreme court to retroactively apply the new proportionality rule announced in *Davis* and *Dorsey* permits his death sentence to stand in contravention of the law,

which likewise deprives him of due process.  Both claims fail.

First, challenges to the manner in which proportionality review was conducted or to the State court's interpretation of § 565.035 are beyond the scope of habeas review.  *Kilgore,* 124 F.3d at 996; *Sweet,* 125 F.3d at 1159; *LaRette,* 44 F.3d 681, 688 (8th Cir. 1995); *Foster v. Delo,* 39 F.3d 873, 882 (8th Cir. 1994); *Murray v. Delo,* 34 F.3d 1367, 1377 (8th Cir. 1994).  Where the Missouri Supreme Court addressed and decided the proportionality issue in its opinion, the Constitution does not require me "to look behind [the State court's proportionality] conclusion to consider the manner in which the court conducted its review or whether the court misinterpreted the Missouri statute." *Sweet*, 125 F.3d at 1158 (citing *Walton v. Arizona,* 497 U.S. 639, 656 (1990)); *see also Tokar v. Bowersox,* 198 F.3d 1039, 1051 (8th Cir.1999); *Ramsey v. Bowersox,* 149 F.3d 749, 754 (8th Cir.1998); *Zeitvogel v. Delo,* 84 F.3d 276, 283 (8th Cir.1996).   In this case, the Missouri Supreme Court performed its proportionality review, citing cases to which it compared Deck's and found that his death sentence was not disproportionate.  Therefore, I may not further review Deck's proportionality claim.  *Middleton*, 498 F.3d at 821-22; *Foster*, 39 F.3d at 882; *Basile v. Bowersox*, 125 F. Supp. 2d 930, 976 (E.D. Mo. 1999); *Tokar v. Bowersox,* 1 F. Supp. 2d 986, 1012 (E.D. Mo. 1998).

To the extent Deck argues that the failure of the Missouri Supreme Court to

retroactively apply a new rule of law regarding proportionality review deprives

him of his right to due process, the Eighth Circuit squarely rejected this argument

in *Clay v. Bowersox*, 628 F.3d 996 (8th Cir. 2011):

> The Supreme Court in *Wainwright v. Stone,* 414 U.S. 21 (1973) (per curiam), held that a state supreme court is not constitutionally compelled to make retroactive its new construction of a state statute, *id.* at 23-24, explaining that "'[a] state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions.'" *Id.* at 24 (quoting *Great N. Ry. Co. v. Sunburst Oil & Ref. Co.,* 287 U.S. 358, 364 (1932)). . . . Clay therefore has not made a substantial showing that the decision of the Supreme Court of Missouri to apply its new construction of Mo. Rev. Stat. § 565.035.3 prospectively only is an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

*Id.* at 998 (internal parallel citations omitted).

Accordingly, the claim raised in Ground 17 of the petition will be denied.

G.      Ground 18 – Assistance of Trial Counsel / Jury Selection

Deck contends that he received ineffective assistance of trial counsel when

counsel failed to inquire of prospective jurors whether they were willing to

meaningfully consider mitigation evidence of childhood experience proffered by

the defense. Deck raised this claim in his motion for post-conviction relief and on

appeal of the denial of the motion. Applying the familiar *Strickland* analysis, the

Missouri Supreme Court found that counsel's performance was not deficient and

thus that Deck did not receive ineffective assistance of counsel.  For the following reasons, this decision was neither contrary to nor an unreasonable application of established Supreme Court precedent.  Nor was it based on an unreasonable determination of the facts in light of the evidence presented.

Deck complains that trial counsel failed to adequately examine the potential for juror bias by failing to ask the venire whether they could look at his childhood experience and give it meaningful consideration as a reason to vote against the death penalty.  In reviewing this claim, the Missouri Supreme Court found that a question asking potential jurors whether they could consider this evidence "as a reason to vote against the death penalty" effectively asks the venire to commit to the weight they would give certain mitigating evidence before actually hearing it. *Deck IV*, 381 S.W.3d at 344-45.  After thoroughly setting out Supreme Court precedent establishing what evidence a juror must consider when determining whether to impose the death penalty,[22] the court determined that asking potential jurors how certain evidence would affect their decision would be improper.  *Id.* This determination was reasonable.  *See, e.g., United States v. McVeigh*, 153 F.3d 1166, 1207 (10th Cir. 1998)[23] (improper to ask jurors to speculate or precommit on

---

[22] *See Deck IV,* 381 S.W.3d at 344 (citing *Morgan v. Illinois,* 504 U.S. 719 (1992); *Eddings v. Oklahoma,* 455 U.S. 104, 113-14 (1982); *Woodson v. North Carolina,* 428 U.S. 280, 304 (1976); *Lockett v. Ohio,* 438 U.S. 586, 604 (1978)).

[23] *Overruled in part on other grounds by Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999).

how they might vote based on any particular facts) (citing *Morgan v. Illinois*, 504

U.S. 719 (1992)).

The Missouri Supreme Court further found that, to the extent Deck was

concerned about potential juror bias against the introduction of childhood evidence

generally, the issue was adequately explored by the prosecutor whose question did

not ask the jurors to commit to the weight they would accord such evidence:

> And I guess the question I want to ask you is that you'll hear – I
> anticipate you'll hear some evidence concerning [Movant]'s
> childhood, his upbringing.
>
> Is there anybody here, that if you start hearing evidence about
> troubled childhoods, things like that, it's going to [a]ffect your ability
> to be fair in this case, one way or the other?

*Deck IV*, 381 S.W.3d at 345 (alteration in *Deck IV*).

Given that the matter of potential juror bias on the basis of childhood

evidence was adequately explored during voir dire through the questions posed by

the prosecutor, and that the question proffered by Deck would have improperly

asked the venire members to commit to the weight given such evidence, the State

court found that the failure of trial counsel to pose this improper question did not

render their performance deficient.  *Deck IV*, 381 S.W.3d at 345.  This is not an

unreasonable application of nor contrary to established Supreme Court precedent.

Further, absent evidence that a biased juror was actually seated, a claim that

counsel was ineffective during voir dire necessarily fails.  *See Sanders v. Norris*,

529 F.3d 787 (8th Cir. 2008); *Singleton v. Lockhart*, 871 F.2d 1395, 1400 (8th Cir. 1989) (citing *Strickland*, 466 U.S. at 694).

Deck argues that the Missouri Supreme Court unreasonably determined the facts as they applied to his claim because the question he proffered that trial counsel should have posed to the venire panel did not require the jurors to agree not to vote against the death penalty because of childhood experiences, but only that they consider evidence of such experiences. This argument is belied by the record. In both his post-conviction motion and on appeal of its denial, Deck argued that his trial counsel should have asked the venire if they could give meaningful consideration to Deck's childhood experience "as a reason to vote against the death penalty." (*See* Resp. Exh. QQ at 92; Exh. VV at 39.) The Missouri Supreme Court's determination that this question would have required jurors to commit to how they would consider certain evidence is not an unreasonable interpretation of the question as it was proffered by post-conviction counsel. Deck's contention otherwise is without.

The claim raised in Ground 18 will be denied.

H.    Ground 19 – Assistance of Trial Counsel / Mitigation Witnesses

In this ground for relief, Deck claims that trial counsel was ineffective for failing to investigate and present testimony at trial from numerous witnesses, and specifically, Latisha Deck, Rita Deck, Elvina Deck, Michael Johnson, Stacy-

Tesreau-Bryant, Wilma Laird, Carol Miserocchi, Arturo Miserocchi, Tonia Cummings, and David L. Hood.[24] Deck raised this claim in his post-conviction motion and on appeal of the denial of the motion. The Missouri Supreme Court addressed the merits of the claim and denied relief.

As summarized above, Deck underwent a third penalty-phase trial in September 2008 upon remand from the United States Supreme Court. At this trial, counsel presented live testimony from a child development expert and from a psychiatrist, as well as the videotaped depositions of Mike Deck and Mary Banks, and the transcribed depositions of Major Puckett and Beverly Dulinski. *See Deck IV,* 381 S.W.3d at 346-49. The experts testified to their opinions that Deck "suffered an 'extreme case of a horrendous childhood' because he moved 22 times in 21 years, along with the abuse, neglect, and lack of guidance"; and "that [Deck's] childhood was similar to one of the 'most extreme cases of child abuse ever described.'" *Id.* at 348.

At the post-conviction hearing, trial counsel testified to their preparation, investigation, and strategies leading up to and during the third penalty-phase trial. Specifically, counsel testified that they talked to a lot of people during their investigation, which was much like finding "needles in haystacks" (Resp. Exh. UU

---

[24] As discussed above at Part VI.C.1, this claim is procedurally defaulted to the extent it contends that Ed Kemp should have been called to testify.

at 136-37, 245), and that they determined not to call witnesses who would provide

only cumulative evidence or who now appeared to be hostile to the defense.

Counsel also testified that some witnesses were no longer available to testify or

could not be located.  In addition, counsel expressed concern that some family

members appeared to be more concerned about making themselves look good

rather than testifying to Deck's bad childhood.  (*See generally id.* at 113-46, 178-

94, 241-53.)  Counsel therefore made the decision that evidence of Deck's abusive

and neglect-filled childhood would come in through the testimony of expert

witnesses.  (*Id.* at 247-48.)

Against this backdrop, I now turn to the specific witnesses Deck claims

counsel should have called to testify at his final penalty-phase trial.

*Latisha Deck, Elvina Deck, Wilma Laird, and Rita Deck*

The Missouri Supreme Court examined counsel's reasons for not presenting

live testimony from these witnesses, including that they would have provided only

cumulative testimony, were uncooperative, could not be located, were of

questionable competence, or would have undermined counsel's strategy to

emphasize that Deck was a victim of horrible parenting.   The court then

determined that counsel's resulting decision "to tell the story of [Deck's] childhood

through experts rather than presenting a piecemeal picture of his childhood"

through this live witness testimony was an exercise of reasonable trial strategy

from which Deck was not prejudiced. *Deck IV*, 381 S.W.3d at 349-52.

A presumption exists that counsel's conduct "might be considered sound trial strategy." *Strickland*, 466 U.S. at 688. "[A] reasoned decision not to call a witness is a virtually unchallengeable decision of trial strategy." *Rodela-Aguilar*, 596 F.3d at 464 (internal citation and quotation marks omitted). As stated by the Missouri Supreme Court, counsel's decision not to call these witnesses was well-reasoned and a matter of sound trial strategy, thereby defeating Deck's claim that counsel rendered ineffective assistance in this regard. *See Winfield,* 460 F.3d at 1034 (failure to present cumulative evidence does not result in prejudice sufficient to give rise to a claim of ineffective assistance of counsel; *Walls*, 151 F.3d at 834 (not ineffective assistance in failing to call family members to testify when such testimony would have revealed their total lack of support). This decision is based on reasonable factual findings and application of clearly established federal law. Deck is therefore not entitled to habeas relief with respect to these uncalled witnesses.

*Tonia Cummings*

The Missouri Supreme Court found counsel's decision not to call Tonia Cummings as a witness to likewise be a matter of reasonable trial strategy. In addition to finding that Ms. Cummings' testimony would have been cumulative to some extent, the court found it reasonable that counsel did not want to put Deck's

codefendant on the stand "because counsel did not want to allow the prosecution to cross-examine her about the murders. Also, counsel was concerned that Tonia may be viewed as an additional victim because she was in prison for the crimes that she committed with [Deck]." *Deck IV*, 381 S.W.3d at 353.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. "The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy[.]" *United States v. Staples,* 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted); *see also Bowman v. Gammon,* 85 F.3d 1339, 1345 (8th Cir. 1996) (noting that under *Strickland,* "decisions related to trial strategy are virtually unchallengeable"). Counsel's strategy to not call Tonia Cummings was reasonable given the concern that her testimony might refocus the jurors' attention on the nature of the crimes themselves rather than portraying Deck in a way such that the jurors might spare his life. Deck has failed to overcome the presumption that, under the circumstances, counsel's challenged action could be considered sound trial strategy.

The Missouri Supreme Court's denial of this claim with respect to counsel's failure to call Tonia Cummings was not the result of an unreasonable

determination of the facts or contrary to clearly established federal law. Deck is not entitled to habeas relief with respect to this uncalled witness.

*Michael Johnson, the Miserocchis, and D.L. Hood*

Depositions taken in 2011 of the Miserocchis were admitted into evidence at the post-conviction motion hearing (Resp. Exh. TT at 38), and the post-conviction motion court summarized testimony therefrom:

> Mr. Miserocchi testified that lawyers did contact him three times on behalf of [Deck]. Mr. Miserocchi testified he did not want to come to court and has a certain level of sympathy for [Deck's] victims.
>
> Mrs. Miserocchi testified that she did not work outside the home and was responsible for supervising the foster children who stayed with her. She testified that [Deck] did not want to be in foster care and wanted to be back with his family. Mrs. Miserocchi did not remember any family member coming to visit [Deck]. [Deck] did speak about wanting to go home to his father. [Deck] never got close to the Miserocchi's.
>
> Mrs. Miserocchi also indicated an unwillingness to have testified at trial. She testified that Mr. Deck was reported to have acted sexually inappropriate and that [Deck] was not liked by the other children because he was "mouthy" and had a "smart mouth."

(Resp. Exh. RR at 288-89.) Trial counsel testified at the post-conviction hearing that they determined not to call the Miserocchis to testify at the third penalty-phase trial because the testimony they provided at earlier post-conviction hearings was tangential and the information could be better conveyed through the experts' testimony. (Resp. Exh. UU at 129.)

Michael Johnson testified at the post-conviction hearing that he was the son of Deck's stepmother, Marietta Deck, and lived with Deck and his siblings for one year when Deck was about eleven or twelve years old. Johnson testified to the neglect he and the Deck children experienced while living with Marietta and Deck's father, the physical abuse inflicted by Marietta, and verbal abuse from Johnson's grandfather during this time. Johnson also testified that the Deck children kept to themselves. Johnson testified that he would have been available to provide this testimony at the penalty-phase trial if he had been called. (Resp. Exh. RR at 98-107.) Trial counsel testified at the post-conviction hearing that they had no memory of any attempt to contact Mr. Johnson and likewise had no memory of whether they did or did not want to call him to testify at the penalty-phase trial. (*Id.* at 136-38.)

Finally, D.L. Hood – who was Kathy Deck's former boyfriend – provided deposition testimony that Kathy was crazy and had tried to stab Hood one night. Hood also testified that Kathy was promiscuous and that she had told him that she had taken her children to the welfare office and left them on the steps. *Deck IV*, 381 S.W.3d at 349. Trial counsel testified at the post-conviction motion hearing that they decided not to call D.L. Hood because his testimony was tangential and because he was not in Deck's life for that long a period of time. (Resp. Exh. RR at 296.)

In ruling on Deck's claims regarding these proffered witnesses, the post-conviction motion court found generally that the proposed testimony proffered by counsel was presented to the jury through the testimony of the experts and that the additional testimony was not compelling. With respect to Michael Johnson and the Miserocchis specifically, the court found that their proposed testimony was inconsequential. (Resp. Exh. RR at 302-03.)

The Missouri Supreme Court addressed the substance of the proposed testimony from these witnesses and found that the "testimony was so lacking in substance that it would not have had an impact on the jury in their decision." *Deck IV*, 381 S.W.3d at 349. "Movant failed to show that, had the additional mitigating witnesses been called to testify, their testimony would have outweighed the aggravating evidence so that there was a reasonable probability the jury would have voted for life." *Id.* Given that the proposed testimony "would not have been compelling," the supreme court found that the post-conviction motion court did not err in denying Deck's claim regarding counsel's failure to call these witnesses. *Id.*

This finding that Deck was not prejudiced by counsel's failure to call these witnesses is not contrary to nor an unreasonable application of clearly established federal law. Nor is it based upon an unreasonable determination of facts presented in the State court proceedings. The proffered testimony of the Miserocchis, Johnson, and Hood was cumulative to the expert testimony and deposition

testimony presented to the jury.  This evidence "would barely have altered the sentencing profile presented[.]"  *Strickland*, 466 U.S. at 699-700.  Further, the proffered testimony would have been elicited from persons who had relationships with Deck for relatively short periods of time.  In addition, some of the testimony that may have been adduced might have been harmful to Deck's case, especially that from the Miserocchis indicating that they felt sorry for Deck's victims and that Deck displayed inappropriate behavior toward their children.

Because Deck has failed to make the required showing that he was prejudiced by counsel's failure to call these witnesses at his third penalty-phase trial, his claim of ineffective assistance of counsel fails with regard to these witnesses.  *Strickland*, 466 U.S. at 700.

*Stacey Tesreau-Bryant*

At the post-conviction hearing, Stacey Tesreau-Bryant testified that she previously had a relationship with Deck during which time he became close with her son.  Bryant testified that Deck shared with her that he had been molested by his mother's boyfriends while he was growing up and had been raped in prison. Deck also shared with Bryant that he had no respect for his mother.  Bryant testified that she would have provided this testimony at Deck's third penalty-phase trial if had she been subpoenaed and called to testify.  (Resp. Exh. UU at 199-209.)

Trial counsel testified at the post-conviction hearing that their investigator

attempted to locate Bryant prior to the third penalty-phase trial but was met with hostility from Bryant's husband who did not want Bryant to become involved. No other attempts were made to locate Bryant. Counsel determined that, given the hostility exhibited by Bryant's husband and the tangential nature of Bryant's expected testimony, the information would be best presented to the jury through the testimony of the expert witnesses. (Resp. Exh. UU at 130-35, 249-50.)

In light of this evidence adduced at the post-conviction hearing, the Missouri Supreme Court determined that Deck had failed to show that, through reasonable investigation, counsel would have been able to locate Bryant and have her testify at the third penalty-phase trial. The supreme court noted that Bryant lived with her husband at the time, who "was always home," and that counsel would have had to contact her through her husband. Given that Bryant's husband was "totally against" her involvement in the case, it was not likely that counsel would have been successful in continued attempts to establish contact with her. *Deck IV,* 381 S.W.3d at 352. In addition, the supreme court found that Bryant's proffered testimony would have been cumulative to testimony that had been adduced at trial; and, further, that her testimony regarding Deck's rape in prison would have called attention to Deck's adult criminal life, which could have been more detrimental than beneficial to Deck's case. *Id.* A habeas petitioner does not show prejudice by counsel's decision to not present evidence potentially harmful to his case,

especially evidence highlighting the defendant's criminal history. *See Strickland*, 466 U.S. at 673, 700.

Accordingly, the Missouri Supreme Court's denial of this claim with respect to counsel's failure to call Stacey Tesreau-Bryant was not the result of an unreasonable determination of the facts or contrary to clearly established federal law. Deck is not entitled to habeas relief with respect to this uncalled witness.

I.    Ground 21 – Assistance of Trial Counsel / Failure to Call Neuropsychologist

A convicted defendant's right to effective assistance of counsel extends to mitigating evidence in the context of capital cases. Convicted capital defendants have a constitutionally protected right to provide the jury with "mitigating evidence that [their] trial counsel either failed to discover or failed to offer." *Williams*, 529 U.S. at 393. Where a habeas petitioner claims that his trial counsel conducted an inadequate investigation into potential evidence, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith,* 539 U.S. 510, 527 (2003).

Here, Deck claims that despite trial counsel's awareness that he had had a number of head injuries, had used illegal drugs, and possibly experienced trauma at birth, they did not request a neuropsychological evaluation that could have developed evidence of brain trauma, which could have then been presented as

mitigating evidence at his final penalty-phase trial.  In denying Deck's claim that

this constituted ineffective assistance of counsel, the Missouri Supreme Court

found that Deck could not show that he was prejudiced by counsel's failure to seek

a neuropsychological evaluation because Deck had failed to establish that such an

evaluation would have shown that he suffered a brain injury so significant that the

jury would have voted for life instead of death.  For the following reasons, this

conclusion was not the result of an unreasonable determination of the facts; nor

was it contrary to or an unreasonable application of clearly established federal law.

The claim will therefore be denied.

The Missouri Supreme Court determined that Deck failed to establish that he

was prejudiced by counsel's conduct.  To establish prejudice for counsel's failure

to pursue or present evidence of a neuropsychological evaluation, Deck must

establish a "reasonable probability that a competent attorney, aware of the

available mitigating evidence would have introduced it at sentencing, and that had

the jury been confronted with this mitigating evidence, there is a reasonable

probability that it would have returned with a different sentence." *Sinisterra v.*

*United States,* 600 F.3d 900, 906 (8th Cir. 2010) (quoting *Wong v. Belmontes,* 558

U.S. 15, 19-20 (2009)).  The burden of showing prejudice here is twofold.  *See*

*Ringo v. Roper*, 472 F.3d 1001, 1006 (8th Cir. 2007).  First, Deck would have to

show that it was reasonably probable that if counsel had retained a

neuropsychologist, the neuropsychologist would have diagnosed him as having a brain injury. If Deck overcomes this initial burden, he would have to establish that there is a reasonable probability that the brain injury evidence would have altered the outcome of the penalty phase of the trial. Then – because I review this claim in the habeas context – Deck would have to show that the State court's conclusion that he was not prejudiced involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Ringo*, 472 F.3d at 1006; 28 U.S.C. § 2254(d).

At Deck's post-conviction motion hearing, neuropsychologist Michael Gelbort testified that he conducted a neuropsychological evaluation of Deck in August 2010. Dr. Gelbort testified that Deck informed him during this testing of historical events that could be important to his neuropsychological functioning – such as hitting his head on rocks while swimming, being held under water while trying to help a friend who was drowning, and having been born by caesarean section – but that these descriptions were vague and Deck presented nothing that "was clear-cut." (Resp. Exh. TT at 56-58.) He also testified that evidence of drug use significant for brain dysfunction was, "for the most part, absent." (*Id.* at 63.)

Dr. Gelbort testified that he administered to Deck a battery of intelligence and cognitive-based tests, none of which showed Deck to suffer significant or even moderate impairments. Instead, Deck consistently scored within the normal range,

albeit in the low average to average range. (*See* Resp. Exh. TT at 105.) To the extent Deck's lower scores were related, Dr. Gelbort testified that they tended to show weakness in focus, attention, and concentration, and in his ability to accurately account for information. (*Id.* at 106, 115.) Dr. Gelbort testified, however, that on one particular test – the category test – Deck scored in the borderline defective range, which was "right on the border between someone who is with 95 percent assurance coming from a population that doesn't have normal brain function." (*Id.* at 106.) This test measured Deck's ability to see connections between things and to take information learned from one circumstance and apply it to similar circumstances. (*Id.* at 107-08.)

Dr. Gelbort testified that Deck's history and test results would support a finding that Deck had cognitive dysfunction, but that – if he had the same capacity at the time of the murders as at the time of testing – he likely would have had the capacity to understand right from wrong. (Resp. Exh. TT at 141.) Dr. Gelbort further testified that, while Deck was less able than a normal person to make an adept, insightful, and reasonable decision, he could "of course make a decision" to commit or not to commit murder. (*Id.* at 143.)

Trial counsel testified at the post-conviction hearing that their review of Dr. Gelbort's report did not lead them to conclude that they should have pursued neuropsychological evaluation for Deck's third penalty-phase trial. Counsel

specifically testified that information from Dr. Gelbort would have benefited the prosecution in the case, given that testing showed Deck to function for the most part in the average range. To the extent the testing showed a cognitive deficit demonstrating some impaired judgment, counsel testified that the facts brought out in testing that led to that conclusion would have been problematic for Deck at trial. (Resp. Exh. UU at 86-92.)

Assuming without deciding that Deck could establish that testing would have shown him to have a cognitive deficit caused by a brain injury, he nevertheless cannot show a reasonable probability that this evidence would have altered the outcome of his penalty-phase trial. Deck's performance on the majority of Dr. Gelbort's tests showed him to function both intellectually and cognitively in the low average to average range. To the extent one subset test and the connection between Deck's lower scores showed him to have difficulty with focus and correlating information, leading to a conclusion that he had impaired judgment, Dr. Gelbort nevertheless opined that Deck had the capacity to understand right from wrong at the time of the murders and could "of course" decide whether or not to commit murder. Indeed, a review of Dr. Gelbort's hearing testimony in its entirety supports trial counsel's trepidation that the facts brought out through this testing would be detrimental to Deck at the penalty-phase trial instead of benefitting him.

The Missouri Supreme Court found that counsel's thorough investigation

into Deck's childhood revealed no evidence of brain damage or impaired psychological functioning that would have led counsel to seek evidence from a neuropsychologist in the first place. The court went on to find, however, that even if evidence from a neuropsychologist had been obtained and presented at Deck's penalty-phase trial, Deck failed to show a reasonable probability that the jury would have voted for life instead of death. *Deck IV*, 381 S.W.3d at 354. For the reasons set out above, this conclusion was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

Accordingly, the claim raised in Ground 21 will be denied.

J.      Ground 23(a) – Assistance of Trial Counsel / Failure to Object to Cross-Examination

As discussed above, Dr. Surratt testified as a mitigation witness at Deck's third penalty-phase trial and rendered an opinion – based upon interviews and her review of additional evidence – that Deck's childhood "was similar to one of the 'most extreme cases of child abuse ever described.'" *Deck IV*, 381 S.W.3d at 348. During cross-examination of Dr. Surratt, the prosecutor acknowledged that Dr. Surratt's testimony was intended to explain Deck's behavior. He then engaged in the following examination:

> PROSECUTOR:   And wouldn't it be easy or helpful to explain his behavior, if you had asked him why did you put a gun against these

people's head and kill them?

DR. SURRATT:    And it could have, yes.

PROSECUTOR:    It could have, but it also could have been pretty detrimental to Mr. Deck, if he had said, the reason I killed them is *because I'm a no-good s.o.b. and wanted them dead*, because I didn't want to go to prison.  That wouldn't be a very good answer for Mr. Deck, would it?

DR. SURRATT:    It would have went along with my findings of how he responds to things; is it good or bad, not for me to say, but it certainly would have been fitting.

PROSECUTOR:    He wanting these people dead just because he wanted their money fits along with what you believe?

COUNSEL TUCCI:  Objection; asked and answered.

THE COURT:  Sustained; move on, please.

*Id.* at 354-55 (emphasis in *Deck IV*).  Deck claims that trial counsel was ineffective when they failed to object to the prosecutor's reference to Deck as being a "no good s.o.b." and wanting the victims dead.  The Missouri Supreme Court denied Deck's claim, finding that he had failed to overcome the presumption that a failure to object is a matter of trial strategy and, further, that Deck nevertheless was not prejudiced by the prosecutor's statement.  For the following reasons, the supreme court's decision was neither contrary to nor an unreasonable application of clearly established federal law.  Nor was it based on an unreasonable determination of facts.  The claim will be denied.

Because I review Deck's claim of ineffective assistance of counsel in the habeas context, I may not apply the *Strickland* analysis as if I were addressing the claim in the first instance. In order to succeed on this habeas claim under § 2254(d)(1), therefore, it is not enough for Deck to convince me that, in my independent judgment, the State court applied *Strickland* incorrectly. Rather, he must show that that court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Hoon v. Iowa*, 313 F.3d 1058, 1063 (8th Cir. 2002); *see also Bell v. Cone*, 535 U.S. 685, 698-99 (2002). For the following reasons, Deck is unable to do so here.

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Because of the inherent difficulties in assessing an attorney's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To establish prejudice on account of counsel's performance during the penalty phase of this capital case, Deck must show that in the absence of counsel's error, the jury would not have sentenced him to death. *Cole v. Roper*, 579 F. Supp. 2d 1246, 1263 (E.D. Mo. 2008), *aff'd*, 623 F.3d 1183 (8th Cir. 2010).

In its decision, the Missouri Supreme Court acknowledged that the prosecutor's challenged remark was improper and that trial counsel could not articulate at the post-conviction hearing their strategy for not objecting to the statement. The supreme court noted that one of Deck's attorneys, attorney Reynolds, suggested at the hearing that an objection may not have been made so as not to highlight the issue for the jury, and the court found this to be reasonable trial strategy. *Deck IV*, 381 S.W.3d at 357. Although Deck argues that the court could not have reasonably found this to be a strategy given that counsel did not articulate any specific strategy at the post-conviction hearing, "[t]rial counsel's lack of a strategic reason for failing to object is irrelevant" to my inquiry here, given that Deck suffered no prejudice from this failure. *Cole*, 579 F. Supp. 2d at 1264.

The Missouri Supreme Court noted that the challenged statement was brief and that further questioning in this vein was "shut down" by counsel's sustained objection, which avoided the compounding effect of egregious errors. As noted earlier in this opinion, the jury had before it live testimony of fifteen witnesses, deposition testimony from three additional witnesses, expert testimony, and seventy exhibits. The trial record spanned over 450 pages. In view of this, even if counsel's failure to object to the prosecutor's improper remark was unreasonable, Deck has failed to demonstrate that this brief and isolated remark had a substantial and injurious effect on the trial as a whole, or greatly influenced the jury to the

extent that it returned a sentence of death because of it. *See Nave v. Delo*, 62 F.3d 1024, 1027 (8th Cir. 1995); *Schneider v. Delo*, 890 F. Supp. 791, 831 (E.D. Mo. 1995), *aff'd,* 85 F.3d 335 (8th Cir. 1996).

Accordingly, the Missouri Supreme Court did not misapply *Strickland* when it found that Deck could not establish a claim of ineffective assistance of counsel given his failure to show that he suffered prejudice as a result of counsel's failure to object to the prosecutor's improper remark. Because I can grant relief on this claim only if the Missouri court applied *Strickland* unreasonably, and it did not, the claim raised in Ground 23(a) will be denied. *See Nance v. Norris*, 392 F.3d 284, 294 (8th Cir. 2004).

K.     Ground 24(a) – Assistance of Trial Counsel / Failure to Object to Closing Argument

For similar reasons set out above with respect to Ground 23(a), this claim of ineffective assistance of counsel fails.

Deck was convicted in 1985 of aiding an escape from prison. His sentence and judgment for this conviction was admitted at the third penalty-phase trial; no other evidence relating to this crime was admitted. During closing argument, the prosecutor told the jury that it could consider "all [Deck's] prior escapes" and urged the jury not to impose a life sentence, arguing that Deck knew how to escape and, further, had helped others escape – "people that were in for the rest of their

lives." *Deck IV*, 381 S.W.3d at 357.  Deck's counsel objected on the bases that this prior conviction was not a noticed aggravator and that the argument was irrelevant. Both objections were overruled.  Deck now claims that his counsel was ineffective because he should have argued that the prosecutor's argument misstated the evidence, implied to the jury that the prosecutor was aware of additional facts regarding multiple escapes, and improperly injected fear into the jury's considerations.

In reviewing this claim on post-conviction appeal, the Missouri Supreme Court determined that Deck could not show that he was prejudiced by the prosecutor's misstatements.  The court examined the prosecutor's challenged statements "in the context of the entire record" and determined that the prosecutor's simple misstatement of the plural form of "escape" did not affect the jury's sentencing decision.  To the extent the prosecutor addressed the sentence length of the persons whom Deck aided in their escape, the supreme court referred to the findings of the post-conviction motion court – which found that the import of this part of the prosecutor's argument was that Deck knew how to escape, thereby making sentence length of those whom he helped escape inconsequential and insignificant (Resp. Exh. RR at 306) – and, again viewing the statement in the context of the entire record, determined the motion court not to have erred in its conclusion.  The supreme court therefore determined that Deck failed to show that,

had counsel indeed pursued additional objections to the prosecutor's misstatements, the result of Deck's sentencing proceeding would have been different. *Deck IV,* 381 S.W.3d at 358.

The Missouri Supreme Court reviewed the prosecutor's challenged statements in the context of the entire trial – which, as I have repeatedly noted, contained extensive evidence – and found that there was no reasonable probability that the jury would have returned a different verdict if counsel had made additional objections to the statements. In reaching this conclusion that Deck did not show prejudice under *Strickland*, the court did not misapply *Strickland* nor apply it unreasonably. Accordingly, regardless of any doubt that may exist with respect to whether counsel lodged the appropriate objections to the prosecutor's statements made during closing argument, this habeas claim of ineffective assistance of counsel must be denied. *Nance,* 392 F.3d at 294.

L.    Ground 25 – Assistance of Trial Counsel / Jury Questionnaires

Jurors G.H. and R.E. sat on the jury at the third penalty-phase trial that voted to sentence Deck to death. In her juror questionnaire, G.H. reported that she was married to a Missouri State park ranger, and currently worked as an inventory control specialist at a retail store. (Traverse, Exh. 6, ECF #67-6.) In R.E.'s questionnaire, he answered "yes" to the question "Are you related to or close friends with any law enforcement officer?" (*Id.*, Exh. 7, ECF #67-7.) Deck claims

that his trial counsel was ineffective for not asking these jurors to elaborate on these answers during voir dire examination, "with an eye to a challenge for cause or peremptory strike." (Amd. Petn., ECF #30 at 95.) Deck's claim fails.

*Juror G.H. – Juror Number 65*

Deck first argues that trial counsel should have questioned G.H. about her employment as an inventory control specialist. He argues that this position likely involves concerns with theft and that, because Deck had prior convictions for theft, G.H.'s response to the question regarding her employment deserved further inquiry. Other than claiming that he could have considered this information when determining strikes, Deck does not present any argument or show how he was prejudiced by counsel's failure to question G.H. in this manner. Regardless, I have reviewed the transcript of the entire voir dire examination of all the venire members and find that counsel did not act unreasonably by not specifically questioning G.H. about her employment.

After general voir dire examination, the venire panel was divided into four groups for further examination. G.H. was in the third group. During examination of the first group, Deck's counsel began asking the venire members specific questions regarding their employment. (Resp. Exh. KK at 298-300.) The court admonished counsel and instructed him not to continue: "I don't see how going into the occupation or employment is going to assist in any way, shape, or form in

answering the questions that you and the state and the Court are going to have to answer when it comes time to striking any additional people." (*Id.* at 302.) With this admonishment, it cannot be said that counsel acted unreasonably when he did not ask specific questions of G.H. regarding her employment when the third venire group underwent voir dire examination. *Cf. Moore v. Haviland*, 531 F.3d 393, 403 (6th Cir. 2008) (unreasonable to require litigant to refuse court's orders in order to preserve claim).

To the extent it may be argued that counsel should have asked these employment questions during the general voir dire examination, my review of that examination shows G.H. not to have exhibited any evidence of bias or prejudice with respect to the issue of theft. Indeed, she testified during general examination that her brother was currently serving a prison sentence for a crime that involved stealing, but that she could put aside that experience and decide Deck's case solely on the facts presented in court. (Resp. Exh. KK at 192-93.) Deck has presented no evidence or argument, and none appears in the record, that G.H. acted with actual or implied bias during her service on the jury. Because Deck cannot show that G.H.'s presence on the jury prejudiced him, he cannot prevail on his ineffective assistance claim. *Sanders*, 529 F.3d at 794.

Deck also argues that counsel "asked no questions" of G.H. regarding her questionnaire answer that her husband was a law enforcement officer, that is, a

park ranger; and, further, did not follow up on her voir dire answer that he "worked for the state parks." (Amd. Petn., ECF #30 at 95.) My review of the voir dire examination shows Deck's claim to be without merit:

> MR. TUCCI: . . . Has anybody ever been married to a police officer? Juror Number 65, you are – are you currently married to a police officer?
>
> VENIREPERSON NUMBER 65: Yes, he first started with the police department in Curreyville, and the Sheriff's Department, and then he went to the State.
>
> MR. TUCCI: Now he's a park ranger?
>
> VENIREPERSON NUMBER 65: Yes. He's been in law enforcement for 20 years.
>
> MR. TUCCI: For over 20?
>
> VENIREPERSON NUMBER 65: Over 20.

(Resp. Exh. KK at 215.) Deck's claim that counsel failed to ask G.H. about her husband's employment as a law enforcement officer is belied by the record. I need not discuss this claim further.

*Juror R.E. – Juror Number 60*[25]

During the general voir dire examination, the panel was asked if they or a close family member or friend was involved in law enforcement. (Resp. Exh. KK

---

[25] Although Deck states that R.E. was Juror Number 9 on the venire panel (Amd. Petn., ECF #30 at 95), my review of the record shows that R.E. was actually Number 60. He was Number 9 on the petit jury that sat during the penalty-phase trial. (Resp. Exh. KK at 459-60.)

at 157-58.)  Although R.E. responded "yes" to the law enforcement question on the juror questionnaire, he did not respond to the question during voir dire.  Each venire member who did answer "yes" during voir dire was then asked whether this circumstance would affect their ability to be fair in the case and whether they would be able to decide the case based solely on the evidence adduced at trial.  (*Id.* at 158-69.)  Deck claims that his counsel should have developed the issue of R.E.'s relationship with law enforcement during voir dire, "with an eye to a challenge for cause or a peremptory strike."  (Amd. Petn., ECF #30 at 95.)

My review of the voir dire examination shows R.E. to have responded directly to only one question, that being one asking about military service.  R.E. responded that he was in the Navy for eight years and that nothing about his experience would make him unable to deliberate on the facts as heard only in court.  (Resp. Exh. KK at 222-23.)

At the end of the prosecutor's examination, the entire panel was asked if anyone felt the need to respond to a question that was asked earlier.  R.E. did not respond.  (Resp. Exh. KK at 200-01.)  At the conclusion of defense counsel's examination, the panel was asked whether there were any issues – either already addressed or not – that would "enter into [their] thinking" if they were to consider the case.  R.E. did not respond.  (*Id.* at 239-40.)

As with G.H., my review of the entire voir dire examination shows that R.E.

did not exhibit any evidence of bias or prejudice, or raise any concern regarding his ability to consider the case on only the facts presented in court. Deck has presented no evidence or argument, and none appears in the record, that R.E. acted with actual or implied bias during his service on the jury. Because Deck cannot show that R.E.'s presence on the jury prejudiced him, he cannot prevail on his ineffective assistance claim. *Sanders*, 529 F.3d at 794.

The claim raised in Ground 25 will be denied.

## VIII. Claims Granted – Unconstitutional Delay

The murders of James and Zelda Long occurred on July 8, 1996, and Deck was arrested that same date. Deck was tried for the murders in February 1998 and was sentenced to death. The sentence was reversed, and a second penalty-phase trial was held in 2003, which resulted in another death sentence. The United States Supreme Court reversed that sentence in 2005. Deck's third and final penalty-phase trial was held in September 2008, and Deck was again sentenced to death for the murders.

In Ground 31 of his petition, Deck claims that the inordinate delay between his conviction in February 1998 and his final sentencing trial in September 2008 caused his mitigation evidence to be unavailable on account of its loss or destruction and because of "witness fatigue," thereby depriving him of his constitutional right to adequately present mitigating evidence to the jury at his third

penalty-phase trial.  Deck argues that because this delay was not attributable to him, his sentencing proceeding was fundamentally unfair and thus violated his rights to due process and to be free from the infliction of cruel and unusual punishment.  In Ground 32(a), Deck claims that trial counsel was ineffective for failing to bring this due process/Eighth Amendment claim in State court.  For the following reasons, I will grant habeas relief on these claims.

A.    Background

The Long murders occurred in July 1996, and Deck's trial for the murders was held in February 1998, after which he was sentenced to death in accordance with the jury's verdicts.  The sentence was reversed in February 2002 after the Missouri Supreme Court found that Deck received ineffective assistance of counsel during the penalty phase of the trial.  Deck's second penalty-phase trial was held fourteen months later – in April 2003 – and he was again sentenced to death.  In May 2005, the United States Supreme Court reversed this death sentence, finding that Deck's visible shackling during the second penalty-phase trial violated his constitutional right to due process.  On August 30, 2005, the matter was remanded back to the circuit court for a new penalty-phase trial.  (Resp. Exh. GG at 67-68.) Three years later, in September 2008, Deck's third penalty-phase trial began.  Over ten years had passed since Deck's conviction, and over twelve years had passed since the Long murders.

After the case was remanded to the circuit court in 2005, defense counsel filed various motions, including motions to change venue, to produce Brady material, for discovery, and for imposition of a life sentence under Missouri law. The motions were filed in November 2005, and they were set to be heard on the circuit court's February 2006 docket. At that docket, the court set the trial for September 12, 2006. (Resp. Exh. GG at 118.) The Jefferson County Prosecuting Attorney's Office represented the State.

On March 15, 2006, the State sought a three-day continuance of the trial because of the unavailability of one of its witnesses. This extension was granted. (Resp. Exh. GG at 124.) On March 24, 2006, for reasons not stated, the State requested another trial continuance to December 2006, to which Deck objected. The court continued the trial to March 27, 2007. (*Id.* at 126.)

In August 2006, Deck's attorneys were permitted to withdraw because of a conflict of interest. New counsel, Stephen Reynolds and John Tucci, entered and they remained Deck's trial counsel through the remainder of the penalty-phase proceedings. On January 9, 2007, counsel requested that the March 2007 trial be continued, arguing, *inter alia*, that they were in the process of interviewing and securing mitigation witnesses from the previous penalty-phase trials; were attempting to obtain additional mitigation evidence and locate additional witnesses; and that recently-secured expert Dr. Surratt had been unable to review the case.

Counsel averred that Dr. Surratt would be available for trial in July or August 2007.  (Resp. Exh. GG at 157-60.)  The court continued the trial to October 30, 2007.  (*Id.* at 170.)

Trial counsel filed additional pretrial motions in September 2007, some of which emphasized the constitutional significance of mitigation evidence and its effect on the jury's determination of life versus death.  (*See, e.g.,* Resp. Exh. HH at 220-30, *et seq.*).  Among these motions were requests to admit prior videotaped and/or deposition testimony of some mitigation witnesses for the reason that they were unavailable to testify because of illness and/or were located out of state.  In the latter instance, counsel averred that they had made efforts to contact a witness at her last known location in Utah but were unsuccessful.  (*Id.* at 251.)

In October 2007, Deck's counsel notified the trial court that they had recently become aware that the niece of James and Zelda Long was an employee in the Victims Services Unit of the Jefferson County Prosecuting Attorney's Office and was involved in a meeting between the prosecuting attorney and the Long family regarding a proposed disposition proffered by Deck and his counsel. Counsel also informed the court that after this meeting, the niece was reported to have told other persons in the courthouse about the outcome of the meeting, and specifically, that the proffer was rejected.  (Resp. Exh. HH at 330-33.)  On October 19, 2007, the court disqualified the Jefferson County Prosecutor's Office for

conflict of interest. (Resp. Exh. II at 460.) After the Missouri Attorney General's Office entered for the State in December, the court reset the trial to September 15, 2008 (*see* Resp. Exh. GG at 51; Exh. II at 463), which is when Deck's third penalty-phase trial began.

The only live testimony Deck's counsel presented at trial was from a child development expert and a psychiatrist. Counsel also presented videotaped depositions of Deck's brother and aunt, and they read into the record depositions of another aunt and of a foster parent. The State presented live testimony from thirteen witnesses: four relatives of the Longs, eight investigating law enforcement officers, and the medical examiner. After deliberating for three hours, the jury returned its verdict for death. The Missouri Supreme Court affirmed the sentence on direct appeal, and the United States Supreme Court denied certiorari.

In May 2010, Deck filed his pro se motion to vacate, set aside, or correct his sentence under Missouri Supreme Court Rule 29.15, raising three claims for relief: 1) that trial counsel was ineffective for failing to adduce all mitigating evidence; 2) that trial counsel was ineffective for providing wrong advice regarding his decision to testify; and 3) that his sentence violates his Eighth Amendment right to be free from cruel and unusual punishment. (Resp. Exh. QQ at 6.) Appointed counsel thereafter filed an amended post-conviction motion, raising seven claims for relief, six of which challenged the assistance of trial counsel. Three of those claims

addressed counsel's presentation of mitigation evidence, with two claims specifically alleging that trial counsel failed to call additional mitigation witnesses and failed to present additional mitigation record evidence. Post-conviction counsel argued that trial counsel should have but failed to call several mitigation witnesses at the third penalty-phase trial, averring that these witnesses were all available and would have testified if subpoenaed. Trial counsel's testimony at the post-conviction hearing, however, revealed a different story.

At the first penalty-phase trial in 1998, Deck presented the live testimony of four witnesses: Rita Deck, Beverly Dulinski, Major Puckett, and Michael Deck. The Missouri Supreme Court found this mitigation evidence to be "substantial."[26] At the second penalty-phase trial in 2003, Deck presented the live testimony of Rita Deck, Beverly Dulinski, Elvina Deck, Major Puckett, and Dr. Surratt. Deck also presented the video deposition of Michael Deck at the second trial. Prior to the third penalty-phase trial in 2008, trial counsel attempted to contact some of these witnesses and others to have them testify. Attorney Tucci testified at the post-conviction hearing that he thought it was "absolutely" important to have some of Deck's family members testify at trial – to be able to "look at the jury, and say, please spare his life. He is of value to me." (Resp. Exh. UU at 142-43.) He

---

[26] Indeed, the court held that with this substantial mitigating evidence, there was a reasonable probability that the result of the proceeding would have been different if the jury had been given proper penalty-phase instructions. *Deck II*, 68 S.W.3d at 431.

further testified, however, that because of changed circumstances given the passage of time, these persons could not be located or were no longer willing or able to participate. "[A] lot of time has passed between 2000 and 2006, 2007, whatever year it was or 2008. . . . [T]here were so few and so scarce of live family members who would come and say anything on Carman's behalf, that we would try to grasp anybody that we could." (*See id.* at 118-23.)

Tucci testified that in determining their strategy as to what witnesses and evidence to present at trial, he and co-counsel had to consider what was going on with these potential witnesses "immediately prior to trial," because "some people had changed." (Resp. Exh. UU at 181-82.) For instance, Tucci testified that while Rita Deck was cooperative and provided favorable testimony at the two earlier penalty-phase trials (*id.* at 118), she was "now doing a 180" with respect to the third trial. (*Id.* at 181-82.) Rita's husband, Pete, was too sick to testify and Rita sought to have him released from his subpoena. (*Id.* at 114-16.) Counsel wanted to talk to Elvina Deck to determine where she stood "at that particular time" – especially "given the passage of time, and seeing how Rita Deck had changed her opinion" – but she could not be located by their investigator. (Resp. Exh. UU at 121-23.) While looking for Elvina, however, the investigator learned that another potential witness, namely Norman Deck, had died. (*Id.*)

Tucci testified that if they could have found any person who could have

helped to spare Deck's life, they would have presented them at trial. "This guy's life is at stake, and anything that we had that would have helped, you know, held water, and that, you know, would have served as just one basis, one basis to spare Carman Deck's life, that person would have been presented." (Resp. Exh. UU at 193.) But he recognized during Deck's earlier post-conviction proceedings back in 2000 and 2003 that "if this case ever went back to trial, these people are going to become as uncooperative at trial as they were like wood [sic] dogs." (*Id.* at 154.) As it turned out, Deck indeed had to go back to trial, and these people became uncooperative.

B.      Discussion

At the time Deck's sentencing judgment became final, the law was clearly established that, in a capital case, a criminal defendant has a constitutionally protected right to provide the jury with mitigating evidence. *Williams*, 529 U.S. at 393. The Eighth Amendment prohibits the infliction of cruel and unusual punishment, which, in a capital case, means that while the death penalty may be the appropriate punishment in a specific case, it can only be imposed after adequate consideration of factors that might warrant mercy. *Woodson v. North Carolina,* 428 U.S. 280, 305 (1976); *California v. Brown,* 479 U.S. 538, 554 (1987). The presentation of mitigating evidence allows for the consideration of "compassionate or mitigating factors stemming from the diverse frailties of

humankind . . . [which is] a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson,* 428 U.S. at 304. *See also Skipper v. South Carolina,* 476 U.S. 1 (1986). Accordingly, the sentencer must "'not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Eddings v. Oklahoma,* 455 U.S. 104, 110 (1982) (quoting *Lockett v. Ohio,* 438 U.S. 586, 604 (1978)) (emphasis in *Lockett*).

Deck claims here that the inordinate delay between his conviction in February 1998 and his final sentencing trial in September 2008 caused his mitigation evidence to be unavailable on account of its loss or destruction and because of "witness fatigue," thereby depriving him of his constitutional right to adequately present mitigating evidence to the jury at his third penalty-phase trial. Deck argues that because this delay was not attributable to him, his sentencing proceeding was fundamentally unfair and thus violated his rights to due process and to be free from the infliction of cruel and unusual punishment.

In *Betterman v. Montana*, the United States Supreme Court held that a criminal defendant's right to a speedy trial under the Sixth Amendment does not apply once he has been found guilty at trial or has pleaded guilty to criminal charges. The Sixth Amendment's speedy trial guarantee protects the accused from

arrest or indictment through trial, but not after a defendant has been convicted. 136 S. Ct. 1609, 1612 (2016). The Court recognized, however, that for inordinate delay in sentencing, a defendant may have recourse other than the Speedy Trial Clause of the Sixth Amendment, "including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* "After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair." *Id.* at 1617. "[D]ue process serves as a backstop against exorbitant delay" between conviction and sentence. *Id.*

The defendant in *Betterman* did not raise a due process challenge to the fourteen-month gap between his conviction and sentence, so the Supreme Court limited its specific holding to his Sixth Amendment challenge and expressed "no opinion on how he might fare under that more pliable [due process] standard." 136 S. Ct. at 1617-18 (citing *United States v. $8,850*, 461 U.S. 555, 562-565 (1983)). The Court noted, however, that considerations relevant to such a due process challenge "may include the length of and reasons for delay, the defendant's diligence in requesting expeditious sentencing, and prejudice." *Id.* at 1618 n.12. *See also $8,850*, 461 U.S. at 564-65 (factors to consider when assessing whether due process requirement of fairness has been satisfied in a particular case); *Barker v. Wingo*, 407 U.S. 514, 530 (1972). When viewed in the context of speedy trial

delay or delay in forfeiture proceedings, these factors are required to be considered together with all other relevant circumstances. *Barker*, 407 U.S. at 533. All factors are related. No one factor is outcome-determinative. *Id.* In considering Deck's claim that the delay between his conviction and final penalty-phase trial rendered his final sentencing proceeding fundamentally unfair, I will likewise review these factors together and take into consideration the other circumstances of the case.

*Length of Delay*

"[T]he overarching factor is the length of the delay," which the Supreme Court considers to be "a triggering mechanism" for the remainder of the due process analysis. *$8,850*, 461 U.S. at 565 (citing *Barker*). "Little can be said on when a delay becomes presumptively improper, for the determination necessarily depends on the facts of the particular case." *Id.* I find here that the ten-and-a-half-year delay between Deck's conviction and his final penalty-phase trial triggers the remainder of the due process analysis, especially given the negative implications such a delay could have on a capital defendant's constitutionally protected right to adequately provide the sentencing jury with mitigating evidence for its consideration in determining the appropriate sentence.

*Reason for Delay*

Regarding the reason for the delay, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. A deliberate attempt to interfere with the defense would weigh heavily against the government, and more neutral reasons such as negligence or an overcrowded docket should weigh less heavily. Even neutral reasons must be considered, however, "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* However, if the delay is attributable exclusively to the defendant, he may be found to have waived his right to a speedy resolution. *See id.* at 529. I find the reasons underlying the lengthy delay here to weigh against the government.

Deck's original sentence imposed in 1998 was reversed in 2002 when the Missouri Supreme Court determined that trial counsel's errors during the penalty phase of the trial were so egregious that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Deck II*, 68 S.W.3d at 431.[27] Upon remand, the circuit court set the second penalty-phase trial for April 29, 2003, and, after Deck and the State proceeded through pretrial motion practice, the case began as scheduled. I cannot weigh against Deck this initial span of time between his conviction and second

---

[27] The Missouri Supreme Court made this determination on the "particular facts of [the] case," which included the fact that "substantial mitigating evidence was offered." 63 S.W.3d at 431.

penalty-phase trial, because – beyond the time taken for appellate and post-conviction review – it was the ineffective assistance of his counsel at the first trial that accounted for this delay. When attorney error amounts to constitutionally ineffective assistance of counsel, that error is imputed to the State. *Coleman*, 501 U.S. at 754. For when a State obtains a conviction against a defendant who was denied the effective assistance of counsel, "it is the State that unconstitutionally deprives the defendant of his liberty." *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980).

Prior to the start of Deck's second penalty-phase trial, his trial counsel requested that the jury not be permitted to view Deck in shackles or restraints. The court denied this request, and trial proceeded. (Resp. Exh. S at 183-94.) After the jury returned its death verdict and the death sentence was imposed, Deck directly appealed. The Missouri Supreme Court affirmed the sentence in May 2004, but the United States Supreme Court granted certiorari. On May 23, 2005, the Court reversed Deck's death sentence, finding his visible shackling in leg irons, handcuffs, and a belly chain to have violated a basic element of constitutional due process in the circumstances of the case. *Deck v. Missouri*, 544 U.S. 622 (2005). The matter was remanded to the circuit court in August 2005 for a new penalty-phase trial. Trial began three years later, in September 2008.

Beyond the time expended to proceed through the appellate process, the

delay between the second and third penalty-phase trials must be weighed against the government. First, as with the constitutionally ineffective counsel during the first penalty-phase trial, the deprivation of Deck's constitutional right to due process in the second penalty-phase trial is imputed to the State. *See Evitts*, 469 U.S. at 396 (quoting *Cuyler*, 446 U.S. at 343). In addition, the first trial setting after remand was for September 2006. After obtaining a three-day continuance, the State requested an additional three-month continuance for unknown reasons. The court continued the trial for an additional six months, however, to March 2007. After new counsel entered for Deck, they asked for an additional continuance so that they could obtain mitigating evidence. Although counsel averred that they would be ready to proceed to trial in July, the trial court continued the trial to October. Immediately prior to trial, the court disqualified the prosecuting attorney's office after learning that it employed a member of the victims' family. The trial was thereafter continued for another ten months. While some delay is to be expected with motion practice and docket management, the responsibility for a significant amount of time that passed here lies with the State, especially with its requested continuance for unknown reasons and its undisclosed conflict of interest that resulted in another ten-month delay. Further, the court repeatedly continued the trial for several months at a time, with such continuances greatly exceeding the time requested by the respective party. While these delays

may have been for a neutral reason, such as a crowded docket, they nevertheless cannot be weighed against Deck.

*Diligence in Requesting Expeditious Sentencing*

This factor does not weigh heavily in favor of either Deck or the State. I do not find, however, that Deck's conduct shows that he failed to pursue an expeditious proceeding. First, I note that Deck objected to the State's request for a three-month continuance from the September 2006 trial setting. From this, it cannot be said that he passively acquiesced in delayed proceedings. *Cf. Barker*, 407 U.S. at 529. In addition, I note that Deck sought one limited continuance so that his counsel could secure mitigation witnesses and prepare documents to be reviewed by their expert. Not only is this a reasonable reason to request a delay, but counsel indicated in their request that they would be ready to go to trial only four months after the then-scheduled trial date. This request for a limited four-month continuance does not show a lack of diligence.

*Prejudice*

"[T]he inability of a defendant to adequately prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532.

Here, prejudice resulting from the delay weighs heavily in favor of Deck. As described above, his inability to present substantial mitigation evidence at his

third penalty-phase trial was directly attributable to the passage of many years'
time. Witnesses who previously cooperated and provided favorable testimony
were no longer available, either because of their unknown location, changed and
hostile attitudes, illness, or even death. These witnesses provided mitigation
testimony at earlier trials that the Missouri Supreme Court itself found
"substantial" – indeed to the extent that it found that without constitutional error, a
reasonable probability existed that the jury would not have voted for death.

*Conclusion*

The death penalties imposed after Deck's first and second penalty-phase
trials were reversed because of constitutional error that occurred during those
trials. When Deck's third and final penalty-phase trial began, over ten years had
passed since his conviction. Most of this delay is attributed to the action of the
State, especially since the violation of Deck's constitutional rights in the first and
second penalty-phase trials were not Deck's fault; and Deck did nothing to forfeit
his right to a speedy disposition. With the demonstrated unavailability of
mitigation evidence (previously found to be substantial) having been caused by this
significant passage of time, the prejudice suffered by Deck is obvious.

Accordingly, after carefully balancing these factors and all other relevant
circumstances of this case, I find that the inordinate passage of time between
Deck's conviction and his final penalty-phase trial deprived Deck of his

constitutional right to present mitigation evidence, thereby rendering his final trial fundamentally unfair. Deck's inability to present mitigation evidence prevented the jury from adequately considering compassionate or mitigating factors that might have warranted mercy. And, as the Missouri Supreme Court found in *Deck II*, the mitigating evidence presented at the first trial was substantial. *Deck II*, 68 S.W.3d at 430-31. Because the last jury was not able to consider this substantial mitigating evidence, imposition of the death penalty violates Deck's right to be free from cruel and unusual punishment.

C.   Ground 32(a) – Trial Counsel Failed to Raise this Meritorious Claim

Despite the meritorious basis of this due process/Eighth Amendment claim, Deck's trial counsel did not raise the claim in any State court proceeding. In Ground 32(a), Deck claims that counsel was ineffective for their failure to do so. I agree. However, this ineffective assistance of counsel claim likewise was not raised in State court, thereby making it subject to procedural default. Deck can only overcome this procedural bar by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. For the reasons that follow, I find that Deck has shown sufficient cause and prejudice to excuse his procedural default, and I will therefore proceed to determine the claim.

*Cause for Default*

A habeas petitioner can establish cause for failing to raise a claim of ineffective assistance of trial counsel by demonstrating that his initial-review post-conviction counsel was constitutionally ineffective. To do this, the petitioner must show that post-conviction counsel was ineffective under the standards of *Strickland* and further demonstrate that his underlying claim of ineffective assistance of trial counsel is a "substantial" one, that is, that the claim has some merit. *Martinez*, 566 U.S. at 14. Deck relies on *Martinez* to argue that post-conviction counsel's failure to raise his substantial claim of ineffective trial counsel constitutes cause for his procedural default of the underlying claim. I agree.

Deck's underlying claim of ineffective assistance of trial counsel has some merit and is therefore "substantial" under *Martinez*. The record shows that trial counsel was acutely aware of the constitutional significance of presenting mitigation evidence at Deck's penalty-phase trial and likewise knew that they were unable to present some of that evidence solely because of the passage of time. Evidence adduced at earlier trials – determined by the Missouri Supreme Court to be substantial and, in the absence of constitutional error, likely would have caused the jury to vote for life instead of death – was no longer available. Counsel made the trial court aware that they were unable to secure some of this evidence, and

they were put in the position of having to make strategic decisions not to present other evidence because of attitudes that had changed over time. Despite their awareness that Deck could not present desired mitigation evidence to the jury as he is constitutionally entitled to do, that this inability was on account of inordinate delay not attributable to Deck, and that his final penalty-phase trial was rendered fundamentally unfair as a result, counsel did not raise this constitutional claim.

Given the "severity" and "finality" of the sanction of death, *Monge v. California*, 524 U.S. 721, 732 (1998), the "acute need" for reliable decisionmaking when the death penalty is at issue, *id.*, and counsel's demonstrated awareness that the jury was being precluded from adequately considering aspects of Deck's character and record that might warrant mercy, counsel's error in failing to raise these constitutional issues deprived Deck of "counsel" as guaranteed by the Sixth Amendment. Because of counsel's error, Deck proceeded through a death penalty trial that was fundamentally unfair from the outset and, indeed, from even before it began. Given trial counsel's deficient performance in this regard, coupled with the prejudicial result, Deck's claim that he received constitutionally ineffective assistance of trial counsel was substantial and should have been raised in State court by post-conviction counsel.

And post-conviction counsel was ineffective for failing to raise it. As discussed earlier, post-conviction counsel raised numerous claims of ineffective

assistance of trial counsel, all of which provided insufficient bases to grant relief.

While post-conviction counsel challenged trial counsel's failure to present certain

mitigation evidence, they did not explore the "why" behind this failure. Instead, in

a perfunctory manner, they represented to the motion court that all witnesses that

should have been called by trial counsel were ready, willing, and able to testify at

the final penalty trial. The court found, however, that with respect to a number of

these witnesses, the representation that they would have cooperated "was not, in

fact, true." (Resp. Exh. RR at 302.) Instead, the court found that many witnesses

were hostile and uncooperative, could not be found, or avoided contact. (*Id.* at

295-98.)

It is not difficult to see from a review of the record that the passage of time

rendered much of this evidence unavailable. The constitutional implications of the

delayed penalty trial in this case are apparent. Had post-conviction counsel

adequately investigated why trial counsel did not call a number of mitigation

witnesses, they would have discovered this circumstance, thereby providing the

basis for a meritorious claim that counsel was ineffective for failing to raise a

claim of constitutional error at trial – which itself was a claim that was likely to

succeed. Given the evidence that was known, a reasonable attorney would have

investigated further. *Wiggins*, 539 U.S. at 527. Failure to do so in the

circumstances of this case, leading to the failure to raise a meritorious claim,

rendered post-conviction counsel's conduct deficient.  *Strickland*, 466 U.S. at 690-91.

Because there is a reasonable probability that the result of Deck's final penalty proceeding would have been different had trial counsel been constitutionally adequate, there is necessarily a reasonable probability that the State court would have so found had post-conviction counsel properly presented that underlying claim.  *See Arkansas v. Sullivan*, 532 U.S. 769 (2001) (state supreme court, like all lower courts, must abide by United States Supreme Court's interpretation of constitutional rights).  Because there is a reasonable probability that Deck would have succeeded on his claim of ineffective assistance of trial counsel had it been raised to the State court in his post-conviction motion, I conclude that Deck was prejudiced by post-conviction counsel's failure to raise the claim.

For all of the foregoing reasons, post-conviction counsel rendered ineffective assistance in failing to raise Deck's underlying claim of ineffective assistance of trial counsel in State court.  Deck has therefore established "cause" for his default of the underlying claim.  I now turn to whether he was prejudiced by trial counsel's failure to raise the claim of constitutional error.

*Prejudice as a Result of Counsel Error*

To show prejudice, Deck must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 695. A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Id.*

Substantial mitigation evidence was offered at Deck's first penalty-phase trial. This and additional mitigation evidence was offered at Deck's second penalty-phase trial. Both of these trials, however, were constitutionally deficient. At the third penalty-phase trial, Deck was precluded from presenting certain mitigation evidence – including from witnesses called at the first two trials – because the inordinate delay in proceeding to the third trial caused this evidence to become unavailable. The jury was therefore precluded from considering mitigating factors bearing on Deck's character and record, which itself is a constitutionally indispensable part of the process of sentencing a person to death.

Considering that, through no fault of his own, Deck could not present mitigation evidence that was previously found to be substantial, and that the jury could not consider this evidence given its unavailability, I find there to be a reasonable probability that Deck would not have been sentenced to death if his counsel had raised this constitutional challenge. Indeed, I find there to be a reasonable probability that Deck would not have even undergone the third penalty-

phase trial had counsel properly raised this issue, because these constitutional deficiencies could not at that time, and cannot now, be cured. Accordingly, had counsel raised this constitutional claim at or before trial, there is a reasonable likelihood that the outcome of the sentencing proceeding would have been different. Deck has therefore shown that he was prejudiced by counsel's error.

Deck has thus shown cause for his default and prejudice as a result of the constitutional violation. I therefore may address the merits of his underlying claim of ineffective assistance of trial counsel.

*Merits*

Trial counsel's performance was deficient when, given the circumstances of the case, they failed to raise a due process/Eighth Amendment claim challenging the fundamental fairness of conducting his penalty trial over ten years after his conviction. Deck was prejudiced by this deficient performance given the reasonable probability that the result of his sentencing proceeding would have been different had counsel raised the claim. Because Deck has shown both deficient performance and prejudice, I conclude that he received constitutionally ineffective assistance of counsel during his third penalty-phase trial, rendering the result of that trial unreliable. *Strickland*, 466 U.S. at 687.

Deck is therefore entitled to habeas relief on the claim raised in Ground 32(a) of his petition.

D.    Ground 31 – Unconstitutional Delay

In Ground 31 of his petition, Deck contends that the passage of time
between the offense and his final penalty-phase trial – more than twelve years –
and between his conviction and final penalty trial – more than ten years – denied
him due process given the loss or weakening of mitigation evidence over this
period of time, and that being put to death after having been denied due process
constitutes cruel and unusual punishment.  This claim was not raised in State court,
thereby making it subject to procedural default.

As cause to excuse his default, Deck contends that trial counsel was
ineffective by failing to raise the claim in State court.  Such a claim of ineffective
assistance of counsel can constitute cause for default if it was pursued in State
court as an independent Sixth Amendment claim.  *Edwards*, 529 U.S. at 451-52;
*Williams*, 311 F.3d at 897.  As demonstrated above, however, Deck did not raise in
State court his claim that trial counsel was ineffective for failing to raise this due
process/Eighth Amendment claim.  Deck argues that the procedural default of his
ineffectiveness claim is itself excused by the ineffective assistance of post-
conviction counsel for failing to raise the claim.  *See Edwards*, 529 U.S. at 453
(defaulted ineffective-assistance-of-counsel claim asserted as cause for default of
another claim can "*itself* be excused if [petitioner] can satisfy the cause-and-
prejudice standard with respect to *that* claim.") (emphasis in *Edwards*).  For the

reasons stated earlier, I agree.

As I have already determined, post-conviction counsel rendered ineffective assistance by failing to raise Deck's underlying claim that trial counsel was ineffective for failing to argue at trial that the inordinate delay between conviction and the final penalty proceeding denied him due process and his right to be free from cruel and unusual punishment. Deck has therefore shown cause for his procedural default of the underlying ineffective assistance claim. Further, I have already found that trial counsel was indeed ineffective in their failure to raise the due process/Eighth Amendment claim and that Deck was prejudiced thereby. Therefore, Deck has shown cause for his failure to raise the underlying due process/Eighth Amendment claim in State court. Moreover, for the reasons discussed at length above, Deck was prejudiced by the underlying due process/ Eighth Amendment violation. Having shown cause and prejudice for his failure to raise this constitutional claim in State court, a determination may be made on the claim's merits.

I have exhaustively discussed the merits of Deck's constitutional claim above and will not repeat my findings here. Suffice it to say, my conclusion remains the same, that is, that the inordinate passage of time between Deck's conviction and his final penalty-phase trial deprived Deck of his constitutional right to present mitigation evidence, thereby rendering his final trial fundamentally

unfair.  Indeed, Deck proceeded through a death penalty trial that was fundamentally unfair from even before it began.  Deck's inability to present mitigation evidence prevented the jury from adequately considering compassionate or mitigating factors that might have warranted mercy.  In the absence of such consideration, imposition of the death penalty violates Deck's right to be free from cruel and unusual punishment.

Accordingly, Deck is entitled to habeas relief on the claim raised in Ground 31 of his petition.

## IX.  Conclusion

Capital proceedings must be "policed at all stages by an especially vigilant concern for procedural fairness and the accuracy of factfinding." *Strickland*, 466 U.S. at 704 (Brennan, J., concurring in part and dissenting in part).

While the passage of time does not and cannot lessen the loss and grief suffered by the victims' family, it nevertheless affected the fairness of the process in this case and the factfinder's ability to render a just penalty.  Deck was deprived of a constitutionally fair penalty trial, the result of which cannot stand.  Because the constitutional deficiencies cannot be cured and Deck cannot now undergo a penalty-phase trial that comports with due process, I will order that Deck's death sentences be vacated and that he be sentenced to life in prison without the possibility of parole.

## X.  Certificate of Appealability

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from a final order denying habeas relief in a 28 U.S.C. § 2254 proceeding unless a circuit justice or judge issues a Certificate of Appealability.  28 U.S.C. § 2253(c)(1)(A).  To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right.  28 U.S.C. § 2253(c)(2).  *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997).  I find that reasonable jurists could not differ on any of the claims I denied, so I will deny a Certificate of Appealability on those claims.

Accordingly,

**IT IS HEREBY ORDERED** that the amended petition of Carman L. Deck for writ of habeas corpus [30] is granted as to the sentence of death only, based on Claims 31 and 32(a) as discussed above, and denied in all other respects. Petitioner's death penalty is vacated.  Because the constitutional deficiencies cannot be cured and Deck cannot now be subjected to a penalty-phase trial that comports with due process, he must be sentenced to life in prison without the possibility of parole.

An appropriate judgment granting the writ of habeas corpus is issued this same date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 13th day of April, 2017.